## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
VIRGIN ORBIT HOLDINGS, INC., et al.,[1]                 :    Case No. 23-10405 (___)
                                                        :
              Debtors.                                  :    (Joint Administration Requested)
                                                        :
------------------------------------------------------- x
```

### MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS, AND (II) GRANTING RELATED RELIEF

Virgin Orbit Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

### RELIEF REQUESTED

1.     By this Motion, the Debtors seek entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Interim Order**") and **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**"):  (a) authorizing, but not directing, the Debtors to pay the prepetition claims of vendors that are critical to the Debtors' business operations and preservation of the their estates (the "**Critical Vendors**"); and (b) granting related relief.

2.     The Debtors request, pursuant to this Motion, authority to pay prepetition obligations related to the above (a) upon entry of the Proposed Interim Order, in an amount not to

---

[1]   The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are:  Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445).  The Debtors' address is 4022 East Conant Street, Long Beach, CA 90808.

exceed $600,000, and (b) upon entry of the Proposed Final Order, in an amount not to exceed $900,000, in each case, as they become due in the ordinary course of business.

## JURISDICTION AND VENUE

3. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 105(a), and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

5. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

6. Virgin Orbit was founded in 2017 and specializes in providing launch services for small satellites.  Unlike traditional rocket launches that require a launch pad, Virgin Orbit uses a unique air-launch system that allows their rocket, LauncherOne, to be launched from under the wing of a specially modified Boeing 747 aircraft, known as Cosmic Girl.  The air launch system allows for greater flexibility in launch locations and reduces the cost of launching small satellites into space.  The company is primarily located in Long Beach, California with a testing facility in Mojave, California.

30236235.3

7.      On the date hereof (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

8.      Contemporaneously with the filing of this Motion, the Debtors have filed with the Court a motion requesting joint administration of the Chapter 11 Cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

9.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the circumstances leading to the commencement of the Chapter 11 Cases, is set forth in detail in the *Declaration of Daniel M. Hart in Support of Chapter 11 Petitions and First Day Pleadings* (the "**Hart First Day Declaration**") and the *Declaration of Brian Whittman in Support of Chapter 11 Petitions and First Day Pleadings* (the "**Whittman First Day Declaration**", and together with the Hart First Day Declaration, the "**First Day Declarations**"),[2] filed contemporaneously herewith, and are incorporated herein by reference.[3]

### CRITICAL VENDORS

10.      In connection with their operations, the Debtors rely upon a number of Critical Vendors whose services are essential to preserving asset value, maintaining confidential information and protecting the Debtors' intellectual property.  Their state of the art operations require seamless collaboration with various third-party vendors and suppliers that provide the

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the First Day Declarations, as applicable.

[3]  The First Day Declarations and other relevant case information are available on the following website maintained by the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC ("**Kroll**"):  https://cases.ra.kroll.com/virginorbit/.

goods and services necessary to maintain the Debtors' complex rocket manufacturing, assembly and launch infrastructure.

11.     Without the services of the Critical Vendors, the Debtors would be unable to operate their business, comply with federal or local regulations or safely maintain their assets.

12.     Recognizing the importance of maintaining operations and preserving the Debtors' value, before the Petition Date, the Debtors worked with their advisors to develop a narrowly-tailored Critical Vendor program to ensure that the Debtors would have access to essential goods and services during the Chapter 11 Cases.  In developing the Critical Vendor program, the Debtors, in consultation with their advisors, engaged in a comprehensive process to (a) identify those vendors, suppliers, and service providers that are critical to the Debtors' business based on the anticipated adjusted level of operations, and (b) quantify the relief necessary to avoid immediate and irreparable harm to the Debtors at the outset of the Chapter 11 Cases.

13.     The Debtors and their advisors spent significant time and effort reviewing and analyzing the Debtors' books and records, consulting operations management and purchasing personnel, reviewing contracts and supply agreements, and analyzing applicable laws, regulations, and historical practices to identify business relationships which, if lost, could materially harm the Debtors' business or impair their restructuring process.  In this process, the Debtors, with the assistance of their professional advisors, assessed a variety of factors, including:

a.      the goods or services provided by a vendor or supplier;

b.      whether goods or services are provided pursuant to an executory contract, on a purchase-order or direct billing basis;

c.      whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or provide critical services on a postpetition basis;

d.      whether the Debtors could maintain postpetition relationships with a vendor through non-bankruptcy alternatives, including prepayment or cash-on-delivery terms;

e.      whether failure to pay a particular vendor would be likely to result in contraction of trade terms as a matter of applicable bankruptcy or non-bankruptcy law;

f.      whether alternative vendors are available that could provide requisite volumes of similar goods or services on equal or better terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;; and

g.      whether failure to pay the particular vendor would be likely to jeopardize the Debtors' valuable proprietary interest in goods.

14.    Applying the above factors, the Debtors identified the universe and type of vendors that are essential to the Debtors' ability to preserve and enhance the value of the Debtors and their estates during the Chapter 11 Cases. To the extent that certain Critical Vendors have contracts with the Debtors, or there are provisions in the applicable agreements between the Critical Vendors and the Debtors restricting the Critical Vendors' transactions with other companies, the Debtors nonetheless submit that the relief requested herein is appropriate. Given the complexity of the Debtors' business, the Debtors have not yet made determinations regarding the assumption of all executory contracts. If the Debtors do not make payments to the Critical Vendors as they become due in the ordinary course of business, then the Critical Vendors may, notwithstanding the automatic stay, see any delay in payment as a breach permitting them to stop performing under the applicable agreements. The Debtors have determined that, in many cases, the disruption attendant to resolving a dispute with such repudiating Critical Vendor could exceed the payment to such Critical Vendor on account of its prepetition claim. Further, the Debtors believe that any such disruption in a relationship with such a Critical Vendor could be significantly detrimental to the Debtors' operations causing significant and irreparable harm.

15.     Ultimately, the Debtors believe that the relief sought herein is narrowly tailored and reasonable, as the amount of claims of Critical Vendors (the "**Critical Vendor Claims**")[4] that the Debtors are seeking the authority to pay pursuant to this Motion comprises only approximately 3% of the Debtors' total outstanding prepetition trade debt as of the Petition Date.

16.     The Critical Vendors include: (a) IT Services Providers, and (b) Facility Services Providers (each as defined and described below).

### A.     IT Services Providers

17.     The Debtors utilize technology from third-party service providers (the "**IT Services Providers**") for two main purposes: (a) to store and transmit confidential, classified or export-controlled information in encrypted form, such as financial, customer and vendor data, and (b) for day-to-day operations support, including as related to business communications, e-mail services, billing, and other daily operations that allow the Debtors to properly function (together, (a) and (b), the "**IT Services**").

18.     If the Debtors are unable to remain current on their obligations related to the IT Services Providers, they may lose access to the IT Services. Without access to the IT Services, the Debtors' entire operations could come to an immediate standstill and risk the loss of vital information, causing significant value destruction. Moreover, the Debtors require heightened information security since their operations include sensitive and classified governmental contracts and data. The loss of the IT Services for even a short period of time would be value destructive and harmful to the Debtors, and, ultimately, all parties in interest. Accordingly, the Debtors access

---

[4]   For the avoidance of doubt, Critical Vendor Claims do not include any "Vendor Claims" as defined in the [*Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Prepetition Claims of (A) Lien Claimants, (B) 503(B)(9) Claimants, and (C) Foreign Vendors, (II) Confirming Administrative Expense Priority Status for Outstanding Prepetition Purchase Orders, and (III) Granting Related Relief,* filed contemporaneously herewith.

to the services of the IT Services during the Chapter 11 Cases is essential in order to limit any disruption to their business and safely secure confidential information.

### B.    Facility Services Providers

19.    The Debtors utilize the services of certain third-party vendors to assist with the security and protection of their facilities and equipment (the "**Facility Services Providers**").  The Debtors have determined that using the Facility Services Providers to provide around-the-clock security services for the Debtors' facilities is the most cost effective way to protect their highly valuable rockets, equipment, machinery, and materials, including certain U.S. Department of Defense assets.  The services provided by these vendors include: lobby security, badging and access control, monitoring of audio/video footage, cyber and network security, shipping and receiving controls, perimeter patrol, fire watch, airport communications, and emergency operation services.

20.    Without these security services, the Debtors would risk theft and/or damage to their facilities and equipment.  Critically, a security gap during a change of security services, even for an hour, would expose equipment and inventory worth millions of dollars to the risk of material damage or loss.  Furthermore, securing replacement vendors would be extremely difficult and almost certainly result in a lapse in security since, among other things, the hiring and subsequent training process would be time-consuming and costly given licensing and compliance requirements.  For example, certain of the Facility Services Providers are required to be International Traffic in Arms Regulations (ITAR) compliant.  Accordingly, it is essential that the Debtors have access to the uninterrupted continuation of the services provided by the Facility Services Providers during the Chapter 11 Cases.

**POSTPETITION CONTINUATION OF CUSTOMARY TRADE TERMS**

21.     The Debtors propose conditioning, where possible, the payment of Critical Vendor Claims on obtaining agreement from each Critical Vendor to continue supplying goods and services to the Debtors on as favorable trade terms, practices, and programs as those trade terms, practices, and programs in place in the 24 months before the Petition Date (the "**Customary Trade Terms**") or pursuant to such other trade practices and programs that are favorable to the Debtors.  Where appropriate, the Debtors seek authority, but not direction, to require as a condition to payment of a Critical Vendor Claim that the applicable Critical Vendor enter into a trade agreement, substantially in the form annexed hereto as **Exhibit C** (each, a "**Vendor Agreement**").  A Vendor Agreement, once agreed to and accepted by a Critical Vendor, constitutes a legally binding contractual relationship between the parties governing the commercial trade relationship as provided therein.

22.     The Debtors also seek limited authority, but not direction, to pay Critical Vendor Claims if no Vendor Agreement has been executed or if the Debtors determine, in their business judgment, that a formal Vendor Agreement is prohibitive or unnecessary to provide for the continued provision of goods or services on a postpetition basis; *provided that*, unless otherwise agreed by the Debtors, if any Critical Vendor accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms (regardless of whether a Vendor Agreement has been executed), and subject to any Vendor Agreement that may be executed:  (a) the Debtors may demand repayment in cash or otherwise take all action to have such payment be deemed an improper postpetition transfer on account of a prepetition claim; (b) upon recovery by the Debtors, any prepetition claim of such Critical Vendor will be reinstated as if the payment had not been made and the deadline for a Critical Vendor to file a reinstated claim will be the later of (i) the general bar date established by order of the Court

or (ii) 30 days after the Debtors provide written notice to the party of the reinstatement of its claim; and (c) if the Debtors owe the Critical Vendor any postpetition amounts, the Debtors may recharacterize and apply any payment made pursuant to an order entered in connection with this Motion to reduce such outstanding postpetition amounts, and the Debtors may then take any and all appropriate steps to cause such Critical Vendor to return payments made to it on account of its prepetition Claim to the extent such payments exceed the postpetition amounts then owing to such Critical Vendor.

## **BASIS FOR RELIEF REQUESTED**

**I.      PAYING THE CRITICAL VENDOR CLAIMS IS IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND THEIR CREDITORS**

23.      In order to ensure the success and preservation of the Debtors' businesses, the Debtors necessarily rely on the Critical Vendors to provide the Debtors with goods and services crucial to the Debtors' operations.  Without the goods and services provided by the Critical Vendors, the Debtors would be unable to operate.  Unless the Debtors are authorized to pay the Critical Vendor Claims, the Debtors believe that the Critical Vendors may refuse to provide critical goods and services, resulting in a material disruption of the Debtors' operations.  Such a disruption in operations could lead to a significant loss of business, erosion of goodwill, and deterioration in the value of the Debtors' operations to the detriment of the Debtors' stakeholders.

24.      Furthermore, without the goods and services provided by the Critical Vendors, the Debtors would risk, among other thing: (a) potentially being in breach of government contracts; (b) security breaches resulting in the leaking of highly classified information; (c) theft and/or damage to their facilities and equipment; and (d) impacts on their day-to-day operations detrimental to the Debtors' businesses.  If the Debtors experience such disruptions and risks, it will be value destructive and will harm all parties in interest.  Accordingly, it is essential that the

30236235.3

Debtors have continued access to the goods and services provided by the Critical Vendors during the Chapter 11 Cases.

**II.      PAYING CRITICAL VENDOR CLAIMS IS APPROPRIATE UNDER SECTION 363(B) AND 105(A) OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY**

25.      A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *accord In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

26.      In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  11 U.S.C. § 1107(a).  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code

30236235.3

"contains an implied duty of the debtor-in-possession" to "'protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); see also *Unofficial Comm. of Equity Holders v. McManigle* (*In re Penick Pharm., Inc.*), 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

27.    The Court may also rely on the doctrine of necessity and its equitable powers under section 105(a) of the Bankruptcy Code to authorize the payment of prepetition claims when such payment is essential to the continued operation of a debtor's business. *See*, *e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity, particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard for enabling a court to authorize payment of prepetition claims before confirmation of a reorganization plan).

28.    The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 363(b) and 105(a) of the Bankruptcy Code. Authorizing the Debtors to pay the Critical Vendor Claims in the amounts set forth herein is in the best interests of the Debtors, their estates, and their economic stakeholders. As set forth above and in the First Day Declarations, if the Critical Vendors are unwilling to provide essential goods and services to the Debtors postpetition because of their outstanding prepetition claims, the Debtors' estates would

suffer immediate and significant harm.  Any attempt by the Debtors to address the resulting impact on operations by either re-sourcing or shifting business to alternative vendors would, even if possible, result in significant expense to the Debtors' estates and delay, resulting in disruptions to the services the Debtors provide to their customers and significant damages and losses to the Debtors' estates.

## DEBTORS' BANKS SHOULD BE AUTHORIZED TO HONOR CHECKS AND ELECTRONIC FUNDS TRANSFERS

29.     The Debtors further request that the Court (a) authorize all applicable financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the relief sought herein to the extent that the Debtors have sufficient funds on deposit in their accounts with the Banks, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and (b) authorize the Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.  The Debtors anticipate having sufficient funds to pay the amounts described herein.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify whether checks or wire transfer requests are payments authorized by the relief requested herein.  Accordingly, the Debtors believe that checks, direct debits, or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

30.     Certain aspects of the relief requested herein may, if granted, be subject to Bankruptcy Rule 6003, which governs the availability of certain types of relief within 21 days after the Petition Date.  Pursuant to Bankruptcy Rule 6003, a court may grant such relief if it is necessary

to avoid immediate and irreparable harm. The Debtors submit that the facts set forth herein and in the First Day Declarations demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and, thus, Bankruptcy Rule 6003 has been satisfied.

31.     Additionally, to the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the 14-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their business and preserve the value of their estates. Accordingly, the Debtors submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the 14-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

## **<u>RESERVATION OF RIGHTS</u>**

32.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to such relief requested or granted (including any payment made in accordance with any such order), is or should be construed or deemed to be: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' property; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; (f) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to the Proposed Orders once entered; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors, or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. Nothing contained in the Proposed

Orders will be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

## **NOTICE**

33.     Notice of this Motion will be provided to (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors; (c) counsel to the DIP Secured Parties; (d) the holder of the Debtors' secured convertible notes; (e) the holder of the Debtors' unsecured convertible debenture; (f) the Banks; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m).  The Debtors believe that no further notice is required.

34.     A copy of this Motion is available on (a) the Court's website, at www.deb.uscourts.gov, and (b) the website maintained by the Debtors' proposed Claims and Noticing Agent, Kroll, at https://cases.ra.kroll.com/virginorbit.


*[Remainder of page left intentionally blank]*

30236235.3

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  April 4, 2023
         Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ *Allison S. Mielke*
Robert Brady (No. 2847)
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Allison S. Mielke (No. 5934)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  rbrady@ycst.com
       mnestor@ycst.com
       kcoyle@ycst.com
       amielke@ycst.com

-and-

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (*pro hac vice* admission pending)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeff.bjork@lw.com

George Klidonas (*pro hac vice* admission pending)
Anupama Yerramalli (*pro hac vice* admission pending)
Liza L. Burton (*pro hac vice* admission pending)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Emails: george.klidonas@lw.com
       anu.yerramalli@lw.com
       liza.burton@lw.com

*Proposed Counsel for Debtors and Debtors in Possession*

# EXHIBIT A

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------- x
                    :

In re:                      :     Chapter 11
                    :

VIRGIN ORBIT HOLDINGS, INC., *et al.*,[1]  :     Case No. 23-10405 (___)
                    :

       Debtors.         :     (Jointly Administered)
                    :

----------------------------------------------------------- x  **Re: Docket No. ____**

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY PREPETITION**
**CLAIMS OF CRITICAL VENDORS, AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of orders (a) authorizing, but not directing, the Debtors to pay the prepetition claims of Critical Vendors, and (b) granting related relief, all as more fully set forth in the Motion; and this Court having reviewed the Motion and the First Day Declarations; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate

---

[1]  The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are:  Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445).  The Debtors' address is 4022 East Conant Street, Long Beach, CA 90808.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

notice of the Motion has been given and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Interim Order and notice of the Final Hearing (as defined below); and upon the record herein; and after due deliberation thereon; and this Court having determined that there is good and sufficient cause for the relief granted in this Interim Order, therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted on an interim basis, as set forth herein.

2.      All objections to the entry of this Interim Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized, but not directed, in their business judgment and in consultation with the DIP Agent and Prepetition Secured Parties, to pay Critical Vendor Claims in an aggregate amount not to exceed $600,000 on an interim basis.

4.      Nothing in this Interim Order permits the payment of prepetition claims of any of the Debtors' professionals, including but not limited to law firms, financial advisors, investment bankers or accounting firms.

5.      The form of Vendor Agreement attached hereto as **<u>Exhibit C</u>** is hereby approved.

6.      The Debtors are authorized to undertake all appropriate efforts to cause a Critical Vendor to enter into the form of Vendor Agreement, substantially in the form attached to the Motion as **<u>Exhibit C</u>**, and  the Debtors are authorized to negotiate, modify, or amend the form of Vendor Agreement in the exercise of their reasonable business judgment to the extent such negotiations, modifications, or amendments are not materially adverse to the Debtors.

7. The Debtors are authorized, but not directed, in the exercise of their reasonable business judgment, to condition payment of Critical Vendor Claims under this Interim Order on the agreement of Critical Vendors to enter into Vendor Agreements.

8. If any party accepts payment pursuant to the relief requested by this Interim Order and thereafter does not continue to provide goods or services on Customary Trade Terms (regardless of whether a Vendor Agreement has been executed), and subject to any Vendor Agreement that may be executed or otherwise agreed by the Debtors:  (a) the Debtors may demand repayment in cash or otherwise take all action to have such payment be deemed to be an improper postpetition transfer on account of a prepetition claim, and (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made and the deadline for such party to file a reinstated claim will be the later of (i) the general bar date established by order of this Court or (ii) 30 days after the Debtors provide written notice to the party of the reinstatement of its claim; and (c) if the Debtors owe the Critical Vendor any postpetition amounts, the Debtors may recharacterize and apply any payment made pursuant to an order entered in connection with this Motion to reduce such outstanding postpetition amounts, and the Debtors may then take any and all appropriate steps to cause such Critical Vendor to return payments made to it on account of its prepetition Claim to the extent such payments exceed the postpetition amounts then owing to such Critical Vendor.

9. Notwithstanding anything to the contrary in this Interim Order, the Motion, or any exhibits thereto, the priority of a Critical Vendor's claim shall not be affected by whether such Critical Vendor executes a Vendor Agreement, provides goods or services to the Debtors under Customary Trade Terms, or otherwise.

10.     The Debtors shall provide schedules to the Office of the United States Trustee for the District of Delaware, counsel to any statutory committee appointed in these Chapter 11 Cases, and counsel to the DIP Secured Parties of all payments made on account of all Critical Vendor payments made by the Debtors pursuant to this Interim Order and within 30 days of any such payment.

11.     The Banks shall be, and are, hereby authorized, when requested by the Debtors, to process, honor, pay, and, if necessary, reissue any and all checks or electronic funds transfers, on account of obligations authorized to be paid by this Interim Order, including prepetition checks and electronic payment and transfer requests that the Debtors reissue or re-request postpetition, drawn on the Debtors' accounts, whether those checks were presented before or after the Petition Date, provided that sufficient funds are available in such accounts to make the payments.

12.     The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors before the Petition Date should be honored pursuant to this Interim Order, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Interim Order.

13.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of Critical Vendor Claims authorized to be paid by this Interim Order, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored as a result of the commencement of the Chapter 11 Cases, to the extent payment thereof is authorized pursuant to the relief granted.

14.     Nothing in the Motion or this Interim Order, nor any actions or payments made by the Debtors pursuant to this Interim Order, is intended as or shall be construed as or deemed to be: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien

against the Debtors' properties; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; (f) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Interim Order; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors, or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  Nothing contained in this Interim Order shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

15.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

16.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

17.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

18.     The Debtors are hereby authorized to take such actions and to execute such documents as may be reasonably necessary to implement the relief granted by this Interim Order.

19.     The final hearing (the "**Final Hearing**") on the Motion shall be held on _____, 2023, at _____, prevailing Eastern Time.  On or before _____, prevailing Eastern Time, on _____, 2023, any objections or responses to entry of a final order on the Motion (a "**Final Order**") shall be filed with this Court, and served on:  (a) Virgin Orbit Holdings, Inc., 4022 East Conant Street, Long Beach, CA 90808, Attn: Derrick Boston (derrick.boston@virginorbit.com); (b) proposed counsel to the Debtors and Debtors in Possession,

(i) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Liza L. Burton (liza.burton@lw.com), and Brian S. Rosen (brian.rosen@lw.com)); and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Kara Hammond Coyle (kcoyle@ycst.com) and Allison S. Mielke (amielke@ycst.com)); (c) counsel to the DIP Secured Parties, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Brian M. Resnick (brian.resnick@davispolk.com), Josh Sturm (joshua.sturm@davispolk.com) and Jarret Erickson (jarret.erickson@davispolk.com)); (d) counsel to any statutory committee appointed in the Chapter 11 Cases; and (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Juliet Sarkessian (juliet.m.sarkessian@usdoj.gov)).  In the event that no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

20.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**EXHIBIT B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
VIRGIN ORBIT HOLDINGS, INC., et al.,[1]                 :   Case No. 23-10405 (___)
                                                        :
                     Debtors.                           :   (Jointly Administered)
                                                        :
------------------------------------------------------- x   Re:  Docket Nos. ____ & ____
```

## FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS, AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and

debtors in possession (collectively, the "**Debtors**") for entry of orders (a) authorizing, but not

directing, the Debtors to pay the prepetition claims of Critical Vendors, and (b) granting related

relief, all as more fully set forth in the Motion; and this Court having reviewed the Motion, the

First Day Declarations, and the Interim Order, as approved by this Court; and this Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012; and this Court having found that this

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order

consistent with Article III of the United States Constitution; and this Court having found that venue

of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

---

[1]  The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are:  Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445).  The Debtors' address is 4022 East Conant Street, Long Beach, CA 90808.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

and it appearing that proper and adequate notice of the Motion has been given and that no other or

further notice is necessary; and upon the record herein; and after due deliberation thereon; and this

Court having determined that there is good and sufficient cause for the relief granted in this Final

Order, therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The Motion is granted on a final basis, as set forth herein.

2.     All objections to the entry of this Final Order, to the extent not withdrawn or settled,

are overruled.

3.     The Debtors are authorized, but not directed, in their business judgment and in

consultation with the DIP Agent and Prepetition Secured Parties, to pay Critical Vendor Claims in

an amount not to exceed $900,000 in the aggregate, absent further order of this Court.

4.     Nothing in this Final Order permits the payment of prepetition claims of any of the

Debtors' professionals, including but not limited to law firms, financial advisors, investment

bankers or accounting firms.

5.     The form of Vendor Agreement attached hereto as **Exhibit C** is hereby approved.

6.     The Debtors are authorized to undertake all appropriate efforts to cause a Critical

Vendor to enter into the form of Vendor Agreement, substantially in the form attached to the

Motion as **Exhibit C**, and the Debtors are authorized to negotiate, modify, or amend the form of

Vendor Agreement in the exercise of their reasonable business judgment to the extent such

negotiations, modifications, or amendments are not materially adverse to the Debtors.

7.     The Debtors are authorized, but not directed, in the exercise of their reasonable

business judgment, to condition payment of Critical Vendor Claims under this Final Order on the

agreement of Critical Vendors to enter into Vendor Agreements.

8.      If any party accepts payment pursuant to the relief requested by this Final Order and thereafter does not continue to provide goods or services on Customary Trade Terms (regardless of whether a Vendor Agreement has been executed), and subject to any Vendor Agreement that may be executed or otherwise agreed by the Debtors:  (a) the Debtors may demand repayment in cash or otherwise take all action to have such payment be deemed to be an improper postpetition transfer on account of a prepetition claim and (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made and the deadline for such party to file a reinstated claim will be the later of (i) the general bar date established by order of this Court or (ii) 30 days after the Debtors provide written notice to the party of the reinstatement of its claim; and (c) if the Debtors owe the Critical Vendor any postpetition amounts, the Debtors may recharacterize and apply any payment made pursuant to an order entered in connection with this Motion to reduce such outstanding postpetition amounts, and the Debtors may then take any and all appropriate steps to cause such Critical Vendor to return payments made to it on account of its prepetition Claim to the extent such payments exceed the postpetition amounts then owing to such Critical Vendor.

9.      Notwithstanding anything to the contrary in this Final Order, the Motion, or any exhibits thereto, the priority of a Critical Vendor's claim shall not be affected by whether such Critical Vendor executes a Vendor Agreement, provides goods or services to the Debtors under Customary Trade Terms, or otherwise.

10.      The Debtors shall provide schedules to the Office of the United States Trustee for the District of Delaware, counsel to any statutory committee appointed in these Chapter 11 Cases, and counsel to the DIP Secured Parties of all payments made on account of all Critical Vendor

payments made by the Debtors pursuant to this Final Order and within 30 days of any such payment.

11.     The Banks shall be, and are, hereby authorized, when requested by the Debtors, to process, honor, pay, and, if necessary, reissue any and all checks or electronic funds transfers on account of obligations authorized to be paid by this Final Order, including prepetition checks and electronic payment and transfer requests that the Debtors reissue or re-request postpetition, drawn on the Debtors' accounts, whether those checks were presented before or after the Petition Date, provided that sufficient funds are available in such accounts to make the payments.

12.     The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors before the Petition Date should be honored pursuant to this Final Order, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Final Order.

13.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of Critical Vendor Claims authorized to be paid by this Final Order, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored as a result of the commencement of the Chapter 11 Cases, to the extent payment thereof is authorized pursuant to the relief granted.

14.     Nothing in the Motion or this Final Order, nor any actions or payments made by the Debtors pursuant to this Final Order, is intended as or shall be construed as or deemed to be: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract

4

or unexpired lease pursuant to section 365 of the Bankruptcy Code; (f) a limitation on the Debtors'

rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with

any party subject to this Final Order; or (g) a waiver or limitation of any claims, causes of action

or other rights of the Debtors, or any other party in interest against any person or entity under

the Bankruptcy Code or any other applicable law.  Nothing contained in this Final Order shall be

deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise

affect any claim to the extent it is not paid.

15.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final

Order shall be effective and enforceable immediately upon entry hereof.

16.     The Debtors are hereby authorized to take such actions and to execute such

documents as may be reasonably necessary to implement the relief granted by this Final Order.

17.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Final Order.

## **EXHIBIT C**

**Vendor Agreement**

**[Name of Applicable Debtor]**

**_____, 2023**

TO:     [Vendor]
        [Name]
        [Address]

Dear [Vendor]:

As you are aware, Virgin Orbit Holdings, Inc. and certain of its subsidiaries (collectively, the "**Company**") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Cases**" and the "**Bankruptcy Court**," respectively) on [ ● ], 2023 (the "**Petition Date**").  On the Petition Date, the Company requested the Bankruptcy Court's authority to pay certain suppliers and service providers (collectively, "**Vendors**") in recognition of the importance of the Company's relationship with those Vendors and the Company's desire that the Bankruptcy Cases have as little effect on certain Vendors as possible. On [ ● ], 2023 the Bankruptcy Court entered an [interim/final] order (the "**Order**") authorizing the Company, under certain conditions, to pay prepetition claims of certain Vendors.  A copy of the Order is attached hereto (collectively with this letter, the "**Letter Agreement**").

To receive immediate payment on prepetition claims pursuant to the Order, each selected Vendor must agree to continue to supply goods or services to the Company based on "Customary Trade Terms." As used herein and in the Order, "Customary Trade Terms" are the normal and customary trade terms, practices, and programs (including credit limits, pricing rebates, cash discounts, timing of payments, coupon reconciliation, and other applicable terms and programs), that were most favorable to the Company and in effect between the Vendor and the Company at any time within the 2-year period before the Petition Date, or, if applicable, the trade terms of the agreement between the parties in effect on the Petition Date, or such other trade terms as agreed by the Company and the Vendor.

For purposes of administration of this program, the Company and you agree as follows:

1.      The estimated balance of your aggregate prepetition claim(s) against the Debtors is $[_____] (the "**Agreed Vendor Claim**").

2.      $[_____] of the Agreed Vendor Claim is entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code (the "**Agreed 503(b)(9) Claim**").

3.      The Company will provisionally pay you $[_____] (the "**Payment**") on account of the Agreed Vendor Claim (net of any setoffs, credits, or discounts) of which $[____] will be applied toward the Agreed 503(b)(9) Claim.  Such payment will satisfy the Agreed 503(b)(9) Claim in full and [___]% of the total amount of the Agreed Vendor Claim.

4.      For the avoidance of doubt, payment of the Agreed 503(b)(9) Claim will extinguish any claims you may have arising under section 503(b)(9) of the Bankruptcy Code.

5.      Nothing herein waives the Company's or your rights under section 365 of the Bankruptcy Code.

6.      If there is an agreement in effect as of the Petition Date between you and the Company, you will continue to provide goods or services in accordance with the agreement's terms.  Otherwise, you will provide Customary Trade Terms as follows (if more space is required, continuation pages are attached):

_____

_____

_____

7.      You agree that you will not require a lump-sum payment upon the confirmation or consummation of a chapter 11 plan in the Bankruptcy Cases on account of any administrative expense claim that you may assert, but instead agree that such claims will be paid in the ordinary course of business after confirmation of a plan under applicable Customary Trade Terms, if the plan provides for the ongoing operations of the Company.

8.      You will hereafter extend to the Company all Customary Trade Terms and agree to abide by any purchase order terms and conditions between you and the Company as in effect before the Petition Date (the "**Current PO(s)**").

Payment of your Vendor Claim in the manner set forth in the Order may only occur upon execution of this Letter Agreement by a duly authorized representative of your company and the return of this letter to the Company.   Your execution and return of this Letter Agreement constitutes an agreement between you and the Company:

a.      to the Customary Trade Terms and, subject to the reservations contained in the Order, to the amount of the Payment set forth above;

b.      that, for a period lasting until the later of 2 years from the Petition Date, or the date upon which the term of your Current PO(s) expire, you will continue to supply the Company with goods or services pursuant to Customary Trade Terms and that the Company will pay for those goods or services in accordance with Customary Trade Terms;

c.      that you have reviewed the terms and provisions of the Order and consent to be bound by the same;

d.      that you will not separately seek payment for reclamation, claims pursuant to section 503(b)(9) of the Bankruptcy Code, or other similar claims outside of the terms of the Order unless your participation in the vendor payment program authorized by the Order (the "**Vendor Payment Program**") is terminated;

e.  that, in consideration for the Payment, you agree not to file or otherwise assert against the Company, its estates, or any other person or entity, or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which the lien is asserted) on account of any remaining prepetition amounts allegedly owed to you by the Company arising from agreements entered into before the Petition Date. Furthermore, if you have taken steps to file or assert a lien before entering into this Letter Agreement, you agree to take all necessary steps to remove the lien as soon as possible at your sole cost and expense;

f.  that if you fail to comply with the terms and provisions of this Letter Agreement, (a) the Company may demand repayment in cash or otherwise take all action to have such payment be deemed to be an improper postpetition transfer on account of a prepetition claim and (b) upon recovery by the Company, your prepetition claim will be reinstated as if the payment had not been made, and you must file a reinstated claim by the later of (i) the general bar date established by order of the Bankruptcy Court or (ii) 30 days after the Debtors provide written notice to the party of the reinstatement of its claim and (c) if the Debtors owe the Vendor any postpetition amounts, the Debtors may recharacterize and apply any payment made pursuant to an order entered in connection with the Motion to reduce such outstanding postpetition amounts, and the Debtors may then take any and all appropriate steps to cause such Vendor to return payments made to it on account of its prepetition Claim to the extent such payments exceed the postpetition amounts then owing to such Vendor; and

g.  that you will keep the existence and the terms of this Letter Agreement confidential and will not disclose it to any person or entity without the prior written consent of Company, other than as required by law to any court or governmental authority.

The Company and you also hereby agree that any dispute concerning this Letter Agreement, the Order, or your participation in the Vendor Payment Program will be determined by the Bankruptcy Court and that all litigation arising out of or relating to this Letter Agreement, the Order, or your participation in the Vendor Payment Program, or its subject matter, must be commenced in the Bankruptcy Court.

If you have any questions about this Letter Agreement or our financial restructuring, do not hesitate to call.

*[Remainder of Page Intentionally Left Blank]*

Sincerely,

[Name of Applicable Debtor]

By: _____
Title: _____


Agreed and Accepted by: [Vendor]


By:_____
Title:_____
Dated:_____