# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x
                :

In re:               :    Chapter 11
                :

VIRGIN ORBIT HOLDINGS, INC., *et al.*,[1]  :    Case No. 23-10405 (KBO)
                :

        Debtors.      :    (Jointly Administered)
                :

                :    **Docket Ref. No. 17**

-------------------------------------------------------- x

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTY, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "**DIP Motion**")[2] of Virgin Orbit Holdings, Inc. and each of its affiliates that are debtors and debtors-in-possession (each, a "**Debtor**" and collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2, 9006-1, and 9013 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

[1]    The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445). The Debtors' address is 4022 East Conant Street, Long Beach, CA 90808.

[2]    Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the DIP Credit Agreement (as defined herein) or the DIP Motion, as applicable.

Delaware (the "**Local Rules**"), seeking entry of this interim order (this "**Interim Order**") among other things:

(a)    authorizing Virgin Orbit Holdings, Inc. (the "**DIP Borrower**") to obtain postpetition financing ("**DIP Financing**") pursuant to a superpriority, senior secured and priming debtor-in-possession term loan credit facility (the "**DIP Facility**") subject to the terms and conditions set forth in that certain Senior Secured Superpriority Debtor-in-Possession Term Loan Credit Agreement attached hereto as **Exhibit 1** (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**DIP Credit Agreement**"), by and among the DIP Borrower, the DIP Guarantors (as defined below), Virgin Investments Limited (together with the other lenders from time to time party thereto, the "**DIP Lenders**") and Virgin Investments Limited, as Administrative Agent and Collateral Agent (the "**DIP Agent**" and, collectively, with the DIP Lenders, the "**DIP Secured Parties**"), in an aggregate principal amount not to exceed $74,100,000 (the commitments in respect thereof, the "**DIP Commitments**"), consisting of:

      i.    an interim funding in the aggregate principal amount of $23,150,000, including (1) new money term loans in an aggregate principal amount of $12,250,000 from the DIP Lenders, which shall be made available upon entry of this Interim Order (the "**DIP Interim New Money Loans**") and (2) roll-up term loans in an aggregate principal amount of $10,900,000 ("**Interim Roll-Up Loans**"), which, concurrently with the making of the DIP Interim New Money Loans, shall be deemed substituted and exchanged with the Prepetition Bridge Note (as defined below) (such substitution and exchange, the "**Interim Roll-Up**" and the convertible notes rolled-up pursuant to this clause (ii)(2), the "**Interim Rolled-Up Notes**");

      ii.    a final funding in the aggregate principal amount of $46,750,000, including (1) new money term loans in an aggregate principal amount of $15,150,000 from the DIP Lenders, which shall be made available following entry of the Final Order (as defined below) (the "**DIP Final New Money Loans**") and (2) roll-up term loans in an aggregate principal amount of $31,600,000 ("**Final Roll-Up Loans**" and, together with the Interim Roll-Up Loans, the "**Roll-Up Loans**" and, the Roll-Up Loans and the DIP Final New Money Loans, collectively, the "**DIP Loans**"), which concurrently with the making of the DIP Final New Money Loans, shall be deemed substituted and exchanged with a portion of the Prepetition Notes (as defined below) (such substitution and exchange, the "**Final Roll-Up**" and the convertible notes rolled-up pursuant to this clause (ii)(2), the "**Final Rolled-Up Notes**"); and

iii. one or more additional fundings in an aggregate principal amount of up to $4,200,000 from the DIP Lenders, which shall be made available following entry of (A) an order approving severance payments to the Debtors' employees (a "**Severance Approval Order**") and (B) this Interim Order (the "**DIP Severance New Money Loans**" and, together with the DIP Interim New Money Loans and the DIP Final New Money Loans, the "**DIP Loans**"). The DIP Severance New Money Loans may be drawn in one or more draws, in each case in an amount not to exceed the amount of severance payments due and payable and approved by the Court (the "**Approved Severance Payments**"), which DIP Severance New Money Loans shall be used solely for Approved Severance Payments.

(b) authorizing the Debtors other than the DIP Borrower (such Debtors, the "**DIP Guarantors**," and together with the DIP Borrower, the "**DIP Loan Parties**") to jointly and severally guarantee the DIP Loans and the other DIP Obligations;

(c) authorizing the Debtors, (i) upon entry of this Interim Order, to effectuate the Interim Roll-Up and (ii) upon entry of the Final Order, to effectuate the Final Roll-Up;

(d) authorizing the DIP Loan Parties to execute, deliver and perform under the DIP Credit Agreement and all other loan documentation related to the DIP Facility, including, without limitation, as applicable, security agreements, pledge agreements, control agreements, mortgages, deeds, charges, guarantees, promissory notes, intercompany notes, certificates, instruments, intellectual property security agreements, notes, and such other documents that may be reasonably requested by the DIP Agent and the DIP Lenders, in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, together with the DIP Credit Agreement and any other Loan Documents (as defined in the DIP Credit Agreement), the "**DIP Documents**");

(e) authorizing the DIP Loan Parties to incur loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees (including, without limitation, commitment fees and any other fees payable pursuant to the DIP Documents), costs, expenses and other liabilities, and all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other obligations due or payable under the DIP Documents (collectively, the "**DIP Obligations**"), and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

(f) subject to the Carve Out (as defined herein), granting to the DIP Agent, for itself and for the benefit of the DIP Secured Parties, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations of the DIP Loan Parties;

(g) granting to the DIP Agent, for itself and for the benefit of the DIP Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the DIP Loan Parties' estates (other than certain excluded property as provided in the DIP Documents (the "**Excluded Assets**")) and all proceeds thereof, including, subject only to and effective upon entry of the Final Order, any Avoidance Proceeds (as defined herein), in each case subject to the Carve Out;

(h) authorizing the Debtors, the DIP Agent, acting at the direction of the Required DIP Lenders (as defined below), and the Prepetition Secured Party, to take all commercially reasonable actions to implement and effectuate the terms of this Interim Order;

(i) authorizing the Debtors to waive, subject to entry of the Final Order, (a) their right to surcharge the Prepetition Collateral (as defined herein) and the DIP Collateral (as defined herein) (together, the "**Collateral**") pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(j) subject to entry of the Final Order, waiving the equitable doctrine of "marshaling" and other similar doctrines (i) with respect to the DIP Collateral for the benefit of any party other than the DIP Secured Parties and (ii) with respect to any of the Prepetition Collateral (including the Cash Collateral) for the benefit of any party other than the Prepetition Secured Party (as defined herein);

(k) authorizing the Debtors to use proceeds of the DIP Facility solely in accordance with this Interim Order and the DIP Documents;

(l) authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable to the extent provided in, and in accordance with, the DIP Documents;

(m) subject to the restrictions set forth in the DIP Documents and this Interim Order, authorizing the Debtors to use the Prepetition Collateral (as defined herein), including Cash Collateral of the Prepetition Secured Party under the Prepetition Notes Documents (as defined herein), and provide adequate protection to the Prepetition Secured Party for any diminution in value of its interests in the applicable Prepetition Collateral (including Cash Collateral) (as defined herein), including, without limitation, any diminution in value resulting from the imposition of the automatic stay under section 362 of the Bankruptcy Code (the "**Automatic Stay**"), the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral), and the priming of its interests in the Prepetition Collateral (including Cash Collateral);

(n)     vacating and modifying the Automatic Stay to the extent set forth herein to the extent necessary to permit the Debtors and their affiliates, the DIP Secured Parties and the Prepetition Secured Party to implement and effectuate the terms and provisions of this Interim Order, the DIP Documents and, upon entry, the Final Order and to deliver any notices of termination described below and as further set forth herein;

(o)     waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and, upon entry, the Final Order; and

(p)     scheduling a final hearing (the "**Final Hearing**") to consider final approval of the DIP Facility and use of Cash Collateral pursuant to a proposed final order (the "**Final Order**"), as set forth in the DIP Motion and the DIP Documents filed with this Court.

The Court having considered the interim relief requested in the DIP Motion, the exhibits attached thereto, the *Declaration of Brian Whittman in Support of Chapter 11 Petitions and First Day Pleadings* (the "**Whittman First Day Declaration**) and the *Declaration of David S. Zubricki in Support of Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Party, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* (the "**Zubricki Declaration**" and, together with the Whittman First Day Declaration, the "**DIP Declarations**"), the available DIP Documents, and the evidence submitted and arguments made at the interim hearing held on [April][●], 2023 (the "**Interim Hearing**"); and due and sufficient notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the DIP Loan Parties and their estates pending the Final Hearing, otherwise

is fair and reasonable and in the best interests of the DIP Loan Parties and their estates, and is essential for the continued operation of the DIP Loan Parties' businesses and the preservation of the value of the DIP Loan Parties' assets; and it appearing that the DIP Loan Parties' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING**, **THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.      *Petition Date*.  On April 4, 2023 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**").  On April 4, 2023, this Court entered an order approving the joint administration of the Chapter 11 Cases.

B.      *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      *Jurisdiction and Venue*.  This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      *Committee Formation*.  As of the date hereof, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "**Creditors' Committee**").

E.      *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). Proper, timely, adequate and sufficient notice of the Interim Hearing and the DIP Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice of the DIP Motion or the entry of this Interim Order shall be required.

F.      *Cash Collateral*.  As used herein, the term "**Cash Collateral**" shall mean all of the Debtors' cash except for cash that is an Excluded Asset, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of the Prepetition Secured Party and DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

G.      *Debtors' Stipulations*.  Subject only to the limitations contained in paragraph 21 hereof, and after consultation with their attorneys and financial advisors, the Debtors admit, stipulate and agree that:

(i)      *Prepetition Notes*. Pursuant to (i) that certain senior secured convertible note due November 4, 2024, dated as of November 4, 2022 (as amended by that certain Note Amendment (the "**2023 Amendment**") dated as of February 28, 2023, among Virgin Orbit Holdings, Inc., as issuer (in such capacity, the "**Prepetition Borrower**"), each of the Debtors, as guarantors party thereto (the "**Prepetition Guarantors**") and Virgin Investments Limited, as

holder ("**VIL",** the "**Prepetition Holder**" or the "**Prepetition Secured Party**", and as otherwise amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**November 2022 Note**") issued by the Prepetition Borrower to VIL, (ii) that certain senior secured convertible note due November 4, 2024, dated as of December 19, 2022, among the Prepetition Borrower, the Prepetition Guarantors and the Prepetition Holder (as amended by the 2023 Amendment, and as otherwise amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**December 2022 Note**"), (iii) that certain senior secured convertible note due November 4, 2024, dated as of January 30, 2023, among the Prepetition Borrower, the Prepetition Guarantors and the Prepetition Holder (as amended by that certain 2023 Amendment, and as otherwise amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**January 2022 Note**"), (iv) that certain senior secured convertible note due November 4, 2024, dated as of February 28, 2023, among the Prepetition Borrower, the Prepetition Guarantors and the Prepetition Holder (as amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**February 2023 Note**") and (v) that certain senior secured convertible note due November 4, 2024, dated as of March 30, 2023, among the Prepetition Borrower, the Prepetition Guarantors and the Prepetition Holder (as amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**Prepetition Bridge Note**", and together with the November 2022 Note, the December 2022 Note, the January 2023 Note and the February 2023 Note, the "**Prepetition Notes**", and collectively with any other agreements and documents executed or delivered in connection with the Prepetition Notes, including any subscription agreements therefor, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the

"**Prepetition Notes Documents**"), the Prepetition Borrower promised to pay to the Prepetition Holder and the Prepetition Guarantors guaranteed on a joint and several basis the obligations of the Prepetition Borrower under the Prepetition Notes.

(ii) *Prepetition Secured Debt*. The Prepetition Borrower and the Prepetition Guarantors were justly and lawfully indebted and liable to the Prepetition Secured Party without defense, challenge, objection, claim, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $70,900,000 plus accrued and unpaid interest thereon and any fees, expenses and disbursements, costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition Notes Documents (collectively, the "**Prepetition Secured Debt**"), which Prepetition Secured Debt has been guaranteed on a joint and several basis by each of the Prepetition Guarantors;

(iii) *Prepetition Liens*. As more fully set forth in the Prepetition Notes Documents, prior to the Petition Date, the Prepetition Borrower and the Prepetition Guarantors each granted to the Prepetition Secured Party, a security interest in and continuing lien on (the "**Prepetition Liens**") substantially all of their assets and property, including Cash Collateral, subject to certain limited customary exclusions as set forth in the Prepetition Notes Documents (the "**Prepetition Collateral**").

(iv) *Validity, Perfection and Priority of Prepetition Liens and Prepetition Secured Debt*. The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Party for fair consideration and reasonably equivalent value; (b) the Prepetition Liens were senior in priority

over any and all other liens on the Prepetition Collateral, subject only to certain liens senior by operation of law (solely to the extent any such liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "**Prepetition Permitted Prior Liens**"); (c) the Prepetition Secured Debt constitutes legal, valid, binding, and non-avoidable obligations of the Prepetition Borrowers and Prepetition Guarantors enforceable in accordance with the terms of the applicable Prepetition Notes Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Debt exist, and no portion of the Prepetition Liens or Prepetition Secured Debt is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Party or its respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Notes; and (f) the Debtors waive, discharge, and release any right to challenge any of the Prepetition Secured Debt, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens securing the Prepetition Secured Debt.

(v)     *No Claims or Causes of Action*.  No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Party (in its capacity as such) under any agreements by and among the Debtors and the Prepetition Secured Party that is in existence as of the Petition Date.

(vi)     *Release*.  Effective as of the date of entry of this Interim Order, subject to the rights and limitations set forth in paragraph 21 of herein, each of the Debtors and the Debtors' estates, on its and their own behalf, on behalf of its and their respective past, present and future predecessors, heirs, successors, subsidiaries, and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Secured Party, the DIP Secured Parties, and each of their respective Representatives (as defined herein) (collectively, the "**Released Parties**"), from any and all (a) obligations and liabilities to the Debtors (and their successors and assigns) and (b) claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the date of this Interim Order of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law or otherwise (collectively, the "**Released Claims**"), in each case arising out of or related to (as applicable) the Prepetition Notes Documents, the DIP Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the transactions and agreements reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or  hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order.  For the avoidance of doubt, nothing in this release shall relieve the DIP Lenders or the Debtors of their Obligations under the DIP Documents from and after the date of this Interim Order.

H.    *Corporate Authority*. Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

I.    *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(i)    Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the DIP Loan Parties to obtain financing pursuant to the DIP Documents.

(ii)    The DIP Loan Parties have an immediate and critical need to obtain the DIP Financing and to use the Prepetition Collateral (including Cash Collateral) in order to, among other things (a) permit the orderly continuation of the operation of their business, (b) maintain business relationships with vendors, suppliers and customers, including certain governmental entities, (c) make payroll, (d) make capital expenditures, (e) satisfy other working capital and operational needs and (f) fund expenses of the Chapter 11 Cases.  In the absence of the DIP Facilities and the use of Cash Collateral, the Debtors' business and estates would suffer immediate and irreparable harm. The access of the DIP Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, the incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the values of the DIP Loan Parties and to a successful sale of all or substantially all of the DIP Loan Parties' assets.

(iii)    The DIP Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The DIP Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting to the

DIP Lenders, the DIP Liens and the DIP Superpriority Claims (each as defined herein) and incurring the Adequate Protection Obligations (as defined herein), in each case subject to the Carve Out to the extent set forth herein, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(iv)     The DIP Loan Parties may continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which constitute Prepetition Collateral under the Prepetition Notes Documents that are subject to the Prepetition Secured Party's security interests as set forth in the Prepetition Notes Documents, as applicable.

(v)     The DIP Loan Parties desire to use a portion of the cash, rents, income, offspring, products, proceeds and profits described in the preceding paragraph in their business operations that constitute Cash Collateral of the Prepetition Secured Party under section 363(a) of the Bankruptcy Code.  Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date, including balances of funds in the DIP Loan Parties' prepetition and postpetition operating bank accounts, also constitute Cash Collateral.

(vi)     Based on the DIP Motion, the DIP Declarations and the record presented to the Court at the Interim Hearing, the terms of the DIP Financing, the terms of the adequate protection granted to the Prepetition Secured Party as provided in paragraph 16 of this Interim Order (the "**Adequate Protection**"), and the terms on which the DIP Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(vii)     The DIP Financing (including the Roll-Up), the Adequate Protection and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured Parties and the Prepetition Secured Party, and all of the DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: all loans made to and guarantees issued by the DIP Loan Parties pursuant to the DIP Documents and any DIP Obligations shall be deemed to have been extended by the DIP Agent and the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified on appeal.

(viii)     The Prepetition Secured Party acted in good faith regarding the DIP Financing and the DIP Loan Parties' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the DIP Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of and performance under the Adequate Protection Obligations and the granting of the Adequate Protection Liens (as defined herein)), in accordance with the terms hereof, and the Prepetition Secured Party (and the successors and assigns thereof) shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal.

(ix)     The Prepetition Secured Party is entitled to the Adequate Protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the DIP Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral, including the Cash Collateral, and the Prepetition Secured Party has consented or is deemed hereby to have consented to the use of the Prepetition Collateral, including the Cash Collateral, the priming of the Prepetition Liens by the DIP Liens pursuant to the terms set forth in this Interim Order and the DIP Documents, the Roll-Up; *provided* that nothing in this Interim Order or the DIP Documents shall (x) be construed as the affirmative consent by the Prepetition Secured Party for the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order to the extent such consent has been or is deemed to have been given, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) other than as contemplated by the DIP Financing authorized by this Interim Order or (z) prejudice, limit or otherwise impair the rights of the Prepetition Secured Party to seek new, different or additional adequate protection or assert any rights of the Prepetition Secured Party, and the rights of any other party in interest, including the DIP Loan Parties, to object to such relief are hereby preserved.

(x)     Upon (i) entry of this Interim Order, the exchange and substitution of Interim Rolled-Up Notes with Interim Roll-Up Loans on a dollar-for-dollar basis and (ii) entry of the Final Order, the exchange and substitution of Final Rolled-Up Notes with Final Roll-Up Loans

on a dollar-for-dollar basis, reflects the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties. The Prepetition Secured Party would not otherwise consent to the use of its Cash Collateral or the subordination of its liens to the DIP Liens (as defined herein), and the DIP Secured Parties would not be willing to provide the DIP Facility or extend credit to the DIP Loan Parties thereunder without the Interim Roll-Up and the Final Roll-Up. The Interim Roll-Up and the Final Roll-Up will benefit the Debtors and their estates because they will enable the Debtors to obtain urgently needed financing critical to administering the Chapter 11 Cases and funding their operations, which financing would not otherwise be available.

(xi)     The Debtors have prepared and delivered to the advisors to the DIP Secured Parties an initial budget (the "**Initial DIP Budget**"), attached hereto as <u>Exhibit 2</u>. The Initial DIP Budget reflects, among other things, the DIP Borrower's and its subsidiaries' anticipated sources and uses of cash for each calendar week, in form and substance satisfactory to the Required DIP Lenders. The Initial DIP Budget may be modified, amended and updated from time to time in accordance with the DIP Credit Agreement, and once approved by the Required DIP Lenders, shall supplement and replace the Initial DIP Budget (the Initial DIP Budget and each subsequent approved budget, shall constitute without duplication, an "**Approved Budget**"). All material modifications, amendments and updates to the Approved Budget shall be filed with the Court. The Debtors shall provide the U.S. Trustee and any official committee appointed in these cases with any modifications, amendments and updates to the Approved Budget, whether or not material. The Debtors believe that the Initial DIP Budget is reasonable under the facts and circumstances. The DIP Secured Parties are relying, in part, upon the DIP Loan Parties' agreement to comply with the Approved Budget (subject only to permitted variances), the other DIP Documents and this

Interim Order in determining to enter into the postpetition financing arrangements provided for in this Interim Order.

(xii)    Subject to entry of the Final Order, the Prepetition Secured Party shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Party with respect to proceeds, product, offspring, or profits with respect to any of the Prepetition Collateral.

J.    *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), (c)(2) and 6003.  Absent granting the relief set forth in this Interim Order, the DIP Loan Parties' estates will be immediately and irreparably harmed. Consummation of the DIP Financing and the use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and the DIP Documents are therefore in the best interests of the DIP Loan Parties' estates and consistent with the DIP Loan Parties' exercise of their fiduciary duties.

K.    *Prepetition Permitted Prior Liens; Continuation of Prepetition Liens*.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the DIP Loan Parties, the DIP Agent, the DIP Secured Parties or the Prepetition Secured Party to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Prior Lien and/or security interests.  Subject to entry of the Final Order, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Prior Lien and is expressly subject to the DIP Liens (as defined herein).

The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens until indefeasible payment in full of all Prepetition Secured Debt and all DIP Obligations, respectively, in light of the integrated nature of the DIP Facility, the DIP Documents and the Prepetition Notes Documents.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. *Motion Granted*. The interim relief sought in the DIP Motion is granted as set forth herein, on an interim basis. The interim financing described herein is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in the DIP Documents and this Interim Order. All objections to entry of this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits. The rights of all parties in interest to object to the entry of a Final Order on the DIP Motion are fully reserved.

2. *Authorization of the DIP Financing and the DIP Documents*.

(a) The DIP Loan Parties are hereby authorized to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Documents and such other and further acts as may be necessary, appropriate or desirable in connection therewith. The DIP Borrower is hereby authorized to borrow money pursuant to the DIP Credit Agreement and each DIP Guarantor is hereby authorized to provide a guaranty of payment in respect of the DIP Borrower's obligations with respect to such borrowings, subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP

Documents (and subject to and in accordance with the Approved Budget) (subject to any permitted variances).

(b)    In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party is authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents (including, without limitation, the execution or recordation of pledge and security agreements, mortgages, financing statements and other similar documents), and to pay all fees, expenses and indemnities in connection with or that may be reasonably required, necessary, or desirable for the DIP Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the DIP Loan Parties and the DIP Agent (acting in accordance with the terms of the DIP Credit Agreement and at the direction of the Required DIP Lenders)[4] may agree, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees and other expenses (including attorneys', accountants', appraisers' and financial advisors' fees, subject to the terms of paragraph 20 below), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest

---

[4]    **"Required DIP Lenders"** means the "Required Lenders" as defined in the DIP Credit Agreement.

payable thereunder; *provided* that, for the avoidance of doubt, updates and supplements to the Approved Budget required to be delivered by the DIP Loan Parties under the DIP Documents shall not, for purposes of this Interim Order or any Final Order, be considered amendments or modifications to the Approved Budget or the DIP Documents that require approval of this Court;

(iii)     the non-refundable payment to the DIP Agent and the DIP Secured Parties, as the case may be, of all reasonable fees, including upfront fees, closing fees, commitment fees, closing date fees or original issue discount fees or agency fees, indemnities and professional fees (subject to the terms of paragraph 20 below) (the payment of which fees shall be irrevocable, and shall be, and shall be deemed to have been, approved upon entry of this Interim Order, whether any such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment,  or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise by any person or entity) and any amounts due (or that may become due) in respect of any indemnification and expense reimbursement obligations, in each case referred to in the DIP Credit Agreement or DIP Documents (or in any separate letter agreements) and the costs and expenses as may be due from time to time, including, without limitation, the fees and expenses of the professionals retained by, or on behalf of, any of the DIP Agent or DIP Secured Parties (subject to the terms of paragraph 20 below) (including without limitation those of Davis Polk & Wardwell LLP, FTI Consulting, Inc., Morris, Nichols, Arsht & Tunnell LLP and any local legal counsel or other advisors in any foreign jurisdictions and any other advisors as are permitted under the

applicable DIP Documents), in each case, as provided for in the DIP Documents (collectively, the "**DIP Fees and Expenses**"), without the need to file retention motions or fee applications; and

(iv)       the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and the DIP Superpriority Claims and perfection of the DIP Liens and DIP Superpriority Claims as permitted herein and therein, and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith, in each case in accordance with the terms of the DIP Documents.

3.       *DIP Obligations*.  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute legal, valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable against each DIP Loan Party and their estates in accordance with the terms of the DIP Documents and this Interim Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**")**.**  Upon execution and delivery of the DIP Documents, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the DIP Loan Parties to any of the DIP Agent or DIP Secured Parties, in each case, under, or secured by, the DIP Documents or this Interim Order, including all principal, interest, costs, fees, expenses, premiums, indemnities and other amounts under the DIP Documents (including this Interim Order); *provided* that the Initial Funding Fee applicable to the Interim Roll-Up Loans shall be payable only upon entry of the Final Order approving such Initial Funding Fee.  The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations.  Except as permitted hereby, no obligation,

payment, transfer, or grant of security hereunder or under the DIP Documents to the DIP Agent and/or the DIP Secured Parties (including their Representatives) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4. *Prepetition Secured Debt Roll-Up.*

(a) Subject to (i) entry of this Interim Order, the Debtors shall be deemed to substitute and exchange Interim Rolled-Up Notes of the DIP Lenders on a cashless, dollar-for-dollar basis with Interim Roll-Up Loans in accordance with the Interim Roll-Up and subject to the terms and conditions set forth in the DIP Documents and this Interim Order and (ii) entry of the Final Order, and effective upon the Final Funding Date[5] in accordance with the DIP Credit Agreement and the other DIP Documents, the Debtors shall be deemed to substitute and exchange Final Rolled-Up Notes of the DIP Lenders on a cashless, dollar-for-dollar basis with Final Roll-Up Loans in accordance with the Final Roll-Up and subject to the terms and conditions set forth in the DIP Documents. The Interim Roll-Up Loans and the Final Roll-Up Loans deemed substituted and exchanged under this paragraph 4(a) shall be deemed indefeasible and the Interim Rolled-Up Notes and Final Rolled-Up Notes substituted thereby shall be deemed exchanged

---

[5] "**Final Funding Date**" means the date of funding of the DIP Final New Money Loans.

therefor by the DIP Lenders (or an investment advisor, manager, or beneficial owner for the account of such DIP Lender, or an affiliated fund or trade counterparty designated by such DIP Lender). The cashless substitution and exchange dollar-for-dollar of Interim Rolled-Up Notes and Final Rolled-Up Notes under the Prepetition Notes Documents by "rolling-up" such amounts into DIP Obligations as described in this paragraph 4(a) shall be authorized as compensation for, in consideration for, as a necessary inducement for, and on account of the agreement of the DIP Lenders to fund the DIP Loans and the Prepetition Holder to fund the Prepetition Bridge Note and not as adequate protection for, or otherwise on account of, the Prepetition Notes. Notwithstanding anything to the contrary herein or in the DIP Documents, the claims and liens in respect of the Interim Roll-Up Loans and the Final Roll-Up Loans shall be subject and subordinate to the claims and liens in respect of the Carve Out in all respects.

(b)     The Interim Roll-Up authorized upon entry of this Interim Order shall be final, subject only to the challenge rights in paragraph 21 hereof

(c)     The DIP Agent, acting at the direction of the Required DIP Lenders, and the Prepetition Holder are hereby authorized to take any actions as may be necessary or advisable to effectuate the terms of the Interim Roll-Up.

5.     *Carve Out*.

(a)     *Carve Out.* As used in this Interim Order, the term "**Carve Out**" means the sum of: (i) all fees required to be paid to the Clerk of the Court ("**Clerk Fees**"), and all fees required to be paid to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (the "**U.S. Trustee Fees")** (without regard to the notice set forth in (iii) below), none of which fees shall be limited by any budget; (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee under

section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) all unpaid fees and expenses to the extent allowed at any time, whether by interim order, procedural order, or final order of the Court or otherwise (the "**Allowed Professional Fees**"), incurred by persons or firms retained by the Debtors pursuant to section 327 or 363 of the Bankruptcy Code ("the **Debtor Professionals**") and the Creditors' Committee (if appointed) pursuant to section 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $3,000,000 incurred after the first day following delivery by the DIP Agent of the Carve Out Trigger Notice (the "**Trigger Notice Cap**").

(b)     For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (or, after the DIP Obligations have been indefeasibly paid in full and the DIP Commitments terminated, the Prepetition Secured Party) to the Debtors, their lead restructuring counsel, the U.S. Trustee and lead counsel to the Creditors' Committee, which notice may be delivered only in the event of the occurrence and during the continuation of an Event of Default[6] and acceleration of the DIP Obligations under the DIP Facility, stating that the Trigger Notice Cap has been invoked.

(c)     *Carve Out Reserve.*  On a weekly basis, the Debtors shall fund from the DIP Facility or cash on hand into a segregated account (the "**Carve Out Reserve**") held in trust for the benefit of Professional Persons and, solely for purposes of the U.S. Trustee Fees held therein, the

---

[6] An "**Event of Default**" means (i) an Event of Default (as defined in the DIP Credit Agreement) or (ii) any material violation of the terms of this Interim Order, which must be consistent with the definition of Event of Default under the DIP Credit Agreement.

U.S. Trustee, an amount equal to the estimated amounts included in the Approved Budget for (i) U.S. Trustee Fees and (ii) fees and expenses of Professional Persons (collectively, the "**Estimated Fees**"); *provided*, *however*, that nothing in this Interim Order shall limit the amount of U.S. Trustee Fees or Clerk's Fees that are due and payable, or limit the liability of the Debtors' estates to pay all U.S. Trustee Fees or Clerk's Fees that are due and payable, or limit the source from which such U.S. Trustee Fees or Clerk's Fees may be paid. The Debtors may use funds held in the Carve Out Reserve to pay U.S. Trustee Fees and Clerk's Fees as they become due and payable, and shall otherwise use funds held in the Carve Out Reserve exclusively to pay Allowed Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of this Court; *provided* that when all obligations included within the Carve Out have been paid in full (regardless of when such obligations are due and/or allowed by this Court), any funds remaining in the Carve Out Reserve shall revert to the DIP Agent for the benefit for the DIP Secured Parties (or following the repayment in full of the DIP Obligations and the DIP Commitments, to the Prepetition Secured Party). Funds transferred to the Carve Out Reserve shall be subject to the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, and Adequate Protection Claims granted hereunder solely to the extent of such reversionary interest; *provided further* that, for the avoidance of doubt, such liens and claims shall be subject in all respects to the Carve Out.

(d)     On the day on which a Carve Out Trigger Notice is delivered by the DIP Agent (or the Prepetition Secured Party, as applicable) to the Debtors with a copy to counsel to the Creditors' Committee (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor (other than proceeds of the DIP Severance New Money Loans)

to fund the Carve Out Reserve in amount equal to: (i) any then-unpaid U.S. Trustee Fees and Allowed Professional Fees in excess of the Estimated Fees and (ii) the Trigger Notice Cap. Upon receipt by the Debtors of a Carve Out Trigger Notice, funds deposited and held in the Carve Out Reserve shall be used to pay any then unpaid U.S. Trustee Fees and Allowed Professional Fees prior to any and all other claims incurred for the period through and including the Termination Declaration Date. All funds in the Carve Out Reserve shall be used first to pay the obligations set forth in clauses (a)(i) through (a)(iii) of the definition of Carve Out set forth above, until paid in full, then to pay Allowed Professional Fees of Professional Persons incurred after the first day following delivery by the DIP Agent of the Carve Out Trigger Notice up to the Trigger Notice Cap, and then to pay the DIP Agent for the benefit of the DIP Secured Parties, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments (as defined in the DIP Credit Agreement) have been terminated, in which case any such excess shall be paid to the Prepetition Secured Party in accordance with its rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the DIP Documents or this Interim Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition Secured Party shall not sweep or foreclose on cash (including Cash Collateral and cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserve has been fully funded. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserve shall not constitute Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserve to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall anything in this Interim Order, the Initial Budget, Approved Budget, Carve Out, Trigger Notice Cap, or Carve Out Reserve, be construed as a cap or limitation on the amount of

the Allowed Professional Fees or U.S. Trustee Fees or Clerk Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Documents, or any other documentation of the DIP Facility or the Prepetition Notes, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the 507(b) Claims (as defined herein) of the Prepetition Secured Party, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Debt.

(e)     *No Direct Obligation To Pay Allowed Professional Fees*.  None of the DIP Secured Parties nor the Prepetition Secured Party shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured Party, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)     *Payment of Carve Out On or After the Termination Declaration Date*.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.

6.     *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the DIP Loan Parties on a joint and several basis (without the need to file any proof of

claim) with, to the fullest extent permitted under the Bankruptcy Code or other applicable law, priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, including any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a)(other than section 507(a)(1)), 507(b), 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**") but, subject to the entry of the Final Order, including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**")) in accordance with the DIP Documents, this Interim Order or the Final Order, subject only to the Carve Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal; *provided*, for the avoidance of doubt, that such DIP Superpriority Claims shall not have priority over claims of the type specified in section 507(a)(1) of the Bankruptcy Code. The DIP Superpriority Claims shall be senior to the 507(b) Claims (as defined herein), and subordinated to the Carve Out.

7.     *DIP Liens*.  As security for the DIP Obligations, effective and automatically and properly perfected upon the date of this Interim Order and without the necessity of the execution, recordation or filing by the DIP Loan Parties or any of the DIP Secured Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, intellectual property filings or other similar documents, notation of certificates of title for titled goods or other similar documents, instruments, deeds, charges or certificates, or the possession or control by the DIP Agent of, or over, any Collateral, without any further action by the DIP Agent, the following valid, binding, continuing, enforceable and non-avoidable security interests and liens (all security interests and liens granted to the DIP Agent, for its benefit and for the benefit of the DIP Secured Parties, pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**") are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Secured Parties (all property identified in clauses (a) through (c) below being collectively referred to as the "**DIP Collateral**"); *provided* that notwithstanding anything herein to the contrary, the DIP Liens shall be (i) subject and junior to the Carve Out in all respects, (ii) senior in all respects to the Prepetition Liens and (iii) senior in all respects to the Adequate Protection Liens:

(a)     *Liens on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, including, without limitation, any and all unencumbered cash of the DIP

Loan Parties and any investment of cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, causes of action, insurance policies and rights, claims and proceeds from insurance, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), chattel paper (including electronic chattel paper and tangible chattel paper), interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, equity interests of subsidiaries, joint ventures and other entities, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise (the "**Unencumbered Property**"), in each case other than the Avoidance Actions (but, for the avoidance of doubt, subject to entry of the Final Order, "Unencumbered Property" shall include Avoidance Proceeds).

(b)     *Liens Priming Certain Prepetition Secured Party's Liens*.   Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all tangible and intangible prepetition and postpetition property of the DIP Loan Parties subject to the Prepetition Liens, regardless of where located, regardless whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected (the "**Priming Liens**"), which Priming Liens shall prime in all respects the interests of the Prepetition Secured Party arising from the current and future liens of the Prepetition Secured Party (including, without limitation, the Adequate Protection Liens granted to the Prepetition Secured Party) (the "**Primed Liens**").

(c)     *Liens Junior to Certain Other Liens*.   Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and

lien upon all tangible and intangible prepetition and postpetition property of the DIP Loan Parties that is subject to (i) valid, perfected and non-avoidable senior liens in existence immediately prior to the Petition Date (other than the Primed Liens) or (ii) valid and non-avoidable senior liens (other than the Primed Liens) in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date, as permitted by section 546(b) of the Bankruptcy Code, which shall be (x) immediately junior and subordinate to any valid, perfected and non-avoidable liens (other than the Primed Liens) in existence immediately prior to the Petition Date, and (y) any such valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code; *provided* that nothing in the foregoing clauses (i) and (ii) shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder; and

(d)     *Liens Senior to Certain Other Liens.*  The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties, or (C) any intercompany or affiliate liens of the DIP Loan Parties or security interests of the DIP Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

8.     *Protection of DIP Lenders' Rights*.

(a)     So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding DIP Commitments under the DIP Documents, the Prepetition Secured Party shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Notes Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral, including in connection with the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, the DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the DIP Collateral other than as necessary to give effect to this Interim Order other than, (x) solely as to this clause (iii), the DIP Agent filing financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or (y) as may be required by applicable state law or foreign law to complete a previously commenced process of perfection or to continue the perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; and (iv) deliver or cause to be delivered, at the DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Secured Parties or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any sale or Court-approved disposition.

(b)     To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral, or has been noted as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Secured Parties, and such Prepetition Secured Party shall comply with the instructions of the DIP Agent, acting at the direction of the Required DIP Lenders, with respect to the exercise of such control or possession.

(c)     Any proceeds of Prepetition Collateral subject to the Primed Liens received by the Prepetition Secured Party in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Agent in the same form as received by the Prepetition Secured Party, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The DIP Agent is hereby authorized to make any such endorsements as agent for the Prepetition Secured Party.  This authorization is coupled with an interest and is irrevocable.

9.     *Termination Date*.  On the Termination Date (as defined below), consistent with Sections 2.01 and 7.01 of the DIP Credit Agreement, (a) all DIP Obligations shall be immediately due and payable and all DIP Commitments will terminate; (b) the Prepetition Secured Party may terminate, reduce or restrict the ability of the Debtors to use Cash Collateral; *provided*, *however*, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to fund the Carve Out and pay payroll and other expenses critical to the administration of the Debtors' estates strictly in accordance with the Approved Budget; and (c) the DIP Agent or the

DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Documents in accordance with this Interim Order.

10. *Rights and Remedies Upon Event of Default.* Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of the DIP Documents and this Interim Order, including the Remedies Notice Period for the exercise of remedies other than the following (a) the DIP Agent or DIP Secured Parties may declare, which declaration shall be in writing and delivered by email and overnight mail to the Debtors, any Creditors Committee, and the U.S. Trustee (any such declaration shall be referred to herein as a "**Termination Declaration**") (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent or DIP Secured Parties, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that any obligations to fund the Carve Out Reserve shall be triggered, through the delivery of the Carve Out Trigger Notice to the DIP Borrower; and (b) subject to paragraph 9(b), the Prepetition Secured Party may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date on which a Termination Declaration is delivered, the "**Termination Date**"). The automatic stay in the Chapter 11 Cases otherwise applicable to the DIP Agent, the DIP Secured Parties and the Prepetition Secured Party is hereby modified so that five (5) calendar days after the Termination Date (the "**Remedies Notice Period**"): (a) the DIP Agent on behalf of the DIP Secured Parties shall be entitled to exercise all of its rights and remedies in accordance with the DIP Documents

and this Interim Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, including (subject to: (a) the funding of the Carve Out Reserve in accordance with paragraph 5(d) hereof; (b) payment of all accrued but unpaid wages and benefits to the Debtors' employees; and (c) any remaining proceeds of the DIP Severance New Money Loans to be used to make Approved Severance Payments in accordance with the DIP Documents and the Severance Approval Order) to freeze monies or balances in the Segregated Account and immediately set-off any and all amounts in the Segregated Account against the DIP Obligations (or, if paid in full, the Prepetition Secured Debt) and (b) subject to the foregoing clause (a), the Prepetition Secured Party shall be entitled to exercise its rights and remedies to the extent available in accordance with the applicable Prepetition Notes Documents and this Interim Order with respect to the Debtors' use of Cash Collateral. During the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court for the purpose of contesting whether an Event of Default has occurred or is continuing (an "**Emergency Hearing**"). Unless the Court orders otherwise prior to the expiration of the Remedies Notice Period, the automatic stay, as to the DIP Agent, the DIP Secured Parties and the Prepetition Secured Party shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, absent order of the Court to the contrary, the DIP Agent, the DIP Secured Parties and the Prepetition Secured Party shall be permitted to exercise all remedies set forth herein, and in the DIP Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Interim Order; *provided*, that the Prepetition Secured Party shall be permitted to exercise remedies to the extent available solely with respect to the Debtors' use of Cash Collateral.

(a)    No rights, protections or remedies of the DIP Agent or the DIP Secured Parties granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

11.    *Limitation on Charging Expenses Against Collateral*.  Subject to entry of the Final Order, no costs or expenses of administration of the Chapter 11 Cases or any Successor Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP  Collateral (including Cash Collateral) or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent or the Prepetition Secured Party, as applicable, and no consent shall be implied from any other action, inaction or acquiescence by the DIP Agent, the DIP Secured Parties or the Prepetition Secured Party, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agent, the DIP Secured Parties or the Prepetition Secured Party to any charge, lien, assessment or claims against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12.    *No Marshaling*.  Subject to entry of the Final Order, in no event shall the DIP Agent, the DIP Secured Parties or the Prepetition Secured Party be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Secured Debt, or the Prepetition Collateral.  Further, subject to entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code

apply to the Prepetition Secured Party with respect to proceeds, products, offspring or profits of any Prepetition Collateral.

13. *Payments Free and Clear*. Any and all payments or proceeds remitted to the DIP Agent by, through or on behalf of the DIP Secured Parties pursuant to the provisions of this Interim Order or the DIP Documents shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order, any claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors, subject to the Carve Out in all respects.

14. *Use of Cash Collateral*. The Debtors are hereby authorized, subject to the terms and conditions of this Interim Order, to use all Cash Collateral in accordance with the DIP Documents and the Approved Budget; *provided* that (a) the Prepetition Secured Party is granted the Adequate Protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

15. *Disposition of DIP Collateral*. The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except for the sale, conveyance, transfer or other disposition of property or assets in the ordinary course of business up to $100,000 for any individual sale and $500,000 in the aggregate or except as otherwise provided for in the DIP Documents or an order of the Court.

16. *Adequate Protection of Prepetition Secured Party*. The Prepetition Secured Party is entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of its interests in all Prepetition Collateral (including Cash Collateral) in an

amount equal to the aggregate diminution in the value of the Prepetition Secured Party's interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, which diminution is as a result of, or arises from, or is attributable to, the sale, lease or use by the Debtors of the Prepetition Collateral, the priming of the Prepetition Liens by the DIP Liens pursuant to the DIP Documents and this Interim Order, the grant of any other lien under section 364 of the Bankruptcy Code or the stay of the Prepetition Secured Party's rights under the Prepetition Collateral, the payment of any amounts under the Carve Out or pursuant to this Interim Order, the Final Order or any other order of the Court or provision of the Bankruptcy Code or otherwise, and the imposition of the Automatic Stay (the "**Adequate Protection Claims**"). In consideration of the foregoing, the Prepetition Secured Party is hereby granted the following as Adequate Protection for, and to secure repayment of an amount equal to such Adequate Protection Claims, and as an inducement to the Prepetition Secured Party to consent to the priming of the Prepetition Liens and use of the Prepetition Collateral (including Cash Collateral) (collectively, the "**Adequate Protection Obligations**"):

(a) *Prepetition Adequate Protection Liens*. The Prepetition Secured Party is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements) in the amount of the Prepetition Secured Party's Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral (the "**Adequate Protection Liens**"), in each case subject and subordinate only to (A) the DIP Liens, (B) the Carve Out, and (C) Prepetition Permitted Prior Liens or any valid and non-avoidable senior liens (other than the Primed Liens) in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date.

(b)     *Section 507(b) Claims*.  The Prepetition Secured Party is hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Adequate Protection Claims, with, to the fullest extent permitted under the Bankruptcy Code, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**507(b) Claims**"), which 507(b) Claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding Avoidance Actions, but including, subject to entry of the Final Order, Avoidance Proceeds); provided, for the avoidance of doubt, that such claims shall not have priority over claims of the type specified in section 507(a)(1) of the Bankruptcy Code.  The 507(b) Claims shall be subject and subordinate to the Carve Out and the DIP Superpriority Claims.  Except to the extent expressly set forth in this Interim Order, the Final Order or the DIP Documents, the Prepetition Secured Party shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c)     *Prepetition Secured Party Fees and Expenses*.  The DIP Loan Parties shall provide the Prepetition Secured Party, without duplication of fees paid for the benefit of the DIP Secured Parties, cash payments of all reasonable and documented prepetition and postpetition fees and expenses, including, but not limited to, the reasonable and documented fees and out-of-pocket expenses of primary, special and local counsel (in each applicable jurisdiction) and financial advisors to the Prepetition Secured Party, including without limitation (i) Davis Polk & Wardwell LLP, FTI Consulting, Inc., Morris, Nichols, Arsht & Tunnell LLP, and any other advisors retained

by or on behalf of the Prepetition Secured Party (the "**Adequate Protection Fees and Expenses**") (and such counsel and advisors, the "**Prepetition Secured Party Advisors**"), subject to the review procedures set forth in paragraph 20 of this Interim Order.

(d)     *Prepetition Secured Party Payments*. To the extent allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent not duplicative of any interest accrued in connection with the Roll-Up Loans, interest shall continue to accrue on the Prepetition Secured Debt at the applicable rate of interest under the Prepetition Notes Documents, paid in kind by capitalizing such interest and adding it to the outstanding principal balance of the Prepetition Secured Debt in accordance with the Prepetition Notes Documents.  In addition, upon indefeasible payment in full of all DIP Obligations and all other obligations under the DIP Facility (other than contingent obligations for which no claim has been made), the DIP Loan Parties shall provide the Prepetition Secured Party cash payments in an amount equal to the net cash proceeds received by the Debtors from the sale of any DIP Collateral, which shall be payable immediately upon receipt of such proceeds, but shall be subject to the Carve Out.

(e)     *Milestones*. Upon indefeasible payment in full of all DIP Obligations and termination of all DIP Commitments, (i) the Prepetition Secured Party is hereby entitled to performance of those certain case milestones set forth in Section 6.25 of the DIP Credit Agreement (for such purposes, the "**Adequate Protection Milestones**"), and (ii) the Prepetition Holder shall constitute the Required DIP Lenders for purposes of any amendment, extension, waiver or other modification of such Adequate Protection Milestones.

(f)     *Budget and Financial Covenants*.  Upon indefeasible payment in full of all DIP Obligations and all other obligations under the DIP Facility, (i) the Approved Budget shall continue to be updated in accordance with the terms and conditions of the DIP Credit Agreement

(for such purposes, the "**Adequate Protection Budget Requirement**"), (ii) the Prepetition Secured Party is hereby entitled to performance of those certain financial and other covenants set forth in Sections 6.01 and 6.20 of the DIP Credit Agreement (for such purposes, the "**Adequate Protection Covenants**") and (iii) the Prepetition Holder shall constitute the Required DIP Lenders for purposes of any amendment, extension, waiver or other modification relating to the Adequate Protection Budget Requirement or Adequate Protection Covenants.

(g)     *Prepetition Secured Party's Adequate Protection Information Rights*.  The DIP Loan Parties shall promptly provide the Prepetition Secured Party and, to the extent applicable, counsel to such party (and subject to applicable confidentiality restrictions contained in any of the Prepetition Notes Documents), with all required written financial reporting and other periodic reporting that is required to be provided to the DIP Agent or the DIP Secured Parties under the DIP Documents, including without limitation the reporting required under Section 6.01 of the DIP Credit Agreement (the "**Adequate Protection Reporting Requirement**").  Upon indefeasible payment in full of all DIP Obligations and termination of all DIP Commitments, (i) the Prepetition Secured Party shall continue to be entitled hereby to satisfaction of the Adequate Protection Reporting Requirement and (ii) the Prepetition Holder shall constitute the Required DIP Lenders for purposes of any amendment, extension, waiver or other modification relating to the Adequate Protection Reporting Requirement.

(h)     *Maintenance of Collateral*.  The DIP Loan Parties shall continue to maintain and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Notes Documents and the DIP Documents.

17.     *Reservation of Rights of Prepetition Secured Party*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code,

including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Party and any other parties' holding interests that are secured by liens primed by the DIP Financing; *provided* that the Prepetition Secured Party may request further or different adequate protection and the DIP Loan Parties or any other party in interest may contest any such request.

18.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     Without in any way limiting the automatic validity and effective perfection of the DIP Liens granted pursuant to paragraph 7 hereof and the Adequate Protection Liens granted pursuant to paragraph 16 hereof, the DIP Agent, the DIP Secured Parties and the Prepetition Secured Party are hereby authorized, but not required, to file or record (and to execute in the name of the DIP Loan Parties and the Prepetition Secured Party (as applicable), as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, including as may be reasonably required or deemed appropriate by the DIP Agent, acting at the direction of the Required DIP Lenders, or take possession of or control over cash or securities, or to amend or modify security documents, or enter into, amend or modify intercreditor agreements, or to subordinate existing liens and any other similar action or action in connection therewith or take any other action in order to document, validate and perfect the liens and security interests granted to them hereunder the ("**Perfection Actions**").  Whether or not the DIP Agent, on behalf of the DIP Secured Parties and acting at the direction of the Required DIP Lenders, or the Prepetition Secured Party shall take such Perfection Actions, the liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.

Upon the request of DIP Agent, acting at the direction of the Required DIP Lenders, the Prepetition Secured Party and the DIP Loan Parties, without any further consent of any party, and at the sole cost of the Debtors as set forth herein, is authorized and directed, and such direction is hereby deemed to constitute required direction under the applicable DIP Documents or Prepetition Notes Documents, to take, execute, deliver and file such actions, instruments and agreements (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens in all jurisdictions required under the DIP Credit Agreement, including all local law documentation therefor determined to be reasonably necessary by the DIP Agent, acting at the direction of the Required DIP Lenders; *provided*, *however*, that no action need be taken in a foreign jurisdiction that would jeopardize the validity and enforceability of the Prepetition Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.  To the extent necessary to effectuate the terms of this Interim Order and the DIP Documents, each of the DIP Agent and the Prepetition Secured Party hereby is deemed to appoint the other (and deemed to have accepted such appointment) to act as its agent with respect to the Collateral (as defined in the DIP Documents) and under the Security Documents (as defined in the DIP Documents) to which they are a party in such capacity, with such powers as are expressly delegated thereto under the DIP Documents and Prepetition Loan Documents (and even if it involves self-contracting and multiple representation to the extent legally possible), together with such other powers as are reasonably incidental thereto.

(b)     A certified copy of this Interim Order may, in the discretion of the DIP  Agent, acting at the direction of the Required DIP Lenders, or the Prepetition Secured Party, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby

authorized and directed to accept a certified copy of this Interim Order for filing and/or recording, as applicable. The Automatic Stay shall be modified to the extent necessary to permit the DIP Agent and the Prepetition Secured Party to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

19. *Preservation of Rights Granted Under this Interim Order.*

(a) Other than the Carve Out and other claims and liens expressly granted or permitted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agent and the DIP Secured Parties or the Prepetition Secured Party shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in or permitted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the DIP Loan Parties.

(b) Upon the occurrence of any Event of Default (as defined in the DIP Credit Agreement) where applicable, default interest, shall accrue and be paid as set forth in the DIP Credit Agreement. Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code: (A) the DIP Superpriority Claims, the

507(b) Claims, the DIP Liens, and the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been paid in full (and that such DIP Superpriority Claims, 507(b) Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (B) the other rights granted by this Interim Order, including with respect to the Carve Out, shall not be affected.

(c)    If any or all of the provisions of this Interim Order are hereafter vacated, reversed or modified on appeal, such vacatur, reversal or modification shall not affect the validity of any debt so incurred, or any priority or lien granted, to the DIP Lenders, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal. Notwithstanding any reversal, modification or vacatur on appeal of  any use of Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate Protection Liens incurred by the DIP Loan Parties and granted to the DIP Agent, the DIP Secured Parties or the Prepetition Secured Party, as the case may be, prior to the actual receipt of written notice by the DIP Agent or the Prepetition Holder, as applicable, of the effective date of such reversal, modification or vacatur on appeal, shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Secured Parties and the Prepetition Secured Party shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code, this Interim Order and the DIP  Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Secured Parties and the Prepetition Secured Party granted by the provisions of this Interim Order and the DIP Documents and the Carve Out shall survive, and shall not be modified, impaired or discharged by: (i)  the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of the Chapter 11 Cases or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the DIP Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Interim Order and the DIP Documents shall continue in the Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Secured Parties and the Prepetition Secured Party granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP  Documents, and the DIP Commitments have been terminated (and in the case of rights and remedies of the Prepetition Secured Party, shall remain in full force and effect thereafter, subject to the terms of this Interim Order), and the Carve Out shall continue in full force and effect.

20.    *Payment of Fees and Expenses*.  The DIP Loan Parties are authorized to and shall pay the DIP Fees and Expenses and the Adequate Protection Fees and Expenses whether or not included in the Approved Budget.  Subject to the review procedures set forth in this paragraph 20, payment of all DIP Fees and Expenses and Adequate Protection Fees and Expenses shall not be subject to allowance or review by the Court.  Professionals for the DIP Secured Parties and the Prepetition Secured Party shall not be required to comply with the U.S. Trustee fee guidelines, however, any time that such professionals seek payment of fees and expenses from the Debtors prior to the effective date of a chapter 11 plan, each professional shall provide copies of its invoices (which may be in summary form but shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law school graduation for each attorney; *provided*, *however*, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional); *provided*, that such invoices may be redacted, summarized or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of their invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law; and *provided further* that the U.S. Trustee reserves his right to seek to obtain unredacted copies of such invoices) to the DIP Loan Parties, the U.S. Trustee, and counsel to any statutory committee appointed in the Chapter 11 Cases (together, the "**Review Parties**").  Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within

ten (10) calendar days after the receipt of any such invoice by the Review Parties (the "**Review Period**"). If no written objection is received by 12:00 p.m. prevailing Eastern Time on the end date of the Review Period, the DIP Loan Parties shall promptly pay such invoices within five (5) calendar days. If an objection to a professional's invoice is received within the Review Period, the DIP Loan Parties shall promptly pay the undisputed amount of the invoice (without further order of, or application to, the Court or notice to any other party) and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the DIP Loan Parties are authorized and directed to pay on the closing date of the DIP Financing, the DIP Fees and Expenses and Adequate Protection Fees and Expenses incurred on or prior to such date without the need for any professional engaged by, or on behalf of, the DIP Secured Parties or the Prepetition Secured Party to first deliver a copy of its invoice or other supporting documentation to the Review Parties (other than the DIP Loan Parties); *provided* that, on or following the payment of such professional fees on the Closing Date of the DIP Facility, such professionals shall provide invoices (in the form described in this paragraph 20) to the Debtor DIP Loan Parties and the U.S. Trustee, the Review Period shall apply to such invoices and the Court may fashion appropriate relief upon successful objection from the Debtor DIP Loan Parties or the U.S. Trustee during such Review Period. No attorney or advisor to the DIP Secured Parties or the Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the (i) the DIP Secured Parties in connection with or with respect to the DIP Facility and (ii) the Prepetition Secured Party in connection with or with respect to these matters, shall not be subject

to recharacterization, avoidance, subordination, disgorgement or any similar form of recovery by the DIP Loan Parties or any other person, except as provided in paragraph 21 of this Interim Order.

21.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in paragraph G of this Interim Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless (a) such committee or any other party in interest with requisite standing (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the expiration of the Challenge Period and subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so) has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the earlier of (x) an order confirming a chapter 11 plan and (y) 75 calendar days after entry of this Interim Order; (ii) any such later date agreed to in writing by the Debtors, the DIP Agent (acting with the direction of the Required DIP Lenders) and Prepetition Secured Party; and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (i)-(iii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt or the

Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against the Prepetition Secured Party or its respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Notes Documents, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim, and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred, including any amended or additional claims that may or could have been asserted thereafter through an amended complaint under Fed. R. Civ. P. 15 or otherwise. If the cases convert to cases under Chapter 7, or if a Chapter 11 trustee is appointed, in each case prior to the end of the Challenge Period, the Challenge Period shall be extended for the Chapter 7 or Chapter 11 trustee to 30 days after their appointment. If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (1) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest; (2) the obligations of the DIP Loan Parties under the Prepetition Notes Documents, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim,

counterclaim, recharacterization, subordination, recoupment, offset or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (3) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (4) the Prepetition Secured Debt and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the DIP Loan Parties' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against the Prepetition Secured Party and its Representatives arising out of or relating to any of the Prepetition Notes Documents, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral shall be deemed forever waived, released and barred. If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any statutory or nonstatutory committee appointed or formed in the Chapter 11 Cases and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-

appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Notes Documents, the Prepetition Secured Debt or the Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization. For the avoidance of doubt, any chapter 11 or chapter 7 trustee appointed or elected in these cases, until the expiration of the Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in paragraph G of this Interim Order.

22. *Limitation on Use of DIP Financing Proceeds and Collateral.* Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve Out, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party (a) in connection with the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Secured Parties, the Prepetition Secured Party, or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, in each case in their respective capacity as such, or any action purporting to do the foregoing in respect of the DIP

Obligations, DIP Liens, DIP Superpriority Claims, Prepetition Secured Debt, and/or the Adequate Protection Obligations and Adequate Protection Liens granted to the Prepetition Secured Party, as applicable, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Secured Debt and/or the liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under this Interim Order, the Final Order, the DIP Documents or the Prepetition Notes Documents in respect of the Prepetition Secured Debt, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans (other than the DIP Severance New Money Loans) and/or DIP Collateral (including Cash Collateral) may be used by the Creditors' Committee to investigate (but not to prosecute or initiate the prosecution of, including the preparation of any complaint or motion on account of) (A) the claims and liens of the Prepetition Secured Party and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Party (together, the "**Investigation**"), up to an aggregate cap of no more than $50,000 (the "**Investigation Budget**"), (b) to prevent, hinder, or otherwise delay or interfere with the Prepetition Secured Party's, or the DIP Agent's, or the DIP Secured Parties', as applicable, enforcement or realization on the Prepetition Secured Debt, Prepetition Collateral, DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under the Interim Order or Final Order, as applicable, each in accordance with the DIP Documents, the Prepetition Notes Documents or this Interim Order; (c) to seek to modify any of the rights and remedies granted to the Prepetition Secured Party, the DIP Agent or the DIP Secured Parties under this Interim Order, the Prepetition Notes Documents or the DIP Documents,

as applicable; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and 507(b) Claims granted to the Prepetition Secured Party; or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved or authorized by the Court, agreed to in writing by the DIP Lenders, expressly permitted under this Interim Order or permitted under the DIP Documents (including the Approved Budget, subject to permitted variances), in each case unless all DIP Obligations, Prepetition Secured Debt, Adequate Protection Obligations, and claims granted to the DIP Agent, DIP Secured Parties and Prepetition Secured Party under this Interim Order, have been refinanced or paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the DIP Secured Parties. Notwithstanding anything to the contrary herein, the proceeds of the DIP Severance New Money Loans shall be used solely to make Approved Severance Payments in accordance with the DIP Documents and the Severance Approval Order, and not for any other purpose. For the avoidance of doubt, this paragraph 22 shall not limit the Debtors' right to use DIP Collateral to contest that an Event of Default has occurred hereunder pursuant to and consistent with paragraph 10 of this Interim Order.

23. *Indemnification*. The Prepetition Secured Party and the DIP Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, the DIP

Documents, and all other documents related to and all transactions contemplated by the foregoing. Accordingly, without limitation to any other right to indemnification, the DIP Secured Parties shall be and hereby are indemnified (as applicable) as provided in the DIP Documents, as applicable, including, without limitation, Section 9.05 of the DIP Credit Agreement. The Debtors agree that no exception or defense in contract, law, or equity exists as of the date of this Interim Order to any obligation set forth, as the case may be, in this paragraph 23 or in the DIP Documents to indemnify and/or hold harmless the DIP Secured Parties, and any such defenses that may be in existence as of the date of this Interim Order are hereby waived, except in the case of bad faith, fraud, or gross negligence.

24.     *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents (including, but not limited to, with respect to the Adequate Protection Obligations), the provisions of this Interim Order shall govern.

25.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be, subject to the challenge rights in paragraph 21 hereof, binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Secured Parties, the Prepetition Secured Party, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Secured Parties, the Prepetition Secured Party and the Debtors and their respective successors and assigns; *provided* that the DIP Agent, the DIP Secured

Parties and the Prepetition Secured Party shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

26. *Limitation on Liability.* Nothing in this Interim Order, the DIP Documents, the Prepetition Notes Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. The DIP Secured Parties and Prepetition Secured Party shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors. By virtue of making any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents or Prepetition Notes Documents, none of the DIP Secured Parties or the Prepetition Secured Party shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental

Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Agent, DIP Secured Parties or the Prepetition Secured Party solely in its capacity as the Prepetition Secured Party of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

27. *Proof of Claim*. The Prepetition Secured Party shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case in order to assert claims for payment of the Prepetition Secured Debt arising under the Prepetition Notes Documents, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts under the Prepetition Notes Documents. The statements of claim in respect of such indebtedness set forth in this Interim Order, together with any evidence accompanying the DIP Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status. The DIP Agent and the DIP Secured Parties shall similarly not be required to file proofs of claim with respect to their DIP Obligations under the DIP Documents, and the evidence presented with the DIP Motion and the record established at the Interim Hearing are deemed sufficient to, and do, constitute proofs of claim with respect to their obligations, secured status, and priority.

28. *Insurance*. To the extent that the Prepetition Holder is listed as loss payee under the DIP Borrower's or DIP Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee under the insurance policies (in any such case with the same priority of liens and claims thereunder relative to the priority of the Prepetition Liens and Adequate Protection Liens as set

forth herein), and shall act in that capacity and distribute any proceeds recovered or received in respect of the insurance policies, to the indefeasible payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the DIP Commitments, and to the payment of the applicable Prepetition Secured Debt.

29.    *Credit Bidding*.  (a) The DIP Agent shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral and (b) the Prepetition Secured Party shall have the right, consistent with the provisions of the Prepetition Notes Documents (and providing for the DIP Obligations to be indefeasibly repaid in full in cash and the termination of the DIP Commitments), to credit bid up to the full amount of the Prepetition Secured Debt, in each case as and to the extent provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, in each case unless the Court for cause orders otherwise.

30.    *Segregated Account*. In accordance with the DIP Documents, the Borrower is authorized and directed to deposit all proceeds of the DIP Loans, all cash proceeds from the sale, conveyance, transfer, other disposition of any DIP Collateral, all insurance and condemnation recoveries on account of DIP Collateral, any reimbursements from the Consolidated Omnibus Budget Reconciliation Act (COBRA), outplacement, or other employee benefit providers and the cash proceeds from any other transaction involving DIP Collateral into the account ending in 5911 at JP Morgan Chase Bank (the "**Segregated Account**").

31.     *Severance Approval*.   The Debtors are authorized to use the DIP Severance New Money Loans solely for Approved Severance Payments.   For the avoidance of doubt, entry of a final order (if any) approving the *Motion of Debtors for Entry of Interim and Final Orders (A) Authorizing Payment of Certain Prepetition Workforce Obligations, (B) Authorizing Continuance of Workforce Programs, (C) Authorizing Payment of Withholding and Payroll-Related Taxes, (D) Authorizing Payment of Prepetition Claims Owing to Administrators, and (E) Granting Related Relief* (the "**Wages Motion**") which authorizes the continuation and payment of the Severance (as defined and described in the Wages Motion) shall constitute a Severance Approval Order.

32.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

33.     *Modification of DIP Documents and Approved Budget*.  The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the DIP Secured Parties (or the Prepetition Secured Party after the indefeasible payment in full of the DIP Obligations and termination of the DIP Commitments) providing for any consensual non-material modifications to the Approved  Budget or the DIP Documents, or of any other modifications to the DIP Documents necessary to conform the terms of the DIP Documents to this Interim Order, in each case consistent with the amendment provisions of the DIP Documents; *provided*, *however*, that notice of any non-material modification or amendment to the DIP Documents shall be

provided to the U.S. Trustee and any statutory committee, which shall have three (3) business days from the date of receipt of such notice within which to object, in writing, to the modification or amendment on grounds that the proposed modification is material and should be subject to the notice procedures with respect to material modifications set forth in this paragraph. Any material modifications to the DIP Documents shall be made only pursuant to Court order, after notice and a hearing on parties in interest. The foregoing shall be without prejudice to the Debtors' right to seek approval from the Court of a material modification on an expedited basis.

34. *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

35. *Payments Held in Trust*. Except as expressly permitted in this Interim Order or the DIP Documents and except with respect to the DIP Loan Parties, in the event that any person or entity (other than a holder of a Prepetition Permitted Prior Lien) receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of all DIP Commitments, such person or entity (other than a holder of a Prepetition Permitted Prior Lien) shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Secured Parties and shall immediately turn over the proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

36. *Bankruptcy Rules*. The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

37. *No Third-Party Rights*. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

38. *Necessary Action*. The Debtors, the DIP Secured Parties and the Prepetition Secured Party are each authorized to take all actions as are necessary or appropriate to implement the terms of this Interim Order. In addition, the Automatic Stay is modified to permit affiliates of the Debtors who are not debtors in the Chapter 11 cases to take all actions as are necessary or appropriate to implement the terms of this Interim Order.

39. *Retention of Jurisdiction*. The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

40. *Final Hearing*. A final hearing to consider the relief requested in the Motion shall be held on May 1, 2023 at 9:30 a.m. (prevailing Eastern Time) and any objections or responses to the entry of the proposed Final Order shall be filed and served on the DIP Objection Parties (defined below) in accordance with paragraph 41 below on or prior to April 24, 2023 at 4:00 p.m. (prevailing Eastern Time) (the "**DIP Objection Deadline**").

41. *Objections*. Any party in interest objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the U.S. Trustee; (b) the Debtors, 4022 East Conant Street, Long Beach, CA 90808, Attn: Derrick Boston (derrick.boston@virginorbit.com); (c) proposed counsel to the Debtors: (i) Latham & Watkins LLP, (1) 355 South Grand Avenue, Suite 100, Los Angeles, California 90071 (Attn: Jeffrey E. Bjork (jeff.bjork@lw.com)) and (2) 1271 Avenue of the Americas, New York, NY

10020 (Attn: George Klidonas (george.klidonas@lw.com), Anupama Yerramalli (anu.yerramalli@lw.com), Conray C. Tseng (conray.tseng@lw.com), Preeta Paragash (preeta.paragash@lw.com), Liza L. Burton (liza.burton@lw.com), and Brian S. Rosen (brian.rosen@lw.com)); and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Kara Hammond Coyle (kcoyle@ycst.com) and Allison S. Mielke (amielke@ycst.com)); (d) counsel to the DIP Secured Parties and the Prepetition Secured Party: (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn.: Brian M. Resnick, Esq. (brian.resnick@davispolk.com), Josh Sturm, Esq. (joshua.sturm@davispolk.com) and Jarret Erickson, Esq. (jarret.erickson@davispolk.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP (Attn.: Robert J. Dehney, Esq. (rdehney@morrisnichols.com), Eric D. Schwartz, Esq. (eschwartz@morrisnichols.com), Tamara K. Mann, Esq. (tmann@morrisnichols.com) and Jonathan M. Weyand, Esq. (jweyand@morrisnichols.com); (together, the "**DIP Objection Parties**"), by no later than the DIP Objection Deadline and otherwise in conformity with the Court's order establishing notice and case management procedures, if any.

42.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing and the objection deadline) to the parties having been given notice of the Interim Hearing; to any party that has filed a request for notices with this Court; to any Creditors' Committee (if and when it is appointed); all parties known to the Debtors to be asserting liens against or security interest in, any of the DIP Collateral or Prepetition Collateral; the Internal Revenue Service; all state taxing authorities in the states in which the Debtors have any tax liabilities; any federal or state regulatory authorities governing the Debtors'

industry; the Securities and Exchange Commission; the U.S. Attorney's Office; and Delaware

Attorney General.

Dated: April 5th, 2023
Wilmington, Delaware

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE