THIS PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

THIS PLAN REMAINS SUBJECT TO CONTINUING REVISIONS AS THE DEBTORS CONDUCT THEIR INTERNAL INVESTIGATION AND CONTINUE THE MARKETING PROCESS FOR A SALE OF ALL OR SUBSTANTIALLY ALL OF THEIR ASSETS OR ANOTHER FINANCIAL INVESTMENT IN THE DEBTORS. ALL RIGHTS OF THE DEBTORS ARE RESERVED.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x
                              :

In re:                      :   Chapter 11
                              :

VIRGIN ORBIT HOLDINGS, INC., *et al.*,[1]  :   Case No. 23-10405 (KBO)
                              :

         Debtors.        :   (Jointly Administered)
                              :

------------------------------------------------------- x

## JOINT CHAPTER 11 PLAN OF VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

[1]    The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801) ("**VO-NS**"); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445). The Debtors' address, other than Debtor VO-NS, is 4022 East Conant Street, Long Beach, CA 90808. Debtor VO-NS's address is 1960 E. Grand Avenue, El Segundo, CA 90245.

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:     jeff.bjork@lw.com

- and -

George Klidonas (admitted *pro hac vice*)
Anupama Yerramalli (admitted *pro hac vice*)
Liza L. Burton (admitted pro hac vice)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Emails: george.klidonas@lw.com
        anu.yerramalli@lw.com
        liza.burton@lw.com

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Allison S. Mielke (No. 5934)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  rbrady@ycst.com
        mnestor@ycst.com
        kcoyle@ycst.com
        amielke@ycst.com

*Proposed Counsel for Debtors and Debtors in Possession*

# TABLE OF CONTENTS

**Page**

Article I. DEFINED TERMS AND RULES OF INTERPRETATION ........................................................1
    A.    Defined Terms ........................................................................................................1
    B.    Rules of Interpretation ........................................................................................15

Article II. ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, PRIORITY TAX CLAIMS,
    OTHER PRIORITY CLAIMS AND UNITED STATES TRUSTEE STATUTORY FEES ....................16
    A.    Administrative Claims ........................................................................................16
    B.    DIP Facility Claims ............................................................................................18
    C.    Priority Tax Claims ............................................................................................19
    D.    United States Trustee Statutory Fees and Related Reporting Obligations .........19

Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS........................20
    A.    Classification of Claims ......................................................................................20
    B.    Treatment of Claims and Interests .....................................................................21
    C.    Special Provision Governing Unimpaired Claims .............................................24
    D.    Nonconsensual Confirmation ............................................................................24
    E.    Subordination ....................................................................................................25
    F.    Elimination of Vacant Classes ..........................................................................25
    G.    Intercompany Claims .........................................................................................25

Article IV. MEANS FOR IMPLEMENTATION OF THE PLAN............................................................25
    A.    General Settlement of Claims and Interests .......................................................25
    B.    Sale Transaction .................................................................................................26
    C.    Corporate Existence ...........................................................................................26
    D.    Indemnification Obligations...............................................................................26
    E.    Cancellation of Agreements and Equity Interests .............................................27
    F.    Sources for Plan Distributions ...........................................................................28
    G.    Exemption from Certain Transfer Taxes and Recording Fees ..........................28
    H.    Plan Administrator .............................................................................................28
    I.    Directors and Officers Insurance Policies .........................................................30
    J.    Preservation of Rights of Action .......................................................................30
    K.    Corporate Action ...............................................................................................31
    L.    Effectuating Documents; Further Transactions..................................................31
    M.    Wind-Down.........................................................................................................32
    N.    Wind-Down Amount..........................................................................................32
    O.    Dissolution of the Boards of the Debtors. ..........................................................32
    P.    Closing the Chapter 11 Cases ............................................................................33

Article V. TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED LEASES; EMPLOYEE
    BENEFITS; AND INSURANCE POLICIES .....................................................................................33
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ......33
    B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases......34
    C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases ......34
    D.    Contracts and Leases Entered into After the Petition Date ...............................34
    E.    Reservation of Rights..........................................................................................34

Article VI. PROVISIONS GOVERNING DISTRIBUTIONS........................................................35
    A.    Distribution on Account of Claims Allowed as of the Effective Date ...............35
    B.    Distributions on Account of Claims Allowed After the Effective Date..............35
    C.    Timing and Calculation of Amounts to Be Distributed......................................36
    D.    Delivery of Distributions ...................................................................................36

E.      Compliance with Tax Requirements/Allocations............................................38
F.      Surrender of Canceled Instruments or Securities ..........................................38
G.      Applicability of Insurance Policies. ...............................................................39

Article VII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED
CLAIMS OR EQUITY INTERESTS ..................................................................................39
A.      Allowance of Claims ......................................................................................39
B.      Prosecution of Objections to Claims ..............................................................39
C.      Estimation of Claims......................................................................................39
D.      No Distributions Pending Allowance .............................................................40
E.      Time to File Objections to Claims ..................................................................40

Article VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE ..................40
A.      Conditions Precedent to Confirmation............................................................40
B.      Conditions Precedent to the Effective Date ....................................................40
C.      Waiver of Conditions .....................................................................................41
D.      Effect of Non-Occurrence of Conditions to the Effective Date .......................42

Article IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ......................42
A.      Settlement, Compromise, and Release of Claims and Interests. .......................42
B.      Satisfaction of Claims and Termination of Interests. .......................................42
C.      Releases by the Debtors ..................................................................................43
D.      Releases by Holders of Claims and Interests ...................................................44
E.      Exculpation ....................................................................................................45
F.      Injunction ......................................................................................................46
G.      Setoffs and Recoupment .................................................................................46
H.      Release of Liens .............................................................................................46

Article X. RETENTION OF JURISDICTION ..............................................................................47

Article XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN .....................................49
A.      Modification of Plan .......................................................................................49
B.      Effect of Confirmation on Modifications ........................................................50
C.      Revocation of Plan; Reservation of Rights if Effective Date Does Not Occur ............50

Article XII. MISCELLANEOUS PROVISIONS .............................................................................50
A.      Immediate Binding Effect ...............................................................................50
B.      Additional Documents ....................................................................................50
C.      Reservation of Rights ......................................................................................51
D.      Successors and Assigns ...................................................................................51
E.      Service of Documents .....................................................................................51
F.      Term of Injunctions or Stays ...........................................................................54
G.      Entire Agreement ............................................................................................54
H.      Governing Law ...............................................................................................54
I.      Exhibits ..........................................................................................................54
J.      Nonseverability of Plan Provisions upon Confirmation ...................................54
K.      Conflicts .........................................................................................................55
L.      Dissolution of the Committee .........................................................................55
M.      Section 1125(e) Good Faith Compliance .........................................................55

## JOINT CHAPTER 11 PLAN OF VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Virgin Orbit Holdings, Inc. and each of the debtors and debtors-in-possession in the above captioned cases (each a "**Debtor**" and, collectively, the "**Debtors**"), propose this joint plan (together with any documents comprising the Plan Supplement, and as may be modified, amended, or supplemented from time to time in accordance with the terms hereof, "**Plan**") for the resolution of the outstanding Claims against, and Interests in, the Debtors. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan provides for consolidation of the Debtors solely for purposes of voting, Confirmation, and distribution, but not for any other purpose.

**The Debtors are pursuing a Sale Transaction, as described in further detail in the Disclosure Statement. Any Sale Transaction may be implemented pursuant to this Plan and the Confirmation Order or pursuant to a separate 363 Sale Order. The Debtors may sell all or substantially all of their assets in a Sale Transaction under this Plan or a 363 Sale Order. The proceeds thereof shall be distributed in accordance with the applicable provisions of this Plan, and the Debtors will be wound down.**

Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections, and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

Article I.

## DEFINED TERMS AND RULES OF INTERPRETATION

*A. Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1.      "**363 Sale Order**" means one or more orders of the Bankruptcy Court approving the sale of any assets of the Debtors' Estates pursuant to section 363(b) of the Bankruptcy Code in

form and substance acceptable to the Required Consenting Creditors, but excluding the Confirmation Order as it may pertain to any sale of Acquired Assets under this Plan.

2.    "**363 Sale Transaction**" means any sale of assets of the Debtors' Estates pursuant to a 363 Sale Order.

3.    "**363 Sale Transaction Documentation**" means one or more asset purchase agreements or purchase and sale agreements and related documents, including, without limitation, the applicable Assumed Contracts List, in each case, in form and substance reasonably acceptable to the Debtors and the Required Consenting Creditors, pursuant to which the Debtors effectuate any 363 Sale Transaction.

4.    "**Acquired Assets**" means all assets contained in the definition or definitions of "acquired assets" set forth in any Sale Transaction Documentation (or such other similar term as may be used in such Sale Transaction Documentation).

5.    "**Administrative Claim**" means a Claim (other than an Intercompany Claim) for costs and expenses of administration under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court); and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

6.    "**Administrative Claims Bar Date**" means the date that is the 30th day after the Effective Date, or such other date as is ordered by the Court.

7.    "**Affiliate**" means an affiliate as defined in section 101(2) of the Bankruptcy Code.

8.    "**Allowed**" means: (a) any Claim or Interest (i) as to which no objection has been Filed prior to the Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, the DIP Orders or a Final Order, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder; (b) any Claim or Interest that is scheduled by the Debtors as neither disputed, contingent, nor unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; (c) any Claim or Interest that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors; (d) any Claim or Interest as to which the liability of the Debtors, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (e) any Claim or Interest expressly allowed under this Plan. "Allow," "Allows," and "Allowing" shall have correlative meanings.

9.    "**Assumed Contracts**" means those Executory Contracts and Unexpired Leases that are to be assumed and assigned by the Debtors to the applicable Successful Bidder or its

2

designee pursuant to and as set forth in the Confirmation Order and any applicable Sale Transaction Documentation.

10. "**Assumed Contracts List**" means the list or lists of Assumed Contracts, which will be included in preliminary form in the Plan Supplement.

11. "**Assumed Liabilities**" has the meaning set forth in any Sale Transaction Documentation (or such other similar term as may be used in such Sale Transaction Documentation).

12. "**Avoidance Actions**" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

13. "**Ballot**" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

14. "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

15. "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

16. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

17. "**Bar Date**" means the applicable bar date by which Proofs of Claim must be Filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan; *provided that* if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

18. "**Bar Date Order**" means the *Order (I) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Claims Arising Under Section 503(b)(9) of the Bankruptcy Code), (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. [ ● ]].

19. "**Bidding Procedures**" means the bidding procedures attached as **Exhibit 1** to the Bidding Procedures Order, as such bidding procedures may be amended from time to time in accordance with its terms.

20.    **"Bidding Procedures Order"** means the [*Order (A) Establishing Bidding Procedures for Sale of Substantially all Assets, (B) Scheduling Auction and Sale Hearing, and (C) Approving Form and Manner of Notice Thereof, (II) Approving Sale of Substantially all Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (III) Granting Related Relief* [Docket No. [●]], as such order may be amended, supplemented, or modified from time to time, in form and substance acceptable to the Required Consenting Creditors.

21.    **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

22.    **"Cash"** means the legal tender of the United States of America or the equivalent thereof.

23.    **"Causes of Action"** means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws).  For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Action or state law fraudulent transfer claim.

24.    **"Chapter 11 Case(s)"** means (a) when used with reference to a particular Debtor, the chapter 11 case filed for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

25.    **"Claim"** means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

26.    **"Claims Objection Deadline"** means the deadline for objecting to a Claim, which shall be on the date that is the later of (a)(i) with respect to Administrative Claims, 150 days after the Administrative Claims Bar Date or (ii) with respect to all other Claims, 180 days after the Effective Date and (b) such other deadline as may be specifically fixed by the Debtors or by an order of the Bankruptcy Court for objecting to such Claims.

27.    **"Claims Register"** means the official register of Claims maintained by the Notice and Claims Agent.

4

28. "**Class**" means a category of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

29. "**Committee**" means the statutory committee of unsecured creditors, if any, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the United States Trustee.

30. "**Committee Professionals**" means Persons or firms retained by any statutory committee appointed in the Chapter 11 Cases pursuant to section 328 or 1103 of the Bankruptcy Code.

31. "**Confirmation**" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

32. "**Confirmation Date**" means the date upon which Confirmation occurs.

33. "**Confirmation Hearing**" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

34. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance acceptable to the Required Consenting Creditors.

35. "**Cure Cost**" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties to an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

36. "**D&O Liability Insurance Policies**" means, collectively, all insurance policies (including any "tail policies" and all agreements, documents, or instruments related thereto) issued at any time to or providing coverage to of any of the Debtors for current or former directors', managers', and officers' liability.

37. "**Debtor Professionals**" means Persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code, including Latham & Watkins LLP, Young Conaway Stargatt & Taylor, LLP, Alvarez & Marsal North America, LLC, Ducera Partners LLC, and Kroll Restructuring Administration LLC.

38. "**Debtor Release**" means the releases set forth in Article IX.C of the Plan.

39. "**Debtor Releasing Parties**" means the Plan Administrator and the Debtors, in their respective individual capacities and as debtors-in-possession, and on behalf of themselves and their respective Estates, including, without limitation, any successor to the Debtors, any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, and

5

any persons who may purport to assert any Causes of Action derivatively through the foregoing persons.

40. "**DIP Agent**" means VIL or any successor thereto, in its capacities as administrative and collateral agent under the DIP Facility.

41. "**DIP Credit Agreement**" means that certain *Senior Secured Superpriority Debtor-in-Possession Term Loan Credit Agreement*, dated as of April 6, 2023, as may be amended, supplemented, or modified from time to time, among the Debtors and the DIP Secured Parties.

42. "**DIP Facility**" means certain credit facilities the terms of which are governed by the DIP Credit Agreement and agreements entered into in connection therewith, all as approved by the DIP Orders (as may be amended, modified, ratified, extended, renewed, restated or replaced from time to time in accordance with the DIP Credit Agreement and the DIP Orders).

43. "**DIP Facility Claim**" means any Claim held by the DIP Secured Parties derived from or based upon the DIP Facility or the DIP Orders, including claims for all principal amounts outstanding, interest, fees, and expenses under the DIP Facility. For the avoidance of doubt, the "DIP Facility Claims" shall include all Obligations (as defined in the DIP Credit Agreement).

44. "**DIP Lenders**" means the lenders party to the DIP Credit Agreement from time to time.

45. "**DIP Loans**" means the New Money DIP Loans and the DIP Roll-Up Loans.

46. "**DIP Orders**" means, collectively, the Interim DIP Order and the Final DIP Order, as such orders may be modified from time to time in accordance with the terms thereof.

47. "**DIP Roll-Up Loans**" means the "Roll-Up Loans" as defined in the DIP Credit Agreement.

48. "**DIP Secured Parties**" means the "Secured Parties" as defined in the DIP Credit Agreement.

49. "**Disclosure Statement**" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

50. "**Disclosure Statement Order**" means the order of the Bankruptcy Court approving the Disclosure Statement in form and substance acceptable to the Required Consenting Creditors.

51. "**Disputed**" means, with respect to any Claim or Equity Interest, except as otherwise provided herein, a Claim or Equity Interest that is not Allowed and not disallowed under the Plan, the Bankruptcy Code, or a Final Order.

6

52.    "**Distributable Proceeds**" means all Cash of the Debtors on or after the Effective Date, including the proceeds of any retained Causes of Action and the proceeds of all non-Cash assets of the Debtors' Estates, after giving effect to (i) the satisfaction of all Administrative Claims (including DIP Facility Claims), Priority Tax Claims, Other Priority Claims, and Other Secured Claims in accordance with the Plan, in each case to the extent Allowed against the Debtors;  (ii) the funding of the Professional Fee Escrow Account; and (iii) the funding of the Wind-Down Amount. For the avoidance of doubt, any proceeds of a Sale Transaction distributed prior to the Effective Date shall not be considered Distributable Proceeds.

53.    "**Distribution Agent**" means the Debtors or any Entity or Entities chosen by the Debtors, with the consent of the Required Consenting Creditors, which Entities may include one or more of the Notice and Claims Agent, to make or to facilitate distributions required by the Plan.

54.    "**Distribution Record Date**" means, except with respect to Holders of the Debtors publicly traded securities, the date for determining which Holders of Claims are eligible to receive initial distributions under the Plan, which date shall be the Effective Date or such other date as is agreed to by the Debtors and the Required Consenting Creditors or designated in a Final Order. The Distribution Record Date shall not apply to any Holders of the Debtors publicly traded securities.

55.    "**DTC**" means The Depository Trust Company.

56.    "**Effective Date**" means the date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.A of the Plan have been (i) satisfied or (ii) waived pursuant to Article VIII.A  of the Plan.

57.    "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

58.    "**Equity Interest**" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards, or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto that existed immediately before the Effective Date; *provided* that Equity Interest does not include any Intercompany Interest.

59.    "**Estate**" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code.

60.    "**Exculpated Party**" means (a) the Debtors; (b) the Committee and each of its members; and (c) with respect to each of the foregoing in clauses (a) and (b), solely to the extent they are estate fiduciaries, each such Entity's current and former affiliates, subsidiaries, officers, directors (including any sub-committee of directors), managers, principals, members (including *ex officio* members and managing members), employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and

7

other professionals, each in their capacity as such on or after the Petition Date and prior to or on the Effective Date

61. "**Exculpation**" means the exculpation provision set forth in Article IX.E of this Plan.

62. "**Executory Contract**" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

63. "**FAA**" means the Federal Aviation Administration of the Department of Transportation of the United States of America and any successor that under the laws of the United States of America shall from time to time have control or supervision of civil aviation in the United States of America or have jurisdiction over the registration, airworthiness or operation of, or other matters relating to, any aircraft or engine.

64. "**File**," "**Filed**," or "**Filing**" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent or the Bankruptcy Court.

65. "**Final DIP Order**" means the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Party, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Docket No. [ ● ]] which shall be in form and substance acceptable to the Required Consenting Creditors.

66. "**Final Order**" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

67. "**General Administrative Claim**" means any Administrative Claim, other than (i) a Professional Fee Claim, (ii) a DIP Facility Claim or (iii) a Claim for fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

68.    "**General Unsecured Claim**" means any unsecured Claim (other than an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Intercompany Claim, or a Subordinated Claim), including without limitation, (a) Claims arising from the rejection of Unexpired Leases or Executory Contracts, (b) Claims arising from any litigation or other court, administrative or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by, a Debtor in connection therewith, (c) Claims on account of the outstanding balance under the Yorkville Unsecured Notes, and (d) the WARN Act Claims.

69.    "**Governmental Unit**" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

70.    "**GUC Cash-Out Pool**" means cash equal to $[•], which amount shall be determined by the Debtors with the consent of the Required Consenting Creditors.

71.    "**GUC Distributable Proceeds**" means all Distributable Proceeds remaining after payment in full in Cash of the Prepetition Secured Notes Claims pursuant to Article III.B.3.

72.    "**Holder**" means an Entity holding a Claim or Interest.

73.    "**Impaired**" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

74.    "**Indemnification Provisions**" means each of the Debtors' indemnification provisions in effect as of the Petition Date, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, management or indemnification agreements, employment contracts, or otherwise providing a basis for any obligation of a Debtor to indemnify, defend, reimburse, or limit the liability of, or to advances fees and expenses to, any of the Debtors' current and former directors, officers, equity holders, managers, members, employees, accountants, investment bankers, attorneys, other professionals, and professionals of the Debtors, and such current and former directors', officers', and managers' respective affiliates, each of the foregoing solely in their capacity as such.

75.    "**Initial Budget**" has the meaning set forth in the DIP Credit Agreement.

76.    "**Initial Distribution Date**" means the date that is on or as soon as practicable after the Effective Date when distributions under the Plan shall commence for each Class entitled to receive distributions.

77.    "**Insurance Contract**" means all insurance policies that have been issued at any time to or provide coverage to any of the Debtors and all agreements, documents or instruments relating thereto, including but not limited to, D&O Liability Insurance Policies.

78.    "**Insurer**" means any company or other entity that issued an Insurance Contract, any third party administrator, and any respective predecessors and/or affiliates thereof.

79.    "**Intercompany Claims**" means, collectively, any Claim held by a Debtor or a non-Debtor Affiliate of a Debtor against a Debtor.

9

80.    "**Intercompany Interest**" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, or other instrument evidencing an ownership interest in a Debtor held by another Debtor or a non-Debtor Affiliate.

81.    "**Interests**" means, collectively, Equity Interests and Intercompany Interests.

82.    "**Interim DIP Order**" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Party, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Docket No. 71].

83.    "**Lien**" means a lien as defined in section 101(37) of the Bankruptcy Code.

84.    "**Local Bankruptcy Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

85.    "**New Money DIP Loans**" means the new money term loans provided by the DIP Lenders under the DIP Credit Agreement.

86.    "**Notice and Claims Agent**" means Kroll Restructuring Administration LLC, in its capacity as noticing, claims, and solicitation agent for the Debtors, pursuant to one or more orders of the Bankruptcy Court.

87.    "**Ordinary Course Professionals Order**" means any order of the Bankruptcy Court permitting the Debtors to retain and compensate certain professionals in the ordinary course of their businesses.

88.    "**Other Priority Claim**" means any Claim other than an Administrative Claim, DIP Facility Claim, or Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

89.    "**Other Secured Claim**" means any Secured Claim, other than a DIP Facility Claim or a Prepetition Secured Notes Claim.

90.    "**Periodic Distribution Date**" means the first Business Day that is as soon as reasonably practicable occurring approximately sixty (60) days after the immediately preceding Periodic Distribution Date. The first Periodic Distribution Date shall be the [Effective Date].

91.    "**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

92.    "**Petition Date**" means the date on which each of the Debtors commenced the Chapter 11 Cases.

10

93.    "**Plan**" means this joint plan under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, including all schedules and exhibits, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

94.    "**Plan Administration Agreement**" means the liquidating agreement to be entered into by and among the Debtors and the Plan Administrator regarding administration of the administration process of this Plan, which agreement shall be included in the Plan Supplement and shall be in form and substance reasonably acceptable to the Required Consenting Creditors.

95.    "**Plan Administrator**" means the person or entity, or any successor thereto, who, on and after the Effective Date and shall have the rights, powers, and duties set forth in this Plan. The identity and compensation of the Plan Administrator shall be agreed to by the Debtors and the Required Consenting Creditors and shall be set forth in the Plan Supplement. For the avoidance of doubt, any successor to the Plan Administrator shall be agreed to by the Debtors and the Required Consenting Creditors.

96.    "**Plan Sale Transaction**" means the transfer, in one or more transactions, of the Acquired Assets to the applicable Successful Bidder and the assumption by the applicable Successful Bidder of the Assumed Liabilities free and clear of all Liens, Claims, charges, and other encumbrances (other than the Assumed Liabilities), all of which as effectuated under this Plan and the Confirmation Order and pursuant to section 1123 of the Bankruptcy Code on the terms and conditions set forth in the Plan Sale Transaction Documentation.

97.    "**Plan Sale Transaction Documentation**" means one or more asset purchase agreements or purchase and sale agreements and related documents, including, without limitation, the Assumed Contracts List, in each case, in form and substance reasonably acceptable to the Debtors and the Required Consenting Creditors, pursuant to which the Debtors will effectuate any Plan Sale Transaction.

98.    "**Plan Supplement**" means a supplement or supplements to the Plan containing certain documents and forms of documents, schedules and exhibits, relevant to the implementation of the Plan, to be filed with the Bankruptcy Court, as amended, modified or supplemented from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules, which may include, but not be limited to the following documents: (a) the Assumed Contracts List; (b) a list of retained Causes of Action; (c) to the extent a Successful Bidder for a Plan Sale Transaction is declared pursuant to the Bidding Procedures, the applicable Plan Sale Transaction Documentation; (d) the identity of the Plan Administrator and the terms of compensation of the Plan Administrator; (e) the Plan Administration Agreement; (f) the Wind-Down Budget; and (g) any transition services agreement between the Successful Bidder and the Debtors. The Plan Supplement shall be in form and substance acceptable to the Required Consenting Creditors.

99.    "**Plan Supplement Filing Date**" means the date that is at least seven (7) days prior to the Voting Deadline.

100. "**Prepetition Secured Noteholder**" means the Holder of any Prepetition Secured Notes Claims.

101. "**Prepetition Secured Notes Claims**" means any and all Claims arising under, derived from, or based upon the Prepetition Secured Notes.

102. "**Prepetition Secured Notes**" means, collectively, (a) that certain Senior Secured Convertible Note, dated as of November 4, 2022; (b) that certain Senior Secured Convertible Note, dated as of December 19, 2022; (c) that certain Senior Secured Convertible Note, dated as of January 30, 2023; (d) that certain Senior Secured Convertible Note, dated as of February 28, 2023; and (e) that certain Senior Secured Convertible Note, dated as of March 30, 2023, each between Virgin Orbit Holdings, Inc. and VIL and each as secured by that certain security agreement dated as of January 30, 2023 between the Debtors and Virgin Investments Limited.

103. "**Priority Tax Claim**" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

104. "**Pro Rata Share**" means, with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

105. "**Professional Fee Claim**" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred during the Chapter 11 Cases, through and including the Effective Date, under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

106. "**Professional Fee Escrow Account**" means an account funded by the Debtors with Cash no later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

107. "**Professional Fee Escrow Amount**" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services in connection with the Chapter 11 Cases prior to and as of the Effective Date, which shall be estimated pursuant to the method set forth in Article II.A.2 of the Plan.

108. "**Proof of Claim**" means a proof of Claim filed against any Debtor in the Chapter 11 Cases.

109. "**Reinstated**" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

110. "**Rejected Contracts List**" means the list (as determined by the Debtors with the consent of the Required Consenting Creditors), of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto), if any, that will be rejected pursuant to the Plan.

111. ["**Released Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Noteholder; (c) the DIP Lenders;

12

(d) the DIP Agent and any other DIP Secured Parties; (e) all Releasing Parties; (f) the Successful Bidder; and (g) with respect to each Entity in clause (a) through (f), each such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such (unless any such Entity or related party has opted out of being a Releasing Party, in which case such Entity or related party, as applicable, shall not be a Released Party).

112.   "**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Noteholder; (c) the DIP Lenders; (d) the DIP Agent and any other DIP Secured Parties; (e) all Holders of Claims that are presumed to accept the Plan and who do not opt out of the releases in the Plan; (f) all Holders of Claims or Interests who vote to accept the Plan; (g) all Holders of Claims or Interests that (x) abstain from voting on the Plan and who do not opt out of the releases in the Plan, (y) vote to reject the Plan and who do not opt out of the releases in the Plan, or (z) are deemed to reject the Plan and who do not opt out of the releases in the Plan; and (h) with respect to each Entity in clause (a) through (g), each such Entity's current and former subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.][2]

113.   "**Required Consenting Creditors**" means the Required DIP Lenders and the Prepetition Secured Noteholder.

114.   "**Required DIP Lenders**" means the "Required Lenders" as defined in the DIP Credit Agreement.

115.   "**Retained Professional**" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered on or prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

116.   "**Sale Process**" means the sale process conducted in accordance with the Bidding Procedures.

117.   "**Sale Transaction**" means a 363 Sale Transaction or a Plan Sale Transaction.

118.   "**Sale Transaction Documentation**" means any 363 Sale Transaction Documentation and any Plan Sale Transaction Documentation in form and substance acceptable to the Required Consenting Creditors.

---

[2]   **Any and all releases by the Debtors and their Estates remain subject to the ongoing internal investigation. Nothing herein shall constitute or be deemed a waiver of any Causes of Action that the Debtors may hold against any Entity.**

119.    "**Sale Transaction Proceeds**" means all proceeds from the consummation of the Sale Transaction that are distributable or payable to the Estates, and such proceeds may consist of Cash, debt instruments or other non-Cash consideration.

120.    "**SEC**" means the Securities and Exchange Commission.

121.    "**Secured Claim**" means a Claim: (a) secured by a Lien on property in which one or more Estates has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan or order of the Bankruptcy Court as a secured claim.

122.    "**Securities Act**" means the Securities Act of 1933, as now in effect or hereafter amended, or any regulations promulgated thereunder.

123.    "**Subordinated Claim**" means any Claim that is subject to subordination in accordance with sections 510(b)-(c) of the Bankruptcy Code or otherwise.

124.    "**Successful Bidder**" means any Entity or Entities whose bid for all or substantially all of the Debtors' assets is selected by the Debtors and approved by the Bankruptcy Court as the highest and otherwise best bid pursuant to the Bidding Procedures. For the avoidance of doubt, the Successful Bidder may be more than one Entity, submitting one or more bids, and, if applicable, use of the term "Successful Bidder" herein may be read as "Successful Bidders". Where a Successful Bidder has consent rights (or is referenced) under the Plan, such consent rights (or reference) only apply to the extent such consent right (or reference) relates to the respective Successful Bidder's Sale Transaction.

125.    "**Third-Party Release**" means the releases set forth in Article IX.D of the Plan.

126.    "**Unexpired Lease**" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

127.    "**Unimpaired**" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

128.    "**United States Trustee**" means the Office of the United States Trustee for the District of Delaware.

129.    "**U.S. Trustee Fees**" means all fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and, to the extent applicable, any interest assessed pursuant to 31 U.S.C. § 3717.

14

130.    "**VIL**" mean Virgin Investments Limited.

131.    "**Voting Deadline**" means 5:00 p.m. (prevailing Eastern time) on [ ● ], 2023, which is the date and time set forth in the Disclosure Statement Order by which Ballots for accepting or rejecting the Plan must be received by the Notice and Claims Agent.

132.    "**Voting Record Date**" means the date established as the voting record date pursuant to the Disclosure Statement Order.

133.    "**WARN Act Claim**" means a Claim or any portion of a Claim that seeks damages under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq*.

134.    "**Wind-Down Amount**" means Cash in an amount to be determined by the Debtors with the consent of the Required Consenting Creditors, to be retained by the Debtors to wind down the Estates, including any residual assets and entities not transferred to the Successful Bidder, and Chapter 11 Cases in accordance with the Wind-Down Budget, which amount shall be funded from the Sale Transaction Proceeds and/or cash on hand.  To the extent of any remaining funds after payment of Professional Fee Claims in full, such funds shall constitute the Wind-Down Amount.

135.    "**Wind-Down Budget**" means a budget for the reasonable activities and expenses to be incurred in winding down the Chapter 11 Cases, including the liquidation of any residual assets and entities not transferred to the Successful Bidder, as set forth in the Plan Supplement, which shall be in form and substance acceptable to the Required Consenting Creditors.

136.    "**Yorkville Unsecured Notes**" means, collectively, that certain convertible debenture dated as of June 29, 2022 between Virgin Orbit Holdings Inc. and YA II PN, Ltd and that certain purchase agreement dated as of March 27, 2023 between Virgin Orbit Holdings Inc. and YA II PN, Ltd.

*B.     Rules of Interpretation*

1.     For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented, as applicable; (d) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (e) the words ''herein,'' "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (g) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (h) references to "Proofs of Claim," "Holders of Claims," "Disputed

15

Claims," and the like shall include "Proofs of Equity Interests," "Holders of Interests," "Disputed Interests," and the like, as applicable; (i) captions and headings to Articles and subdivisions thereof are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (j) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) any effectuating provisions may be interpreted by the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; and (m) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Cases under the Bankruptcy Court's CM/ECF system.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  Unless otherwise specified herein, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

3.      All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

Article II.

**ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, PRIORITY TAX CLAIMS, OTHER PRIORITY CLAIMS AND UNITED STATES TRUSTEE STATUTORY FEES**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

*A.      Administrative Claims*

1.      <u>General Administrative Claims</u>

Except to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtor(s) agree to less favorable treatment with respect to such Allowed General Administrative Claim, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed General Administrative Claim in Cash:  (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (b) if a General Administrative Claim is Allowed after the Effective Date, on the date such General Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided* that Allowed General Administrative Claims that arise in the ordinary course of the Debtors' business during the Chapter 11 Cases shall be paid in full in Cash in the ordinary course of business in

16

accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice; *provided, further,* that any Allowed General Administrative Claim that has been assumed by a Successful Bidder under the applicable Sale Transaction Documentation shall not be an obligation of the Debtors and shall not be entitled to any recovery from the Estates under this Plan.

2.    Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred on and after the Petition Date and prior to and on the Effective Date must be Filed no later than 30 days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.  The Plan Administrator shall pay Professional Fee Claims in Cash to such Retained Professionals in the amount the Bankruptcy Court Allows from funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided* that the Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the Allowed amount of Professional Fee Claims owing to the Retained Professionals, the Plan Administrator shall pay such amounts from Distributable Proceeds within ten (10) Business Days after entry of the order approving such Professional Fee Claims.

No later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Retained Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Retained Professionals pursuant to one or more orders of the Bankruptcy Court.  Except as otherwise expressly set forth in the last sentence of this paragraph, no Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  No funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors or the Plan Administrator, as applicable. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Retained Professionals pursuant to one or more orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly revert to the Debtors, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, which amounts shall be Distributable Proceeds and promptly distributed in accordance with the Plan.

The Retained Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors (which estimate may include a cushion to cover unexpected or unknown fees) before and as of the Effective Date projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than three (3) Business Days prior to the anticipated Effective Date.  For the

17

avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Retained Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court, and such Retained Professionals are not bound to any extent by the estimates. If a Retained Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Retained Professional for inclusion in the Professional Fee Escrow Amount. The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided* that the Plan Administrator shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

3.      Administrative Claims Bar Date

All requests for payment of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, or U.S. Trustee quarterly fees payable pursuant to Article II.D below) that accrued on or before the Effective Date other than in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtors no later than the Administrative Claims Bar Date. If a Holder of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, or U.S. Trustee quarterly fees payable pursuant to Article II.D below) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Administrative Claim shall be considered Allowed only if the Holder of such Claim obtains a Final Order of the Bankruptcy Court allowing such Claim.

The Plan Administrator in its discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. The Debtors or the Plan Administrator, as applicable, may also choose to object to any Administrative Claim no later than the Claims Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors or the Plan Administrator, as applicable, (or other party with standing) objects to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested after expiration of the Claims Objection Deadline (as may be extended). In the event that the Debtors or the Plan Administrator objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

B.      *DIP Facility Claims*

The DIP Facility Claims shall be deemed Allowed as of the Effective Date in an amount equal to the full amount due and owing under the DIP Credit Agreement, including, for the avoidance of doubt, (a) the principal amount outstanding under the DIP Facility on such date, (b) all interest accrued and unpaid thereon through and including the date of payment, (c) all accrued and unpaid fees, expenses and noncontingent indemnification obligations payable under the DIP Facility and the Final DIP Order and (d) all other "Obligations" as provided for in the DIP Credit Agreement. On the Effective Date, in full and final satisfaction, settlement, and release of

18

and in exchange for each Allowed DIP Facility Claim, each DIP Facility Claim shall be paid in full in Cash or such lesser amount as agreed to by the Holder of the DIP Facility Claims. All Liens and security interests granted by the Debtors to secure the obligations under the DIP Facility shall be of no further force or effect; *provided* that any indemnification and expense reimbursement obligations of the Debtors that are contingent as of the Effective Date shall survive the Effective Date and be paid by the Debtors in Cash as and when due under the DIP Credit Agreement; *provided further* that any such indemnification and reimbursement obligations shall be consistent with the DIP Credit Agreement in all respects. For the avoidance of doubt, the DIP Credit Claims shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordination (equitable or contractual or otherwise), counter-claim, defense, disallowance, impairment, objection or any challenges under applicable law or regulation.

C.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor(s) against which such Allowed Priority Tax Claim is asserted agree to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and the discharge of each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive, at the option of the Debtors, either (a) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter), or (b) equal annual installment payments in Cash, of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five (5) years after the Petition Date; *provided* that any Allowed Priority Tax Claim that has been expressly assumed by a Successful Bidder under the Sale Transaction Documentation shall not be an obligation of the Debtors. On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

D.    *United States Trustee Statutory Fees and Related Reporting Obligations*

All U.S. Trustee Fees that are due and owing as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date.  The Debtors shall file all monthly operating reports due prior to the Effective Date, when they become due.  After the Effective Date, the Plan Administrator shall file with the Bankruptcy Court post-confirmation reports, as and when they become due.  After the Effective Date, the Plan Administrator shall pay any and all applicable U.S. Trustee Fees in full in Cash when due and payable.  The Debtors and the Plan Administrator, as applicable, shall remain obligated to pay any applicable U.S. Trustee Fees until the earliest of the closure, dismissal, or conversion to a case under Chapter 7 of the Bankruptcy Code of the case of that particular Debtor for whom the Debtors or the Plan Administrator, as applicable, is responsible.  The U.S. Trustee shall not be treated as providing any release under the Plan.  U.S. Trustee Fees are Allowed.  The U.S. Trustee shall not be required to file any proof of claim or any

19

request for administrative expense for U.S. Trustee Fees.  The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

Article III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

*A.      Classification of Claims*

The Plan constitutes a separate chapter 11 plan for each Debtor.  Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims and Interests are placed in Classes for each of the applicable Debtors.  The Plan consolidates Claims against all Debtors solely for purposes of voting, Confirmation, and distribution (for instance, a General Unsecured Claim against any Debtor is classified in Class 4, and to the extent Allowed, is entitled to share pro rata with all other Allowed Class 4 Claims, in the treatment provided for Class 4, without any allocation thereof among the Debtors) but not for any other purpose.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, DIP Facility Claims, and Priority Tax Claims, as described in Article II.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

20

**Summary of Classification and Treatment of Claims and Interests**

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Prepetition Secured Notes Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Unimpaired or Impaired | Presumed to Accept or Deemed to Reject |
| 6 | Subordinated Claims | Impaired | Deemed to Reject |
| 7 | Intercompany Interests | Unimpaired or Impaired | Presumed to Accept or Deemed to Reject |
| 8 | Equity Interests | Impaired | Deemed to Reject |

B.    *Treatment of Claims and Interests*

   1.    <u>*Class 1 — Other Priority Claims*</u>

a)    *Classification*: Class 1 consists of all Other Priority Claims.

b)    *Treatment*:  On the Effective Date, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtor against which such Allowed Other Priority Claim is asserted agree to less favorable treatment for such Holder, in full satisfaction of each Allowed Other Priority Claim, each Holder thereof shall receive payment in full in Cash or other treatment rendering such Claim Unimpaired.  Any Allowed Other Priority Claim that has been expressly assumed by the applicable Successful Bidder under the applicable Sale Transaction Documentation shall not be an obligation of the Debtors.

c)    *Voting*:  Class 1 is Unimpaired and Holders of Class 1 Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

   2.    <u>*Class 2 — Other Secured Claims*</u>

a)    *Classification*: Class 2 consists of all Other Secured Claims.

b)    *Treatment*:  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim and the Debtor against which such Allowed Other Secured Claim is asserted, with the consent of the Required Consenting Creditors, agree to less favorable

21

treatment for such Holder, each allowed Other Secured Claim shall, at the option of the applicable Debtor (i) be paid in full in Cash, (ii) receive the collateral securing its allowed Other Secured Claim, or (iii) receive any other treatment that would render such Claim Unimpaired. Any Allowed Other Secured Claim that has been expressly assumed by the applicable Successful Bidder under the applicable Sale Transaction Documentation shall not be an obligation of the Debtors.

c) *Voting*:  Class 2 is Unimpaired and Holders of Class 2 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3. <u>*Class 3 — Prepetition Secured Notes Claims*</u>

a) *Classification*:  Class 3 consists of Prepetition Secured Notes Claims.

b) *Allowance*:  On the Effective Date, the Prepetition Secured Notes Claims shall be Allowed in the aggregate principal amount of $28,400,000 plus accrued and unpaid interest on such principal amount (including interest accrued from the Petition Date through the Effective Date if permitted under the Bankruptcy Code) and all other amounts due and owing under the Prepetition Secured Notes (including professional fees and expenses incurred by the Prepetition Secured Noteholder).

c) *Treatment*:  In full and final satisfaction, compromise, settlement, and release of its Prepetition Secured Notes Claims (unless the Prepetition Secured Noteholder agrees to a less favorable treatment), on the Effective Date, the Prepetition Secured Noteholder shall receive all Distributable Proceeds up to the Allowed amount of the Prepetition Secured Notes Claims. For the avoidance of doubt and notwithstanding anything to the contrary herein, the rights of the Prepetition Secured Noteholder to receive Distributable Proceeds (including those obtained by the Debtors or the Plan Administrator following the Effective Date) shall not be extinguished by the Plan until payment in full thereof or the depletion of all assets of the Debtors' Estates.

d) *Voting*:  Class 3 is Impaired.  The Prepetition Secured Noteholder is entitled to vote to accept or reject the Plan.

4. <u>*Class 4 — General Unsecured Claims*</u>.

a) *Classification*:  Class 4 consists of General Unsecured Claims.

b) *Allowance*:  On the Effective Date, General Unsecured Claims shall be Allowed in accordance with the procedures set forth in <u>Article VII</u> of this Plan.

d) *Treatment*: On the Effective Date, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtor against which such Allowed General Unsecured Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of its Allowed General

22

Unsecured Claim, its Pro Rata Share of the greater of (a) the GUC Cash-Out Pool or (b) GUC Distributable Proceeds, in each case not to exceed the Allowed amount of such Holder's General Unsecured Claim. Any Allowed General Unsecured Claim that has been expressly assumed by the applicable Successful Bidder under the applicable Sale Transaction Documentation shall not be an obligation of the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary herein, the rights of the Holders of General Unsecured Claims to receive Distributable Proceeds (including those obtained by the Debtors or the Plan Administrator following the Effective Date) shall not be extinguished by the Plan until payment in full thereof or the depletion of all assets of the Debtors' Estates.

a) *Voting*: Class 4 is Impaired and Holders of Class 4 General Unsecured Claims are entitled to vote to accept or reject the Plan.

    5. <u>Class 5 — Intercompany Claims</u>

a) *Classification*: Class 5 consists of all Intercompany Claims.

b) *Treatment*: Notwithstanding any other provision of the Plan, on the Effective Date, except to the extent that a Holder of an Allowed Intercompany Claim and the Debtor against which such Allowed Intercompany Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Intercompany Claim shall receive, in full and final satisfaction of its Allowed Intercompany Claim, no distribution under the Plan, and all Intercompany Claims shall be adjusted, Reinstated, or discharged in the applicable Debtor's discretion, unless otherwise agreed to by the Debtors and the applicable Successful Bidder in connection with one or more Sale Transactions.

c) *Voting*: Class 5 is either (i) Unimpaired and Holders of Class 5 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) Impaired and not receiving any distribution under the Plan and Holders of Class 5 Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, in each case, Holders of Class 5 Intercompany Claims are not entitled to vote to accept or reject the Plan.

    6. <u>Class 6 — Subordinated Claims</u>

a) *Classification*: Class 6 consists of all Subordinated Claims

b) *Treatment*: Allowed Subordinated Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Subordinated Claims will not receive any distribution on account of such Allowed Subordinated Claims

a) *Voting*: Class 6 is Impaired and Holders of Class 6 Subordinated Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 6 Subordinated Claims are not entitled to vote to accept or reject the Plan.

7. *Class 7 — Intercompany Interests*

a) *Classification:* Class 7 consists of all Intercompany Interests.

b) *Treatment*: On the Effective Date, except to the extent that a Holder of an Allowed Intercompany Interest and the Debtor against which such Allowed Intercompany Interest is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Intercompany Interest shall receive, in full and final satisfaction of its Allowed Intercompany Interest, no distribution under the Plan, and all Intercompany Interests shall be adjusted, Reinstated, or discharged in the applicable Debtor's discretion, unless otherwise agreed to by the Debtors and the applicable Successful Bidder in connection with one or more Sale Transactions.

c) *Voting*: Class 7 is either (i) Unimpaired and Holders of Class 7 Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) Impaired and not receiving any distribution under the Plan and Holders of Class 7 Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, in each case, Holders of Class 7 Intercompany Interests are not entitled to vote to accept or reject the Plan.

8. *Class 8 — Equity Interests*

a) *Classification*: Class 8 consists of all Equity Interests.

b) *Treatment*: Holders of Equity Interests shall receive no distribution on account of their Equity Interests. On the Effective Date, all Equity Interests will be canceled and extinguished and will be of no further force or effect.

c) *Voting*: Class 8 is Impaired and Holders of Class 8 Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 8 Equity Interests are not entitled to vote to accept or reject the Plan.

C. *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Plan Administrator's, as applicable, rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim; *provided*, for the avoidance of doubt, notwithstanding anything to the contrary in the Plan or the Confirmation Order or any related documents, (a) the provisions of Articles IV.A, IX.A, IX.C, IX.D, and IX.F of the Plan shall not apply with respect to any Unimpaired Claim and (b) such Unimpaired Claim shall not be deemed settled, satisfied, resolved, released, discharged, barred or enjoined by any provision of the Plan.

D. *Nonconsensual Confirmation*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims, determined without including any

acceptance of the Plan by any insider.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

E.    *Subordination*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Plan Administrator and the Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

F.    *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

G.    *Intercompany Claims*

To the extent Reinstated under the Plan, any distributions on account of Intercompany Claims are not being received by Holders of such Intercompany Claims on account of their Intercompany Claims but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure given the various foreign affiliate-subsidiaries of the Debtors to preserve ordinary course intercompany operations and in exchange for the Debtors' or the Plan Administrator's, as applicable, agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

Article IV.

**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    *General Settlement of Claims and Interests*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B.    *Sale Transaction*

Upon entry of the Confirmation Order, the Debtors shall be authorized to consummate any applicable Plan Sale Transaction to the applicable Successful Bidder pursuant to the terms of the applicable Plan Sale Transaction Documentation, the Plan, and the Confirmation Order.  Unless otherwise agreed in writing by the Debtors and the applicable Successful Bidder, distributions required by this Plan on account of Allowed Claims that are Assumed Liabilities shall be the sole responsibility of the applicable Successful Bidder even if such Claim is Allowed against the Debtors, and such Claims shall have no recovery from the Debtors under the terms of the Plan.

C.    *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan, by the Debtors, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

D.    *Indemnification Obligations*

Subject to the last sentence of this paragraph, any obligations of the Debtors pursuant to their organizational documents, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any Person pursuant to the Debtors' organizational documents, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Persons based upon any act or omission related to such Persons' service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall survive Confirmation of the Plan and except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; *provided*, *however*, that all

monetary obligations under this provision shall be limited solely to available insurance coverage and neither the Plan Administrator nor any of the assets thereof shall be liable for any such obligations.

Any Claim based on the Debtors' indemnification obligations shall not be a Disputed Claim or subject to any objection under Bankruptcy Code section 502(e)(1)(B). The Debtors' indemnification obligations shall not apply to or cover any Claims, suits, or actions against a Person that result in a Final Order determining that such Person is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing, or breach of the duty of loyalty.

E.    *Cancellation of Agreements and Equity Interests*

Except as otherwise provided for in the Plan, on the later of the Effective Date and the date on which the relevant distributions are made pursuant to Article VI:  (a) (i) the obligations of the Debtors under the DIP Credit Agreement, the Prepetition Secured Notes, the Yorkville Unsecured Notes and any other note, bond, indenture, or other instrument or document directly or indirectly evidencing or creating any indebtedness of the Debtors; and (ii) any certificate, equity security, share, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating an ownership interest in the Debtors (except, in each case, such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan), shall be cancelled as to the Debtors and their Affiliates, and they shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors and their Affiliates pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated or entered into pursuant to the Plan) shall be released and discharged; *except that*:

1.    the DIP Facility shall continue in effect solely for the purpose of:  (a) allowing the DIP Lenders to receive distributions from the Debtors under the Plan as set forth in Article VI of the Plan; (b) preserving the DIP Lenders' right to all amounts due under the DIP Credit Agreement and DIP Orders; and (c) preserving the DIP Lenders' right to indemnification from the Debtors pursuant and subject to the terms of the DIP Facility; and

2.    the Prepetition Secured Notes shall continue in effect solely for the purpose of: (a) allowing the Prepetition Secured Noteholder to receive distributions from the Debtors under the Plan as set forth in Article VI of the Plan; (b) preserving the Prepetition Secured Noteholder's right to all amounts due under the Prepetition Secured Notes; and (c) preserving the Prepetition Secured Noteholder's right to indemnification from the Debtors pursuant and subject to the terms of the Prepetition Secured Notes.

27

F.    *Sources for Plan Distributions*

The Debtors shall fund distributions under the Plan from the Distributable Proceeds in accordance with the terms of the Sale Transaction Documents and the Plan.

G.    *Exemption from Certain Transfer Taxes and Recording Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to any Entity pursuant to or in connection with the Plan (including, if applicable, the Sale Transaction), including: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any U.S. federal, state or local document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate U.S. state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

H.    *Plan Administrator*

On and after the Plan Effective Date, the Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtors shall be deemed to have terminated, the persons acting as managers, directors, and officers of the Debtors shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole manager and sole officer of the Debtors, and shall succeed to the powers of the Debtors' managers, directors, and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors. The Plan Administrator shall use commercially reasonable efforts to operate in a manner consistent with the Wind-Down Budget. The Plan Administrator shall carry out any necessary functions required by the applicable Sale Transaction Documentation.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions thereunder and wind down the businesses and affairs of the Debtors, including: (a) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Debtors remaining after consummation of the Sale Transaction, in each case with the consent of the Required Consenting Creditors; (b) taking all steps to execute all instruments

28

and documents necessary to effectuate the distributions to be made under the Plan; (c) making distributions as contemplated under the Plan; (d) establishing and maintaining bank accounts in the name of the Debtors; (e) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (f) paying all reasonable fees, expenses, debts, charges, and liabilities of the Debtors; (g) administering and paying taxes of the Debtors, including filing tax returns; (h) representing the interests of the Debtors before any taxing authority in all matters, including any action, suit, proceeding or audit; and (i) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator (who shall be acceptable to the Required Consenting Creditors). Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Debtors shall be terminated.

### 1. Appointment of the Plan Administrator

The Plan Administrator shall be appointed by the Debtors with the consent of the Required Consenting Creditors. The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under this Plan, and as otherwise provided in the Confirmation Order.

### 2. Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Debtors solely from the Wind-Down Amount, upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

### 3. Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement.

### 4. Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for actual fraud, willful misconduct, or gross negligence, in all respects by the Debtors. The Plan Administrator

30302797.1

may obtain, at the expense of the Debtors an solely from the Wind-Down Amount, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator, in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

I.      *Directors and Officers Insurance Policies*

In accordance with and without altering Article V.A of the Plan, (i) on the Effective Date, the Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; (ii) confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed; (iii) the Debtors shall retain the ability to supplement such D&O Liability Insurance Policies as the Debtors may deem necessary; and (iv) for the avoidance of doubt, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the assumption of each of the unexpired D&O Liability Insurance Policies.

In addition, on or after the Effective Date, the Plan Administrator shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect on or prior to the Effective Date, with respect to conduct occurring prior thereto, and all current and former directors, officers, and managers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policies for the full term of such policies regardless of whether such current and former directors, officers, and managers remain in such positions after the Effective Date, all in accordance with the terms and conditions of the D&O Liability Insurance Policies, which shall not be altered.

J.      *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to the releases set forth in this section and in Article IX below, and to the extent not transferred to a Successful Bidder in any Sale Transaction, all Causes of Action that a Debtor may hold against any Entity shall vest in the Plan Administrator on the Effective Date. Thereafter, the Plan Administrator, with the consent of the Debtors, shall have the right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any other third party or further notice to

30

or action, order, or approval of the Bankruptcy Court.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors or the Plan Administrator will not pursue any and all available Causes of Action.  The Debtors and the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan,** and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

K.      *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Plan Administrator, or any other Entity, including, as applicable:  (1) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases and (2) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the company structure of the Debtors, and any company action required by the Debtors or the Plan Administrator in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.

On or prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtors (including any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof) shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the applicable Debtors.  The authorizations and approvals contemplated by this Article IV.K shall be effective notwithstanding any requirements under non-bankruptcy law.

L.      *Effectuating Documents; Further Transactions*

Prior to, on, and after the Effective Date, the Debtors and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, notes, instruments, certificates, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

M.      *Wind-Down*

On and after the Effective Date, in accordance with the Wind-Down Budget and after completion of the Sale Process, the Debtors shall (1) continue in existence for purposes of (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible, (b) resolving Disputed Claims as provided hereunder, (c) paying Allowed Claims not assumed by the applicable Successful Bidder as provided hereunder, (d) filing appropriate tax returns, (e) complying with their continuing obligations under the applicable Sale Transaction Documentation (including with respect to the transfer of permits to the applicable Successful Bidder as contemplated therein), and (f) administering the Plan in an efficacious manner; and (2) thereafter liquidate and dissolve as set forth in the Plan. The Plan Administrator shall carry out these actions for the Debtors.

Consistent with Article IV.H of the Plan, the Plan Administrator shall also have the power and authority to take any action necessary to wind down and dissolve any of the direct and indirect non-Debtor subsidiaries of Virgin Orbit Holdings, Inc., including, without limitation, filing a certificate of dissolution or similar documents for any of such Entities, together with all other necessary corporate and company documents, to effect the dissolution of such Entities under the applicable laws of the jurisdiction in which such Entities were formed.

N.      *Wind-Down Amount.*

On the Effective Date, the Debtors shall retain Cash in the amount of the Wind-Down Amount, which shall be used in accordance with the terms of the Wind-Down Budget. Any remaining Cash held by the Debtors after making all of the disbursements contemplated by the Wind-Down Budget shall promptly be distributed in accordance with the Plan, as acceptable to the Required Consenting Creditors.

O.      *Dissolution of the Boards of the Debtors.*

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Debtors with respect to their affairs. Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall be authorized to (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of the applicable state(s) of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

The filing by the Plan Administrator of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of any of the Debtors or any of their Affiliates.

*P.     Closing the Chapter 11 Cases*

Upon administering in full the Chapter 11 Cases, the Plan Administrator may seek authority from the Bankruptcy Court to close any of the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

Article V.
**TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES; EMPLOYEE BENEFITS; AND INSURANCE POLICIES**

*A.     Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, the Assumed Contracts to be assumed and assigned in connection with such Plan Sale Transaction will be deemed assumed and assigned to the applicable Successful Bidder in accordance with the applicable Plan Sale Transaction Documentation.

On the Effective Date, except as otherwise provided herein, any Executory Contract or Unexpired Lease (i) not previously assumed, (ii) not assumed and assigned in accordance with any Sale Transaction Documentation, or (iii) not previously rejected pursuant to an order of the Bankruptcy Court, and (iv) is not the subject of a pending motion to reject, assume or assume and assign as of the Effective Date will be deemed rejected.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Debtors' Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date or, as to rejected Executory Contracts and Unexpired Leases, on such later date as may be identified on the Rejected Contracts List or other motion or notice to reject. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to amend or supplement the Rejected Contracts List in their discretion prior to the Effective Date (or such later date as may be permitted by Article V.B or Article V.E below), *provided* that the Debtors shall give prompt notice of any such amendment or supplement to any affected counterparty and such counterparty shall have a reasonable opportunity to object thereto on any grounds.

Notwithstanding anything to the contrary herein, the terms of any 363 Sale Transaction Documentation and any 363 Sale Order shall govern the cure of defaults, assumption and assignment, and compliance with section 365 of the Bankruptcy Code with respect to any Executory Contracts or Unexpired Leases assumed and assigned pursuant to such 363 Sale Transaction Documentation and 363 Sale Order.

33

B.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost in Cash on the Effective Date or as soon as reasonably practicable, subject to the limitation described below, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree, in each case subject to any applicable Plan Sale Transaction Documentation.

Assumption of any Executory Contract or Unexpired Lease shall result in the full satisfaction and cure of any Claims and defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, under any assumed Executory Contract or Unexpired Lease arising at any time prior to the effective date of assumption. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Cost will be deemed to have assented to such assumption, assumption and assignment, and Cure Cost.

C.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases by virtue of this Plan must be filed with the Notice and Claims Agent within thirty (30) days after the date of the effectiveness of the rejection of the applicable Executory Contract or Unexpired Lease. **Any Proofs of Claim arising from the rejection of the Executory Contracts and Unexpired Leases that are not timely filed shall be subject to disallowance by further order of the Court upon objection on such grounds.** All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

D.      *Contracts and Leases Entered into After the Petition Date*

The Debtors and, to the extent assigned to a Successful Bidder, the Successful Bidder, will perform under any contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by any Debtor, and will be liable thereunder in the ordinary course of business.

E.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Rejected Contracts List or Assumed Contracts List, as applicable, nor anything contained in the Plan or Sale Transaction Documentation, nor the Debtors' delivery of a notice of proposed assumption and proposed Cure Cost to any contract and lease counterparties, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator, as applicable, shall have forty-five (45) days

34

following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease. If there is a dispute regarding a Debtor's liability under an assumed Executory Contract or Unexpired Lease, the Plan Administrator shall be authorized to move to have such dispute heard by the Bankruptcy Court pursuant to Article X.C of the Plan.

Article VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Distribution on Account of Claims Allowed as of the Effective Date*

Except as otherwise provided in the Plan or a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Initial Distribution Date; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business or industry practice; and (2) Allowed Priority Tax Claims shall be satisfied in accordance with Article II.C herein.

B.    *Distributions on Account of Claims Allowed After the Effective Date*

1.    Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions on account of Disputed Claims that become Allowed after the Effective Date shall be made on the next Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim; *provided* that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article II.C of the Plan.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision in the Plan to the contrary and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.

3.    Distributions of Distributable Proceeds

After the Initial Distribution Date, the Plan Administrator shall, or shall direct the Distribution Agent to, distribute additional Distributable Proceeds as soon as practicable upon such Distributable Proceeds becoming available to the Debtors or the Plan Administrator. Such

35

additional Distributable Proceeds shall be distributed in accordance with the terms of Article IV of the Plan.

C.     *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided herein, on the Initial Distribution Date each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. If and to the extent that any Disputed Claims exist, distributions on account of such Disputed Claims shall be made pursuant to Article VI.B and Article VII of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

D.     *Delivery of Distributions*

1.     <u>Record Date for Distributions</u>

For purposes of making distributions on the Initial Distribution Date only, the Distribution Agent shall be authorized and entitled to recognize only those Holders of Claims reflected in the Debtors' books and records as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly-traded security, is transferred (a) twenty-one (21) or more days before the Distribution Record Date and reasonably satisfactory documentation evidencing such transfer is Filed with the Court, the Distribution Agent shall make the applicable distributions to the applicable transferee, or (b) twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form is Filed with the Court and contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

The Distribution Record Date shall not apply to publicly traded securities deposited with DTC and, in connection with any distribution under the Plan to be effected through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise), the Debtors or the Plan Administrator, as applicable, shall be entitled to recognize and deal for all purposes under the Plan with Holders of Claims in each Class to the extent consistent with the customary practices of DTC used in connection with such distributions.

2.     <u>Delivery of Distributions in General</u>

Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in the Debtors' records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder, if applicable; *provided* that the manner of such distributions shall be determined at the discretion of the Plan Administrator.

3.     <u>Delivery of Distributions on DIP Facility Claims</u>

All distributions on account of the DIP Facility Claims shall be made to the DIP Lenders.

36

4.     <u>Delivery of Distributions on Prepetition Secured Notes Claims</u>

All distributions on account of the Prepetition Secured Notes Claims shall be made to the Prepetition Secured Noteholder.

5.     <u>Distributions by Distribution Agents</u>

The Debtors or the Plan Administrator, as applicable, shall have the authority to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder. To the extent the Debtors or the Plan Administrator, as applicable, determines to utilize a Distribution Agent to facilitate the distributions under the Plan to Holders of Allowed Claims, any such Distribution Agent would first be required to:  (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan; (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under the Plan to be distributed by such Distribution Agent; and (d) post a bond, obtain a surety or provide some other form of security for the performance of its duties, the costs and expenses of procuring which shall be borne by the Debtors or the Plan Administrator, as applicable.

The Debtors or the Plan Administrator, as applicable, shall pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions, or consents.  The Distribution Agents shall submit detailed invoices to the Debtors or the Plan Administrator, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement and the Debtors or the Plan Administrator, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors or the Plan Administrator, as applicable, deem to be unreasonable.  In the event that the Debtors or the Plan Administrator, as applicable, object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtors or the Plan Administrator, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Debtors or the Plan Administrator, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

6.     <u>Minimum Distributions</u>

Notwithstanding anything herein to the contrary, other than on account of Claims in Classes 1 and 2, the Plan Administrator and the Distribution Agents, as applicable, shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. If any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment will reflect a rounding down of such fraction to the nearest whole dollar.

7.    Undeliverable Distributions

a.    Holding of Certain Undeliverable Distributions

Undeliverable distributions shall remain in the possession of the Plan Administrator until such time as any such distributions become deliverable or are otherwise disposed of in accordance with applicable nonbankruptcy law (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary).  Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.  Nothing contained herein shall require the Plan Administrator to attempt to locate any Holder of an Allowed Claim.

b.    Failure to Present Checks

Checks issued by the Plan Administrator (or their Distribution Agent) on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check.  Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.

E.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Plan Administrator, and/or the Distribution Agent, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate, including requiring as a condition to the receipt of a distribution, that the Holders of an Allowed Claim complete an IRS Form W-8 or W-9, as applicable.  The Plan Administrator reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

F.    *Surrender of Canceled Instruments or Securities*

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Equity Interest shall be deemed to have surrendered such certificate or instrument to the Distribution Agent.  Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and except as provided otherwise under the Plan, including the Debtor Release and the Third-Party Release, such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one

38

another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Equity Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan and allowing indenture trustees to exercise charging liens, priorities of payment, and indemnification rights.

G.      *Applicability of Insurance Policies.*

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Contract.  Except for the releases and exculpation provisions of Article IX, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers under any Insurance Contracts, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers under the Insurance Contracts.

Article VII.
**PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS**

A.      *Allowance of Claims*

After the Effective Date, and except as otherwise provided in this Plan, the Plan Administrator shall have and shall retain any and all available rights and defenses that the Debtors had with respect to any Claim, including, without limitation, the right to assert any objection to Claims based on the limitations imposed by section 502 of the Bankruptcy Code.  The Debtors and the Plan Administrator, as applicable, may contest the amount and validity of any Disputed Claim or contingent or unliquidated Claim in the ordinary course of business in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced.

B.      *Prosecution of Objections to Claims*

Except as otherwise specifically provided in the Plan, the Plan Administrator shall have the authority:  (1) to file, withdraw, or litigate to judgment objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court shall retain

39

jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection; *provided* that if the Bankruptcy Court resolves the Allowed amount of a Claim, the Debtors and the Plan Administrator shall not be permitted to seek an estimation of such Claim). Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim subject to applicable law.

D.   *No Distributions Pending Allowance*

If any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Claim becomes an Allowed Claim; *provided* that if only a portion of a Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

E.   *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline, subject to any extensions thereof approved by the Bankruptcy Court.

Article VIII.

## CONDITIONS PRECEDENT TO
## CONFIRMATION AND THE EFFECTIVE DATE

A.   *Conditions Precedent to Confirmation*

1.   The Disclosure Statement Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtors.

2.   The 363 Sale Transaction, if any, shall have been consummated pursuant to the 363 Sale Transaction Documentation.

3.   The Plan Sale Transaction Documentation, if applicable, shall not have been terminated in accordance with its terms.

B.   *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived in accordance with Article VIII.C hereof:

1. the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Required Consenting Creditors and such order shall (A) not have been vacated and (B) not be subject to a stay pending appeal;

2. the Plan, the Disclosure Statement, any Sale Transaction Documentation and the Confirmation Order, and all other documents contemplated thereby, including any amendments, modifications, or supplements thereto, shall be acceptable to the Debtors and the Required Consenting Creditors.

3. payment in full in Cash by the applicable Debtors of any and all accrued but unpaid reasonable and documented Claims for professional fees by the DIP Secured Parties or the Prepetition Secured Noteholder for which the Debtors have received invoices or estimates prior to the Effective Date shall have been made;

4. the Plan Administrator acceptable to the Required Consenting Creditors shall have been appointed and vested with the authority under this Plan;

5. the Plan Administration Agreement shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof;

6. all governmental and third-party approvals, authorizations, rulings, documents, and consents that may be necessary in connection with the Plan Sale Transaction, if any, including from the FAA, shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on the Plan Sale Transaction (as applicable);

7. no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, limiting, preventing, or prohibiting the consummation of any Sale Transaction or any related transactions;

8. the Professional Fee Escrow Amount shall have been transferred to the Professional Fee Escrow Account; and

9. the Wind-Down Amount shall have been funded in accordance with, and as limited by, the terms of the Sale Transaction Documentation and this Plan.

C.      *Waiver of Conditions*

The Debtors, with the consent of the Required Consenting Creditors, may waive any of the conditions to the Effective Date set forth above at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan.

41

*D.     Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan, the Confirmation Order, or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

Article IX.

**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

*A.     Settlement, Compromise, and Release of Claims and Interests.*

Pursuant to section 1123 of the Bankruptcy Code and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

*B.     **Satisfaction of Claims and Termination of Interests.***

Except as otherwise specifically provided in the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Plan Administrator), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim based upon such debt or right

42

is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan. Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan.

C.     *Releases by the Debtors*[3]

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtors, their Estates, and the Plan Administrator from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that the Debtors, or their Estates, or the Plan Administrator would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in a Debtor, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the Prepetition Secured Notes or any ancillary documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Disclosure Statement, the Plan, the Sale Transaction, or any contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Notes, the Sale Transaction Documentation, the Sale Transaction, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence. Notwithstanding the inclusion of any of the Released Parties as a potential party to any Transferred Causes of Action or Retained Causes of Action, such parties shall remain Released Parties.

---

[3]     Any and all releases by the Debtors and their Estates remain subject to the ongoing internal investigation. Nothing herein shall constitute or be deemed a waiver of any Causes of Action that the Debtors may hold against any Entity.

**Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases herein, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein are: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by the releases herein; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors asserting any claim released by the releases herein against any of the Released Parties.**

D.      *Releases by Holders of Claims and Interests*

**As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have released each Debtor and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the Debtors' in- or out-of-court restructuring efforts, the Prepetition Secured Notes or any ancillary documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Disclosure Statement, the Plan, the Sale Transaction, or any contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Notes, the Sale Transaction Documentation, the Sale Transaction, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than claims or liabilities arising out of**

44

or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the release herein is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by the Releasing Parties; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after notice and opportunity for hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim released by the release herein against any of the Released Parties.

## E.    *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including but not limited to any postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of any restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan; *provided, however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be

45

**effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this <u>Article IX.E</u> shall or shall be deemed to prohibit the Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors, in each case unless otherwise expressly provided for in this Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

## F.    *Injunction*

**Except as otherwise provided in the Plan or the Confirmation Order (and, for the avoidance of doubt, subject to Article III.C), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to Article IX.C of the Plan; (c) have been released pursuant to Article IX.D of the Plan, (d) are subject to exculpation pursuant to Article IX.E of the Plan (but only to the extent of the exculpation provided in Article IX.E of the Plan), or (e) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been compromised, released, exculpated, or settled, as applicable, against the Debtors or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated).**

## G.    *Setoffs and Recoupment*

Except as otherwise provided herein, the Plan Administrator, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or non-bankruptcy law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that the applicable Debtor may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order or otherwise); *provided* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Plan Administrator, as applicable, of any such claims, rights, and Causes of Action.

## H.    *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with

46

the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Plan Administrator that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of Uniform Commercial Code termination statements, deposit account control agreement terminations, and any other applicable filings or recordings, and the Plan Administrator shall be entitled to file Uniform Commercial Code terminations or to make any other such filings or recordings on such Holder's behalf.

Article X.
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, except to the extent set forth herein, and in addition to the matters over which the Bankruptcy Court shall have retained jurisdiction pursuant to the Sale Order, if any, or any other order of the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

A.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

B.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Retained Professionals required by the Bankruptcy Code or the Plan;

C.      resolve any matters related to: (1) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (2) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (3) any dispute regarding whether a contract or lease is or was executory or expired;

D.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

E.      adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

47

F.      adjudicate, decide or resolve any and all matters related to Causes of Action;

G.      adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

H.      resolve any cases, controversies, suits, or disputes that may arise in connection with General Unsecured Claims, including the establishment of any bar dates, related notices, claim objections, allowance, disallowance, estimation and distribution;

I.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

J.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

K.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan, or any Entity's rights arising from or obligations incurred in connection with the Plan;

L.      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

M.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

N.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

O.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

P.      determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

Q.      enter one or more orders or final decrees concluding or closing the Chapter 11 Cases;

R.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

48

s.      consider any modification of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

T.      determine requests for payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

U.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

V.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

W.      hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

X.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the releases, injunctions, and exculpations provided under Article IX of the Plan;

Y.      enforce all orders previously entered by the Bankruptcy Court; and

Z.      hear any other matter not inconsistent with the Bankruptcy Code.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Article X of the Plan, the provisions of Article X of the Plan shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Article XI.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

*A.      Modification of Plan*

Subject to the limitations contained in the Plan, the Debtors or the Plan Administrator, as applicable, reserve the right to, in accordance with the Bankruptcy Code and the Bankruptcy Rules, as acceptable to the Required Consenting Creditors: (1) amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, in accordance with section 1127(a) of the Bankruptcy Code; (2) amend or modify the Plan after the entry of the Confirmation Order and before substantial consummation of the Plan in accordance with section 1127(b) of the Bankruptcy Code upon order of the Bankruptcy Court; and (3) remedy any defect or omission or reconcile any inconsistency in the

49

Plan in such manner as may be necessary to carry out the purpose and intent of the Plan upon order of the Bankruptcy Court.

B.    *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.    *Revocation of Plan; Reservation of Rights if Effective Date Does Not Occur*

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans. If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

Article XII.

**MISCELLANEOUS PROVISIONS**

A.    *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the documents and instruments contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors or the Plan Administrator, as applicable, and any and all Holders of Claims and Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Plan Administrator, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and

50

take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

C.    *Reservation of Rights*

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

D.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

E.    *Service of Documents*

Any notice, direction or other communication given regarding the matters contemplated by this Plan must be in writing, sent by personal delivery, electronic mail or courier, and addressed as follows:

51

| Debtors | Counsel to the Debtors |
|---|---|
| Virgin Orbit Holdings, Inc.<br>4022 East Conant Street<br>Long Beach, California 90808<br>Attn: Derrick Boston<br>Email: Derrick.Boston@virginorbit.com | Latham & Watkins LLP<br>355 South Grand Avenue, Suite 100<br>Los Angeles, California 90071<br>Attn:   Jeff E. Bjork<br>Email: jeff.bjork@lw.com<br><br>-and-<br><br>Latham & Watkins LLP<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Attn:    George Klidonas; Anupama Yerramalli<br>Emails: george.klidonas@lw.com<br>          anu.yerramalli@lw.com<br><br>-and-<br><br>Young Conaway Stargatt & Taylor LLP<br>Rodney Square, 1000 North King Street<br>Wilmington, Delaware 19801<br>Attn: Robert S. Brady; Michael R. Nestor; Kara Hammond Coyle; and Allison S. Mielke<br>Emails:    rbrady@ycst.com<br>          mnestor@ycst.com<br>          kcoyle@ycst.com<br>          amielke@ycst.com |

| Counsel to the Committee | Counsel to the DIP Lenders and the Prepetition Secured Noteholder |
|---|---|
| | Davis Polk & Wardwell LLP<br>450 Lexington Ave<br>New York, New York 10017<br>Attn:   Brian M. Resnick, Josh Sturm and Jarret Erickson<br>Email: brian.resnick@davispolk.com<br>        joshua.sturm@davispolk.com<br>        jarret.erickson@davispolk.com<br><br>-and-<br><br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street, 16th Floor<br>Wilmington, Delaware 19899-1347<br>Attn:  Robert J. Dehney and Eric D. Schwartz<br>Email: rdehney@morrisnichols.com<br>        eschwartz@morrisnichols.com |

After the Effective Date, the Plan Administrator has authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to a pre-Effective Date request under Bankruptcy Rule 2002 to those Entities who have filed renewed requests pursuant to Bankruptcy Rule 2002.

In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days of the date of entry of the Confirmation Order, the Debtors shall serve the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address, provided that the Debtors are unable to ascertain new address information for such Entity after a commercially reasonable search.  Mailing of the Notice of Confirmation in the time and manner set forth in this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

F.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.    *Entire Agreement*

On the Effective Date, the Confirmation Order, Plan, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects.

H.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to Debtors not incorporated in Delaware shall be governed by the laws of the state of incorporation of the applicable Debtor.

I.    *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall initially be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date to the extent practicable.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' case website at https://cases.ra.kroll.com/virginorbit/ or the Bankruptcy Court's website at www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

J.    *Nonseverability of Plan Provisions upon Confirmation*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or

unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) non-severable and mutually dependent.

K.     *Conflicts*

To the extent that any provision of the Disclosure Statement, or any order entered prior to Confirmation (for avoidance of doubt, not including the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  To the extent that any provision of the Plan conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

L.     *Dissolution of the Committee*

The Committee shall dissolve, and the current and former members of the Committee shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases on the Effective Date; *provided* that the Committee and its professionals shall have the right to file, prosecute, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Article II.A.2 hereof.

M.     *Section 1125(e) Good Faith Compliance*

The Debtors and each of their respective current and former officers, directors, members (including *ex officio* members), managers, employees, partners, advisors, attorneys, professionals, accountants, investment bankers, investment advisors, actuaries, affiliates, financial advisors, consultants, agents, and other representatives of each of the foregoing Entities (whether current or former, in each case in his, her or its capacity as such), shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

30302797.1

Respectfully submitted,

Dated: April 19, 2023

**Virgin Orbit Holdings, Inc.**

By:     */s/ Daniel M. Hart*
Name:   Daniel M. Hart
Title:    President and Chief Executive Officer

**Vieco USA, Inc.**

By:     */s/ Daniel M. Hart*
Name:   Daniel M. Hart
Title:    President and Chief Executive Officer

**Virgin Orbit, LLC**

By:     */s/ Daniel M. Hart*
Name:   Daniel M. Hart
Title:    President and Chief Executive Officer

**JACM Holdings, Inc.**

By:     */s/ Daniel M. Hart*
Name:   Daniel M. Hart
Title:    President and Chief Executive Officer

**Virgin Orbit National Systems, LLC**

By:     */s/ Mark Baird*
Name:   Mark Baird
Title:    President

[*Signature Page to Plan*]