**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------- x
                                                       :
In re:                                                 :    Chapter 11
                                                       :
VIRGIN ORBIT HOLDINGS, INC., *et al.*,[1]              :    Case No. 23-10405 (KBO)
                                                       :
              Debtors.                                 :    (Jointly Administered)
                                                       :
                                                       :
------------------------------------------------------- x
                                                       :
VLADIMIR BOYKO, on behalf of himself and              :
all others similarly situated,                         :
                                                       :
              Plaintiff,                                :    Adv. Proc. No. 23-50324-KBO
                                                       :
       v.                                              :    **Docket Ref. No. 11**
                                                       :
VIRGIN ORBIT, LLC,                                     :
                                                       :
              Defendant.                                :
------------------------------------------------------- x

**JOINT MOTION FOR ENTRY OF AN ORDER (I) APPROVING, ON A PRELIMINARY
BASIS, THE SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS
WITH VLADIMIR BOYKO, ON BEHALF OF HIMSELF AND ALL OTHERS
SIMILARLY SITUATED, (II) CERTIFYING A CLASS OF CLAIMANTS FOR
SETTLEMENT PURPOSES ONLY, APPOINTING CLASS COUNSEL AND A CLASS
REPRESENTATIVE, (III) APPROVING THE FORM AND MANNER OF NOTICE TO
THE CLASS MEMBERS OF THE CLASS CERTIFICATION AND SETTLEMENT,
(IV) SCHEDULING A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF
THE SETTLEMENT, (V) APPROVING, ON A FINAL BASIS, THE SETTLEMENT
AFTER THE FAIRNESS HEARING, AND (VI) GRANTING RELATED RELIEF**

---

[1]    The Debtors in these cases, along with the last four digits of each debtor's federal tax identification
number, are:  Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco
USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445).  The Debtors' mailing
address for purposes of these cases is 3880 McGowen Street, Long Beach, CA 90808.

# TABLE OF CONTENTS

**Page**

RELIEF REQUESTED ...........................................................................................................1

JURISDICTION AND VENUE .............................................................................................2

BACKGROUND .....................................................................................................................2

    I.      General Background ................................................................................2

    II.    Background Regarding the Settlement ..................................................4

    III.   The Settlement ........................................................................................7

BASIS FOR RELIEF REQUESTED ....................................................................................8

    I.      The Court Should Conditionally Certify the Settlement Class ............11

          a.      The Rule 23(a) Criteria .......................................................12

          b.      The Rule 23(b)(3) Criteria ....................................................14

    II.    The Court Should Preliminarily Approve the Settlement Agreement ..................15

    III.   The Court Should Approve the Form and Manner of the Proposed Notice
of the Settlement ....................................................................................16

    IV.   The Court Should Schedule a Fairness Hearing to Finally Approve the
Settlement Pursuant to Rule 23 .............................................................18

NOTICE ................................................................................................................................19

30598133.1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Adelphia Commc'n Corp.*,
  361 B.R. 337 (Bankr. D. Del. 2007) ........................................................................8

*Amchem v. Windsor*,
  521 U.S. 591 (1997).........................................................................11, 12, 15

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994)........................................................................13

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006)........................................................................14

*Behrend v. Comcast Corp.*,
  245 F.R.D. 195 (E.D. Pa. 2007)........................................................................12

*Cannon v. Cherry Hill Toyota, Inc.*,
  184 F.R.D. 540 (D.N.J. 1999)........................................................................14

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mort. Loan
  Litig.*,
  418 F.3d 277 (3d Cir. 2005)........................................................................11, 18

*In re Community Bank of Northern Virginia*,
  2008 WL 3833271 (W.D. Pa. Aug. 15, 2008) ................................................16, 18

*Gates v. Rohm and Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008)........................................................................12, 15

*In re General Motors Corp.*,
  55 F.3d 768 (3d Cir. 1995)........................................................................11, 16, 18

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)........................................................................2, 19

*Johnston v. HBO Film Mgmt.*,
  265 F.3d 178 (3d Cir. 2001)........................................................................14

*In re Key3Media Grp., Inc.*,
  336 B.R. 87 (Bankr D. Del. 2005) ........................................................................9

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998)........................................................................17

*Marcus v. BMW of N. Am., LLC,*
  687 F.3d 583 (3d Cir. 2012)............................................................................13

*In re Marvel Entm't Grp., Inc.,*
  222 B.R. 243 (D. Del 1998)...............................................................................9

*Moskovitz v. Lopp,*
  128 F.R.D. 624 (E.D. Pa. 1989).......................................................................12

*Myers v. Martin (In re Martin),*
  91 F.3d 389 (3d Cir. 1996)...............................................................................8

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  259 F.3d 154 (3d Cir. 2001).............................................................................12

*In re Nortel Networks, Inc.,*
  522 B.R. 491 (Bankr. D. Del. 2014) .............................................................9, 10

*In re Northwestern Corp.,*
  2008 WL 2704341 (Bankr. D. Del. July 10, 2008)..........................................8, 9

*In re Nutritional Sourcing Corp.,*
  398 B.R. 816 (Bankr. D. Del. 2008) ................................................................10

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery,*
  330 F.3d 548 (3d Cir. 2003)..............................................................................9

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
  390 U.S. 414 (1968).........................................................................................9

*Smith v. Professional Billing & Mgmt. Svs., Inc.,*
  2007 WL 4191749 (D. N.J. Nov. 21, 2007) .....................................................15

*Stewart v. Abraham,*
  275 F.3d 220 (3d Cir. 2001)............................................................................12

*Tyson Foods, Inc. v. Bouaphakeo,*
  577 U.S. 442 (2016)........................................................................................15

*In re W.R. Grace & Co.,*
  475 B.R. 34 (Bankr. D. Del. 2012) .................................................................10

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)........................................................................................13

*Will v. Northwestern Univ. (In re Nutraquest, Inc.),*
  434 F.3d 639 (3d Cir. 2006).........................................................................8, 9

# STATUTES

11 U.S.C.

 § 105(a)......................................................................................................2

 § 503...................................................................................................5, 6

 § 507(a)(4)..........................................................................................5, 6

 § 1107.......................................................................................................4

28 U.S.C.

 § 157.........................................................................................................2

 § 157(b)....................................................................................................2

 § 1334.......................................................................................................2

 § 1408.......................................................................................................2

 § 1409.......................................................................................................2

29 U.S.C.

 § 1400.......................................................................................................4

 § 2101.......................................................................................................4

 § 2102(B)(2).............................................................................................5

# RULES

Fed. R. Bankr. P.

 2002........................................................................................................20

 9019..................................................................................................2, 8, 11

 9019(a).....................................................................................................9

Fed. R. Civ. P.

 23...................................................................................................... *passim*

 23(a)..................................................................................................12, 15

 23(a)(4)..................................................................................................14

 23(b)(3).........................................................................11, 12, 14, 15, 17

 23(c)(2)(B).......................................................................................17, 18

 23(c)(3)....................................................................................................17

 23(e).................................................................................................17, 18

Local Rule 9013-1(f)..........................................................................................2

# TREATISES

7A Charles Alan Wright et al., Federal Practice and Procedure § 1765 (3d ed. 2005) ......................................................................................................14

# CONSTITUTIONAL PROVISIONS

U.S. Const. Art. III............................................................................................2

30598133.1

Virgin Orbit Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") and prospective class representative Vladimir Boyko (the "**Plaintiff**" or "**Class Representative**"), on behalf of himself and similarly-situated putative class members (the "**Class Members**" or the "**Class**"), by and through their respective counsel, respectfully represent as follows in support of this motion (this "**Motion**"):

**RELIEF REQUESTED**

1.      By this Motion, the Debtors seek entry of a preliminary order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Preliminary Order**"): (a) approving on a preliminary basis the *Settlement and Release Agreement* (the "**Settlement Agreement**" or "**Settlement**" attached thereto as **Exhibit I**) among Debtor Virgin Orbit, LLC ("**Virgin Orbit**"), Virgin Investments Limited (together with its affiliates, "**VIL**"), and Class Members (collectively, the "**Parties**"), (b) (i)certifying the Class for settlement purposes only, (ii) appointing Raisner Roupinian LLP as class counsel ("**Class Counsel**") for settlement purposes only, (iii) appointing Vladimir Boyko as Class Representative for settlement purposes only; (c) approving the form and manner of notice to Class Members of the conditional class certification and settlement ("**Class Notice**"); (d) scheduling a fairness hearing (the "**Fairness Hearing**") to consider final approval of the Settlement Agreement; (e) approving the Settlement Agreement through the entry of a final order, substantially in the form attached hereto as **Exhibit B** the ("**Proposed Final Order**"); and (f) granting related relief.

2.      In further support of the Motion, the Debtors rely on upon the *Declaration of Alan Carr*, attached hereto as **Exhibit C** and Plaintiff relies on the Declaration of René S. Roupinian, attached hereto as **Exhibit D** (collectively, the "**Settlement Declarations**").

## JURISDICTION AND VENUE

3.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal predicates for the relief requested herein are section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Bankruptcy Rule 9019 and 7023 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 23 of the Federal Rules of Civil Procedure (the "**Federal Rules**").

5.      Pursuant to Local Rule 9013-1(f), Plaintiff and the Debtors consent to the entry of a final order or judgment by the Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### I.      General Background

6.      On April 4, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases (the "**Chapter 11 Cases**") for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Daniel M. Hart in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 13] (the "**Hart First Day Declaration**") and the *Declaration of Brian Whittman in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 14] (together with the Hart First Day Declaration, the "**First Day Declarations**"), filed with this Court on the Petition Date.

30598133.1

7.      On April 17, 2023, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Committee**") [Docket No. 92].

8.      On June 20, 2023, the Debtors filed the *Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 463] ((as modified, amended, or supplemented from time to time, the "**Plan**")[1], and the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 465] (the "**Disclosure Statement**").

9.      On the same date, the Court entered the *Order (A) Approving the Disclosure Statement; (B) Establishing the Voting Record Date, Voting Deadline, and Other Deadlines; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan; (D) Approving the Manner and Forms of Notice and Other Related Documents; and (E) Granting Related Relief* [Docket No. 462] (the "**Disclosure Statement Order**") approving, among other things, the Disclosure Statement and the solicitation of the Plan, and setting a hearing (the "**Confirmation Hearing**") in connection with the entry of an order confirming the Plan (the "**Confirmation Order**") for July 28, 2023 at 10:30 a.m. (prevailing Eastern Time).

10.     The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in these Chapter 11 Cases

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

II.    **Background Regarding the Settlement**

11.    In an effort to minimize costs and preserve the value of the estate, immediately following unsuccessful efforts to pursue a financing or other transaction to avert its broad restructuring, on or around March 31, 2023, Virgin Orbit notified approximately 675 employees (the "**Employees**"), including Plaintiff, that due to financial and capital issues, the Employees' employment with the company would be terminated effective as of April 3, 2023.

12.    The notice provided the opportunity for the Employees to enter into a Confidential Separation and Release Agreement ("**Release Agreement**") to receive, among other things, valuable transition assistance, including continued healthcare benefits in exchange for a release of all claims—including federal and state WARN claims—and a class action waiver.

13.    Plaintiff did not execute a Release Agreement.  Over 400 Employees, however, signed the Release Agreement.

14.    On April 3, 2023, Virgin Orbit terminated approximately 675 Employees, including the Class Members, who reported to its facilities in Long Beach and Mojave, California.

15.    On the Petition Date, Plaintiff commenced an adversary proceeding (the "**Adversary Proceeding**") against Virgin Orbit, on behalf of himself and on behalf of the Class Members, alleging that Virgin Orbit violated the Worker Adjustment and Retraining Notification Act ("**WARN Act**"), 29 U.S.C. § 2101 *et seq.* and the California Labor Code § 1400 *et seq.* ("**CAL WARN Act**") (collectively the "**WARN Claims**") by not providing Plaintiff and the Class at least sixty (60) days' advance written notice of their terminations.  Plaintiff also asserts that the first $15,150 of each Class Member's allowed claim is entitled to wage priority treatment under 11 U.S.C. § 507(a)(4) and (5), with any remainder as a general unsecured claim, and that Plaintiff is entitled to an allowed administrative priority claim pursuant to 11 U.S.C. § 503 against Virgin

Orbit for the reasonable attorneys' fees and the costs and disbursements that he incurred in prosecuting this action.

16.     On June 13, 2023, Plaintiff filed a motion for class certification (the "**Motion for Class Certification**") seeking to certify a WARN class and two subclasses:  (a) subclass 1 of class members who did not sign a Release Agreement; and (b) subclass 2 of class members who signed a Release Agreement.  *See* Adversary Proceeding [Docket No. 1]

17.     On July 7, 2023, Virgin Orbit filed its objection to the Motion for Class Certification.

18.     Over the course of the Chapter 11 Cases, the Debtors and Plaintiff have participated in active negotiations spanning several weeks with respect to the Class Members' asserted WARN Claims against Virgin Orbit.  The Debtors' advisors have analyzed the WARN Claims and potential defenses that Virgin Orbit may have.  Members of the Debtors' management and board of directors have been informed of the WARN Claims and the potential defenses.

19.     Virgin Orbit contends, among other things, that:  (a) to the extent the WARN Act was implicated, the unforeseeable business circumstances exception set forth in 29 U.S.C. § 2102(B)(2) is a complete defense to any WARN Act claims; (b) it acted in good faith and had reasonable grounds for believing its conduct was not in violation of the WARN Act, including because it was actively seeking capital or business which, if obtained, would have enabled it to avoid or postpone the shutdown and it reasonably and in good faith believed that giving the notice allegedly required would have precluded it from obtaining the needed capital or business; and (c) some or all of the Class Members are barred from asserting WARN Claims because of their receipt of severance and/or their execution of the Release Agreement, which included a release of any WARN Claims and a class action waiver.

20.    Based on the asserted claims and defenses in the Adversary Proceeding, there exist significant, complex legal and factual issues regarding the application of the WARN Act and CAL WARN Act (collectively, the "**WARN Acts**") to the facts and circumstances at issue and the viability of the Adversary Proceeding, including, without limitation:  (a) whether Virgin Orbit was entitled to give fewer than sixty (60) days' notice because of unforeseeable business purposes or because it was actively seeking capital or business which, if obtained, would have enabled it to avoid or postpone the shutdown; (b) whether Virgin Orbit has other defenses to the WARN Acts; (c) whether the severance paid to Class Members should off-set any WARN Act recoveries; (d) whether any Class Members are barred from asserting WARN Claims because of their execution of Release Agreements; (e) the computation of the amount of damages, if any; (f) whether attorneys' fees are to be awarded to the Class Members if they prevail; (g) whether the first $15,150 of each Class Member's allowed claim is entitled to wage priority treatment under 11 U.S.C. § 507(a)(4) and (5); and (h) whether the Class Representative's reasonable attorneys' fees and costs and disbursements incurred in prosecuting this action are entitled to an allowed administrative priority claim pursuant to 11 U.S.C. § 503.

21.    Trial of this matter would likely be lengthy and complex, adding to cost and potential delay to the administration and wind down of the Chapter 11 Cases.  Due to the complex nature of the issues involved, the Parties recognize that the outcome of the Adversary Proceeding is uncertain.  To avoid extensive, costly, and uncertain litigation, the Parties elected to enter into the Settlement Agreement.

### III.    The Settlement

22.    The Parties, following good faith and arm's-length negotiations, have negotiated

the Settlement Agreement to consensually resolve the WARN Claims.  The Settlement Agreement

contains the following key terms:[2]

- On the Effective Date of the Settlement Agreement (as defined in the Settlement Agreement, and which, for the avoidance of doubt, cannot occur before Class Counsel shares with the Debtors and VIL a list of Class Members who have opted-out of the Settlement Agreement and the period to submit a withdrawal notice has expired), VO and VIL shall cause the allowed class claim amount of $1,455,000 to be paid to a qualified settlement fund to be established by the administrator in conformity with Internal Revenue Code § 468B pursuant to written instructions provided by Class Counsel, reasonably acceptable to VO and VIL;

- VO and VIL shall separately cause the employers' share of payroll taxes to be paid to the qualified settlement fund;

- VO and VIL shall separately cause the costs incurred in administering the settlement to be paid to the qualified settlement fund;

- Plaintiff and the Class shall support and/or otherwise not object to or take any other action that would reasonably be expected to delay, impede, or interfere with the acceptance, confirmation, implementation, or consummation of (a) the Plan and/or (b) the wind-down process and any other transactions or matters contemplated by the Plan;

- Plaintiff and the Class shall grant releases including for Debtors, VIL, directors, officers, and shareholders with respect to, among other things, the WARN Claims;

- The Class Counsel, on behalf the Class Representative and all Class Members, agree to accept the Settlement as treatment of their alleged claims in the Chapter 11 Cases arising out of or relating to the WARN Act and/or CAL-WARN Act and that such treatment with respect to the Class Representative and the Class Members complies with Section 1129, including 1129(a)(9), of the Bankruptcy Code; and

---

[2]    The summary of the Settlement Agreement provided for herein is provided solely for the convenience of the Court, and is not intended to be a comprehensive recitation of all of the terms of the Settlement Agreement.  The summary is qualified in its entirety by the actual terms of the Settlement Agreement, and to the extent that there is any inconsistency between the summary provided for herein and the actual terms of the Settlement Agreement, the actual terms of the Settlement Agreement shall control.

30598133.1

- If more than five Class Members exercise their right to opt-out of the Settlement, the Debtor, the Plan Administrator, or VIL may elect to terminate this Settlement Agreement within five (5) business days of the date on which the Plan Administrator and VIL are informed of the number of Class Members who have opted-out of the Settlement Agreement.

23.     The Debtors and their advisors have reviewed the Settlement Agreement and determined it is reasonable and appropriate.

24.     The Settlement Agreement resolves legal issues that are subject to potential litigation.  Avoiding potentially expensive and prolonged litigation—which would adversely affect recoveries—preserves the valuable and limited resources of the Debtors' estates, and allows the Debtors to pursue an unobstructed path toward the timely and successful confirmation of the Plan. Accordingly, the Debtors and their advisors believe that entering into the Settlement Agreement will maximize the value of the Debtors' estates.

## BASIS FOR RELIEF REQUESTED

25.     Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 428 (1968).  It is well settled that in order to "minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'"  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 *Collier on Bankruptcy* ¶ 9019.03[1] (15th ed. 1993)); *see also Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that "[s]ettlements are favored [in bankruptcy]"); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same).  Accordingly, when required, "courts are able to craft flexible remedies that, while not expressly authorized by the [Bankruptcy] Code, affect the result the [Bankruptcy] Code was designed to obtain."  *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003).

26.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.  *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'" (citation omitted)); *In re Northwestern Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("[T]he bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.") (citation omitted); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable."). "Ultimately, the decision whether or not to approve a settlement agreement lies within the sound discretion of the Court." *In re Nortel Networks, Inc.*, 522 B.R. 491, 510 (Bankr. D. Del. 2014).

27.     In *Martin*, the United States Court of Appeals for the Third Circuit set forth a four-factor balancing test under which bankruptcy courts are to analyze proposed settlements.  The factors the Court must consider are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Martin*, 91 F.3d at 393.  *See also In re Nutraquest*, 434 F.3d at 644-45 (applying *Martin*'s four-factor test to affirm district court's order approving settlement); *Key3Media*, 336 B.R. at 93 (holding that, when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value of the estate of the acceptance of the compromise proposal").

28.     Importantly, it is well-established that a settlement proponent need not convince the Court that a settlement is the best possible compromise, but only that the settlement falls

"within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008). *See also In re W.R. Grace & Co.*, 475 B.R. 34, 77-78 (Bankr. D. Del. 2012) ("In analyzing the compromise or settlement agreement under the Martin factors, courts should not have a 'mini-trial' on the merits, but rather should canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."); *Nortel*, 522 B.R. at 510 (same).   The Debtors believe that each of the relevant *Martin* factors set forth above weighs in favor of approving the Settlement Agreement, and that the Settlement Agreement lies above the lowest point in the range of reasonableness.

29.     *The Probability of Success in Litigation.*     While the Debtors believe that prosecution of the WARN Claims is unlikely to succeed and the Debtors would vigorously contest the WARN Claims during the claims administration process, doing so carries with it inherent uncertainties, and there is no assurance that a better result for Virgin Orbit would be achieved than the one set forth in the Settlement Agreement.

30.     *The Complexity of the Litigation and the Attendant Expense, Inconvenience, and Delay.*  As discussed above, significant disputed issues exist in this litigation, and the results of a trial are uncertain.   The Settlement Agreement resolves all disputes between the Debtors and Plaintiff and the Class with respect to the WARN Claims.   Absent the Settlement Agreement, continued litigation would be costly and time-consuming, which would require the Debtors to incur additional administrative expenses, expose the Debtors to potentially millions of dollars in litigation exposure, and risk delaying plan confirmation.

31.     *The Paramount Interests of Creditors.*  The Settlement Agreement provides finality and certainty not only to the Debtors and the Class Members, but also to all creditors in the Chapter

11 Cases, while conserving Virgin Orbit's limited resources and allowing for an efficient and cost-effective claims administration process.

32.     The Settlement Agreement is reasonable and in the best interests of the Debtors' estates and their creditors in the Chapter 11 Cases.  The compromise embodied in the Settlement Agreement is the product of good-faith and arm's-length negotiations between the Debtors and Plaintiff.  Accordingly, the Debtors respectfully submit that the *Martin* factors are met, the Settlement Agreement falls well within the "range of reasonableness," and, therefore, the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019.

### I.     The Court Should Conditionally Certify the Settlement Class

33.     Before approving a class settlement pursuant to Rule 23, the Court must determine whether the proposed settlement class satisfies Rule 23's requirements for class certification.  *See Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mort. Loan Litig.*, 418 F.3d 277, 300 (3d Cir. 2005).

34.     "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem*, 521 U.S. at 618; *accord Cmty. Bank*, 418 F.3d at 299.  "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification." *Cmty. Bank*, 418 F.3d at 299; *see In re General Motors Corp.*, 55 F.3d 768, 786 (3d Cir. 1995) ("By specifying certification for settlement purposes only … the court preserves the defendant's ability to contest certification should the settlement fall apart.").

35.     Subdivisions (a) and (b) of Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem*, 521 U.S. at 621.

30598133.1

11

36.    Here, all four requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3), are satisfied, and the Court should conditionally certify the Class solely for settlement purposes.[3]

37.    The Class is defined as follows: Plaintiff and all persons (i) who worked at or reported to Debtor's facilities in Long Beach or Mojave, California, (ii) who were terminated without cause beginning on April 3, 2023, or within 30 days of that date, (iii) who did not sign a Confidential Separation and Release Agreement, and (iv) who have not filed a timely request to opt-out of the class (the "Settlement Class").

**a.    The Rule 23(a) Criteria**

38.    Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001).  "No single magic number exists satisfying the numerosity requirement." *Behrend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citing *Moskovitz v. Lopp*, 128 F.R.D. 624, 628 (E.D. Pa. 1989)).  However, the Third Circuit "typically has approved classes numbering 40 or more." *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 440 (E.D. Pa. 2008) (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23 has been met").

39.    The proposed Settlement Class consists of approximately 200 individuals, a number that is sufficiently numerous to justify certification.

---

[3]    The Debtors reserve all rights and arguments raised in *Debtor's Objection to Plaintiff's Motion for Class Certification and Related Relief* filed on July 7, 2023 [Adversary Proceeding Docket No. 16].

40.     The commonality requirement requires the existence of "questions of law or fact common to the class" the "truth or falsity" of which will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). As the Supreme Court observed, "[w]hat matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 349-350 (emphasis in original).

41.     Here, fundamental issues of law and fact regarding Virgin Orbit's notice of termination and termination of Employees, the applicability of Virgin Orbit's defenses to the WARN Acts, whether severance paid to Class Members should offset any WARN Act recoveries, and the priority of Class Members' claims are common among the proposed class.

42.     The concepts of typicality and commonality are closely related and often tend to merge. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597-98 (3d Cir. 2012) (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (citation omitted). "Typicality, however, derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'" *Id.* (quoting 7A Charles Alan Wright et al., Federal Practice and Procedure § 1765 (3d ed. 2005)); *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (typicality requires that the claims of the "named plaintiffs are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class").

43.     The Plaintiff here alleges that he and the Class Members were terminated by Virgin Orbit through the same course of events, and hence that they all suffered the same type of injury due to Virgin Orbit's alleged failure to comply with the requirements of the WARN Acts.

44.     Last, Rule 23 provides that a class action can be maintained only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "assures that the named plaintiff's claims are not antagonistic to the class and that the attorneys for the class representative are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the representative's interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 185 (3d Cir. 2001); *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 545 (D.N.J. 1999).

45.     The Court should find that the Class Representative and Class Counsel adequately represent the interests of Class Members. As demonstrated by the accompanying declaration of René Roupinian, Class Counsel are well qualified, experienced with WARN actions, and able to fairly and adequately represent the Class.

### b.     The Rule 23(b)(3) Criteria

46.     To certify a Rule 23(b)(3) damages class, common questions of law and fact must predominate over individual issues. Fed. R. Civ. P. 23(b)(3). To analyze predominance, the Supreme Court instructs that "[a]n individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (emphasis added). In addition, Rule 23(b)(3) also requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

30598133.1

14

R. Civ. P. 23(b)(3). This requirement ensures that a class is certified when it will "achieve economies of time, effort, and expense . . . without sacrificing procedural fairness." *Amchem*, 521 U.S. at 615 (internal quotation marks and citation omitted).

47. Here, the predominance requirement is met because, as explained above in the Rule 23(a) analysis, there are common questions of law and fact that relate to all class members. Here, the superiority requirement is likewise met because: (a) only two of the approximately 200 Class Members—those who filed Proofs of Claim for WARN Act violations—plausibly have an interest in controlling the prosecution of separate action; (b) there is no other litigation concerning this controversy already pending; (c) concentrating potential litigation conserves the Debtors' resources; and (d) the relative efficiencies and minimal cost involved in administering the settlement claims process—which the Parties estimate to cost approximately $10,000—mean that there will likely be no difficulties in managing this settlement Class. *See* Fed. R. Civ. P. 23(b)(3).

48. Based on the foregoing, the Class should certify the Class for settlement purposes, appoint Plaintiff as the Class Representative, and appoint Raisner Roupinian LLP as Class Counsel.

## II. The Court Should Preliminarily Approve the Settlement Agreement

49. "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (quoting *Smith v. Professional Billing & Mgmt. Svs., Inc.*, 2007 WL 4191749, at *1 (D. N.J. Nov. 21, 2007)); *see also In re Community Bank of Northern Virginia*, 2008 WL 3833271 (W.D. Pa. Aug. 15, 2008). The preliminary approval determination requires the Bankruptcy Court to consider where "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery;

(3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp.*, 55 F.3d at 785-86.

50.     The Settlement Agreement has no obvious deficiencies and falls well within the range of reason.  Further, each of the above-cited factors weighs in favor of preliminary approval of the Settlement Agreement.

51.     First, the Settlement is the result of good faith, arm's length negotiations between capable adversaries.  The Parties have been in discussions with respect to the WARN Claims since the Adversary Proceeding was filed (over three months ago), and the putative Class has been represented by counsel with extensive experience and expertise in WARN Act matters.

52.     Second, the Parties exchanged a significant amount of information during their negotiations.  In particular, Debtor provided extensive information to Class Counsel regarding facts and documents relating to Virgin Orbit's defenses, including payroll information, and a WARN Act damages analysis.  The Parties also exchanged candid information related to the valuation of the WARN Claims.

53.     Third, Class Counsel have collectively been appointed as class counsel in well over 150 WARN Act cases.  Class Counsel has the experience and skill both to litigate vigorously WARN Act claims and to determine when and to what extent settlement is appropriate.  They have exercised that judgment in this case with respect to the Settlement Agreement.

54.     Accordingly, the Court should preliminarily approve the Settlement Agreement.

III.    **The Court Should Approve the Form and Manner of the Proposed Notice of the Settlement**

55.     Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and

concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

56.     In addition, Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement.  Fed. R. Civ. P. 23(e).  The Rule 23(e) requirement is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation."  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 326-27 (3d Cir. 1998).

57.     The proposed Class Notice, which is attached as **<u>Exhibit II</u>** to the Preliminary Order, will be served by Class Counsel upon each Class Member.  Class Counsel proposes that within five (5) business days following entry of the Preliminary Order, Class Counsel will prepare and serve the Class Notice by first class mail and electronic mail, where available, upon each Class Member at the last known address of each Class Member according to the Debtors' books and records (or as updated by Class Counsel's searches for current addresses or as may otherwise be determined by the Parties).

58.     The Class Notice includes each of the disclosures required by Civil Rule 23(c)(2)(B).  The Class Notice also outlines the terms of the Settlement Agreement, including the attorneys' fees and out of pocket costs proposed to be paid to Class Counsel and describes how each Class Member may obtain a copy of the Settlement Agreement or may contact Class Counsel by telephone or electronic mail for more information.  The Class Notice also states the date, time,

location and purpose of the Fairness Hearing, informs each Class Member of their right to appear at the Fairness Hearing, and describes the procedure for opting out of the Class or objecting to the Settlement Agreement.  Accordingly, the form and manner of the Class Notice complies with Civil Rule 23(c)(2)(B) and should be approved.

## IV.    The Court Should Schedule a Fairness Hearing to Finally Approve the Settlement Pursuant to Rule 23

59.    The Court should schedule the Fairness Hearing for September 26, 2023 at 10:30 a.m. (prevailing Eastern Time).  At the Fairness Hearing, the Court should finally approve the Settlement.

60.    Rule 23 provides that "[t]he claims, issues, or defenses" of a "class proposed to be certified for purposes of settlement . . . may be settled, voluntarily dismissed or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).

61.    "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished."  *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 2008 WL 3833271 at * 5 (quoting *In re General Motors Corp.*, 55 F.3d at 785.).

62.    The Third Circuit has held that the following non-exhaustive factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (a) the complexity, expense and likely duration of the litigation; (b) the reaction of the class to the settlement; (c) the stage of the proceedings; (d) the risks of establishing liability; (e) the risks of establishing damages; (f) the risks of maintaining the class action through trial; (g) the ability of the defendants to withstand a greater judgment; (h) the range of reasonableness of the settlement fund in light of the best recovery; and (i) the range of reasonableness of the settlement in light of

all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d at 157 (listing the factors); *Cmty. Bank*, 2008 WL 3833272 * 6 (stating that the factors are non-exhaustive).

63.     The following *Girsh* factors strongly support approval of the Settlement Agreement:

- Litigation will be complicated, protracted and expensive.

- The Class Representative supports the Settlement Agreement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement Agreement and will not object to it.

- The Settlement Agreement was reached after the essential facts had been thoroughly investigated by Class Counsel through disclosures by Debtors' counsel in conjunction with the Parties' numerous settlement discussions;

- The Settlement Agreement spares the Debtors' estate the significant expense and uncertainty associated with the litigation, including the risk of any attendant delay and risk associated with the confirmation of the Plan; and

- When considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness.

64.     For the foregoing reasons and those discussed above, the Court should finally approve the Settlement Agreement at the Fairness Hearing.

### NOTICE

65.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to the DIP Secured Parties; (d) the holder of the Debtors' secured convertible notes; (e) the holder of the Debtors' unsecured convertible debenture; (f) Plaintiff; (g) Class Members; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors believe that no further notice is required.

66.     A copy of this Motion is available on (a) this Court's website, at www.deb.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent, Kroll, at https://cases.ra.kroll.com/virginorbit/.

30598133.1

WHEREFORE the Debtors respectfully request entry of the Order granting the relief requested herein and such other and further relief as this Court may deem just and appropriate.

Dated: July 24, 2023
       Wilmington, Delaware

**LOIZIDES, P.A.**

*/s/ Christopher D. Loizides*
Christopher D. Loizides (No. 3968)
1225 King Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
Email: loizides@loizides.com

-and-

**RAISNER ROUPINIAN LLP**

Jack A. Raisner (admitted *pro hac vice*)
René S. Roupinian (admitted *pro hac vice*)
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: jar@raisnerroupinian.com
      rsr@raisnerroupinian.com

*Counsel for Plaintiff and the Class*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Allison S. Mielke*
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Allison S. Mielke (No. 5934)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
      mnestor@ycst.com
      kcoyle@ycst.com
      amielke@ycst.com

-and-

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: jeff.bjork@lw.com

George Klidonas (admitted *pro hac vice*)
Anupama Yerramalli (admitted *pro hac vice*)
Liza L. Burton (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Emails: george.klidonas@lw.com
      anu.yerramalli@lw.com
      liza.burton@lw.com

*Counsel for Debtors and Debtors in Possession*

30598133.1