## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x
                                                   :
In re:                                             :   Chapter 11
                                                   :
VIRGIN ORBIT HOLDINGS, INC., et al.,[1]            :   Case No. 23-10405 (KBO)
                                                   :
            Debtors.                               :   (Jointly Administered)
                                                   :
                                                   :   Ref. Docket Nos. 96, 459, 532, 542, 559, 571
-------------------------------------------------- x   & 576
```

### NOTICE OF FILING OF REVISED PROPOSED ORDER CONFIRMING THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR AFFILIATES

**PLEASE TAKE NOTICE** that, on July 26, 2023, the above-captioned debtors and debtors in possession (the "**Debtors**") filed the *Fourth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 571] (as amended, modified, or supplemented from time to time, the "**Plan**").

**PLEASE TAKE FURTHER NOTICE** that on July 26, 2023, the Debtors filed the *Notice of Filing of Proposed Order Confirming the Fourth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates* [Docket No. 576] (the "**Proposed Confirmation Order**").

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a revised Proposed Confirmation Order (the "**Revised Proposed Confirmation Order**").

**PLEASE TAKE FURTHER NOTICE** that the hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan is scheduled for **July 28, 2023 at 10:30 a.m. (ET)** before the Honorable Karen B. Owens, in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), located at 824 N. Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801. The Confirmation Hearing may be continued from time to time without further notice to parties in interest other than noting such adjournment on the applicable hearing agenda or a notice filed with the Court.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to amend, revise, modify or supplement the Revised Proposed Confirmation Order prior to, at, or as a result of, the Confirmation Hearing.

---

[1]  The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445). The Debtors' mailing address for purposes of these cases is 3880 McGowen Street, Long Beach, CA 90808.

Dated:  July 28, 2023
       Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Allison S. Mielke*
Robert Brady (No. 2847)
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Allison S. Mielke (No. 5934)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email:  rbrady@ycst.com
       mnestor@ycst.com
       kcoyle@ycst.com
       amielke@ycst.com

-and-

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email:  jeff.bjork@lw.com

George Klidonas (admitted *pro hac vice*)
Anupama Yerramalli (admitted *pro hac vice*)
Liza L. Burton (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Emails: george.klidonas@lw.com
       anu.yerramalli@lw.com
       liza.burton@lw.com

*Counsel for Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Further Revised Proposed Confirmation Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| VIRGIN ORBIT HOLDINGS, INC., *et al.*,[1] | Case No. 23-10405 (KBO) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket Nos. 532, 542, 559 & 571** |

## ORDER CONFIRMING THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR AFFILIATES

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")[2]

having:

a. commenced, on April 4, 2023 (the "**Petition Date**"), these chapter 11 cases (these "**Chapter 11 Cases**") by filing voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**");

b. continued to operate their business and manage their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on April 19, 2023, the *Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 96] and *Disclosure Statement for Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 97];

d. filed, on June 12, 2023, the revised *Second Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 439] and the revised *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 440];

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445). The Debtors' mailing address for purposes of these cases is 3880 McGowen Street, Long Beach, CA 90808.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein), as applicable. The rules of interpretation set forth in Article I.B. of the Plan apply.

e.  filed, on June 20, 2023, the *Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 459-1] and the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 459-2];

f.  obtained, on June 20, 2023, the entry of the *Order (A) Approving the Disclosure Statement; (B) Establishing the Voting Record Date, Voting Deadline, and Other Deadlines; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan; (D) Approving the Manner and Forms of Notice and Other Related Documents; and (E) Granting Related Relief* [Docket No. 462] (the "**Disclosure Statement Order**") approving the Disclosure Statement, solicitation procedures (the "**Solicitation Procedures**"), and related notices, forms, and ballots (collectively, the "**Solicitation Packages**");

g.  filed, on June 20, 2023, the solicitation version of the *Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 463] and the solicitation version of the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 465] (as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**");

h.  caused the Solicitation Packages and notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**") and the deadline for objecting to confirmation of the Plan ("**Confirmation**") to be distributed on or about June 20, 2023 in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 541] and the *Affidavit of Supplemental Service of Solicitation Materials* [Docket No. 545] (collectively, the "**Certificates of Solicitation**");

i.  caused notice of the Confirmation Hearing Notice to be published, on June 15, 2023, in *The New York Times* (national edition) as well as in the *Los Angeles Times*, as evidenced by the *Certificate of Publication* [Docket No. 485] and *Proofs of Publication* [Docket Nos. 485-A, 485-B] attached thereto (collectively, the "**Publication Certificates**" and, together with the Certificates of Solicitation, the "**Certificates**");

j.  filed, on July 14, 2023, the *Plan Supplement for Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates* [Docket No. 532] (the "**Initial Plan Supplement**");

k.  filed, on July 18, 2023, the *Revised Exhibit E to the Plan Supplement* [Docket No. 542] (the "**Second Plan Supplement**")

l.  filed, on July 24, 2023, the *Revised Exhibit F to the Plan Supplement* [Docket No. 559] (together with the Initial Plan Supplement, and the Second Plan Supplement, the "**Plan Supplement**");

m.  filed, on July 26, 2023, the *Fourth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 571] (as may be modified, amended, or supplemented from time to time, the "**Plan**"), a copy of which is attached hereto as **Exhibit A**;

n.  filed, on July 26, 2023, the *Debtors' Memorandum of Law in Support of an Order Confirming the Fourth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 575] (the "**Confirmation Brief**");

o.  filed, on July 26, 2023, the *Declaration of James Daloia of Kroll Restructuring Administration LLC Regarding the Solicitation and Tabulation of Ballots Cast on the Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 572] (the "**Voting Report**"); and

p.  filed, on July 26, 2023, the *Declaration of Brian Whittman in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 574] ("**Whittman Declaration**") and the *Declaration of Alan J. Carr in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 573] (the "**Carr Declaration**" and, together with the Whittman Declaration, the "**Confirmation Declarations**").

The Bankruptcy Court having:

a.  set July 21, 2023 at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing objections in opposition to the Plan;

b.  set July 21, 2023 at 5:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan;

c.  set July 28, 2023 at 10:30 a.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

d.  reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Confirmation Declarations, the Voting Report, the Confirmation Hearing Notice, the Certificates, the affidavits of service, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

30610883.1

e.  held the Confirmation Hearing;

f.  considered all testimony presented and evidence admitted at the Confirmation Hearing, as applicable;

g.  overruled any and all objections to the Plan and Confirmation and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

h.  taken judicial notice of all papers and pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of Confirmation and other evidence presented at the Confirmation Hearing and the record of these Chapter 11 Cases establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Jurisdiction and Venue**

1.    Venue in the Bankruptcy Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b).

**B.      Burden of Proof**

2.      The Debtors have met their burden of proving that the Plan complies with each element of sections 1129(a) and, to the extent applicable, 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

**C.      Notice of the Confirmation Hearing**

3.      Notice of the Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

**D.      Confirmation of the Plan**

4.      The Plan, a copy of which is attached as **<u>Exhibit A</u>**, as may be amended by this Confirmation Order, is confirmed pursuant to section 1129 of the Bankruptcy Code.  The terms of the Plan, the documents contained in the Plan Supplement, and any other documents filed in connection with the Plan and/or executed or to be executed to effectuate, implement or consummate the transactions contemplated by the Plan, and all amendments and modifications thereof made in accordance with the Plan and this Confirmation Order, are hereby approved by this Confirmation Order; *provided that*, the Debtors may make non-material modifications to the Plan Supplement prior to the Effective Date.

5.      Any and all objections to confirmation of the Plan that have not been withdrawn or resolved prior to the Confirmation Hearing are hereby overruled, except to the extent sustained by the Court on the record at the Confirmation Hearing.

6.      The documents contained in the Plan Supplement are integral to the Plan and are approved by the Bankruptcy Court and the Debtors are authorized to take all actions required under the Plan and the Plan Supplement documents to effectuate the Plan and the transactions contemplated thereby.

7.      The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference, and are an integral part of this Confirmation Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

8.      The compromises, settlements, releases, exculpations, and injunctions set forth in Article IX of the Plan are approved, and will be effective immediately and binding on the Effective Date.

9.      The Debtors shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in form attached hereto as **Exhibit B** (the "**Confirmation Notice**"), on all parties served with the Confirmation Hearing Notice as soon as reasonably practicable after the Effective Date; *provided that,* no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  The Debtors shall cause the Confirmation Notice to be posted on the website of these Chapter 11 Cases: https://cases.ra.kroll.com/virginorbit/.  Such service in the time and manner set forth herein will provide good, adequate, and sufficient notice under the circumstances, and shall be deemed to comply with Bankruptcy Rules 2002(a)(7), 2002(f)(3) and (f)(7), 2002(1), 3002(c)(4), and 3020(c)(2).

**E.      Proposal of the Plan in Good Faith**

10.     The Plan has been proposed in good faith and not by any means forbidden by law. In so finding, the Bankruptcy Court has considered the totality of the circumstances of these Chapter 11 Cases.  The Plan is the result of extensive, good-faith, and arm's-length negotiations among the Debtors and their principal constituencies, including for the avoidance of doubt, VIL, each of whom shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.  The transactions contemplated by the Plan are proposed in good faith, are in the best interests of the Debtors' Estates, and will serve to maximize value for all stakeholders.

**F.      Solicitation**

11.     The transmittal and service of the solicitation materials required by the Disclosure Statement Order were timely, adequate, appropriate, and sufficient under the circumstances.  The Solicitation Procedures complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable non-bankruptcy rules, laws, and regulations.  The modifications to the Plan as of the date of this Confirmation Order are not of the type to require additional disclosure or solicitation of the Plan under Bankruptcy Rule 3019 and comply in all respects with section 1127 of the Bankruptcy Code.

12.     Based on the record before the Bankruptcy Court, including the Voting Report and Certificates, the Debtors have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and not by any means forbidden by law.

**G.      Voting**

13.     As described in the Voting Report, Holders of Claims in Classes 3, 4, and 5 were entitled to vote to accept or reject the Plan.  Holders of Claims in Class 3 did not vote on the Plan.

30610883.1

7

Pursuant to Article III.F of the Plan, Class 3 is deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  Holders of Claims in Classes 4 and 5 voted to accept the Plan.  All other Classes of Claims and Interests were not entitled to vote on the Plan pursuant to sections 1126 of the Bankruptcy Code.  All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all other applicable non-bankruptcy rules, laws, and regulations.

**H.      Immediate Binding Effect**

14.     Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, from and after the entry of this Confirmation Order and upon the occurrence of the Effective Date, the terms of the Plan, and the documents and instruments contained in the Plan Supplement and this Confirmation Order shall be deemed immediately effective and enforceable binding upon: (a) the Debtors; (b) any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan); (c) any and all non-debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors; (d) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan; and (e) the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

**I.      Treatment of Executory Contracts and Unexpired Leases**

15.     The rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases as set forth in Article V of the Plan is hereby authorized.  Except as otherwise set forth in

the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date without the need for any further action or consents that may otherwise be required under applicable non-bankruptcy law.

**J.    Administrative Claims Bar Date**

16.    As provided in Article II.A.3 of the Plan, all requests for payment of Administrative Claims (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, postpetition tax claims arising under section 503(b)(1)(D) of the Bankruptcy Code, claims arising under section 503(b)(9) of the Bankruptcy Code, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that accrued on or before the Effective Date must be filed with the Bankruptcy Court and served on the Plan Administrator no later than the 30th day after service of the Confirmation Notice.  If a Holder of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, postpetition tax claims arising under section 503(b)(1)(D) of the Bankruptcy Code, claims arising under section 503(b)(9) of the Bankruptcy Code, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Administrative Claim shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Litigation Trustee, or the Plan Administrator.  For the avoidance of doubt, nothing in this Order or the Plan extends any deadline for the filing of any claims established in any previously entered order of the Court, including the *Order (I) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Claims Arising Under Section 503(b)(9) of the Bankruptcy Code), (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. 153].

**K.**      **Deadline to File Professional Fee Claims**

17.      As provided in Article II.A.2 of the Plan, all final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred on and after the Petition Date and prior to and on the Effective Date must be Filed no later than forty-five (45) days after the Effective Date.  Any party seeking payment of a Professional Fee Claim that arises under sections 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code must File a motion for approval of the same.  Motions for approval of all final requests for payment of Professional Fee Claims shall include a 21-day objection period after such motions are filed.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

**L.**      **Deadline to File Rejection Claims**

18.      As provided in Article V.C of the Plan, unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases by virtue of the Plan must be Filed with the Notice and Claims Agent within thirty (30) days after service of the Confirmation Notice substantially in the form annexed to this Order as **<u>Exhibit B</u>**.  The deadline for Governmental Units to File any such Proofs of Claim shall be the later of thirty (30) days after service of the Confirmation Notice or the Governmental Bar Date as set forth in the Bar Date Order.  Any Proofs of Claim arising from the rejection of the Executory Contracts and Unexpired Leases that are not timely filed shall be forever disallowed and barred, absent order of the Bankruptcy Court to the contrary.  All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

**M.      Releases and Exculpation**

19.      All release and exculpation provisions contained in the Plan, including, without limitation, those contained in Article IX of the Plan, are hereby authorized, approved, and shall be effective and binding on all persons and entities, to the extent expressly described in the Plan.  The releases given by the Debtors contained in Article IX.B of the Plan are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by Article IX.B of the Plan; (c) in the best interests of the Debtors and the Estates; (d) fair, equitable, and reasonable; and (e) given and made after due notice and opportunity for hearing.  The releases given by the Releasing Parties contained in Article IX.C of the Plan are (a) consensual; and (b) given and made after due notice and opportunity for hearing. The exculpation provided by Article IX.D of the Plan for the benefit of the Exculpated Parties is consistent with applicable law.

**N.      The UCC Settlement**

20.      Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates and implements the UCC Settlement, a compromise and settlement of numerous issues and disputes between and among the Debtors, the Committee, the Prepetition Secured Noteholder, and the DIP Lenders designed to achieve a reasonable and effective resolution of these Chapter 11 Cases. Except as otherwise expressly set forth in the Plan, the UCC Settlement constitutes a settlement of all potential issues and Claims between and among the Debtors, the Committee, the Prepetition Secured Noteholder, and the DIP Lenders.  The UCC Settlement is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates, and the UCC Settlement is approved.

O.      **The WARN Settlement**

21.     The WARN Settlement constitutes acceptance by all Class Members of treatment of any alleged claims in the Chapter 11 Cases arising out of or relating to the WARN Act and/or the CAL-WARN Act and that such treatment with respect to the Class Representative and Class Members complies with section 1129, including section 1129(a)(9), of the Bankruptcy Code.  To the extent any holders of alleged claims in the Chapter 11 Cases arising out of or relating to the WARN Act and/or the CAL-WARN Act have opted-out of the Settlement and have not filed a Proof of Claim prior to the applicable Bar Date, such alleged claims shall not be Allowed for distribution purposes absent entry of a Final Order allowing such late-Filed Claim.

P.      **Provision Regarding the United States**

22.     As to the United States, nothing in the Plan, this Confirmation Order, any Plan Supplement, or any implementing Plan documents, notwithstanding any provision to the contrary contained therein, shall: (a) enjoin or affect any Governmental Unit's setoff rights under federal law, as recognized in section 553 of the Bankruptcy Code, and/or recoupment rights, and such rights shall be preserved and are unaffected; or (b) be construed as a compromise or settlement of any liability, claim, Cause of Action or interest of the United States.

Q.      **Provision Regarding ACA International LLC**

23.     In full and final satisfaction of Claim Number 381 filed by ACA International LLC ("**ACA**") against Debtor Virgin Orbit, LLC (the "**ACA Claim**"), including its asserted liens, its limited sale objection [Docket No. 265], and the ACA Lien Payment Escrow (as defined in Docket No. 364), (a) the automatic stay is lifted to allow ACA to foreclose its possessory lien on the Debtors' telemetry rack currently in ACA's possession (and as identified in the ACA Claim), as to which the Debtors shall have no further right, title or interest and the proceeds of which shall

belong solely to ACA; (b) the Debtors shall, as soon as practicable, following entry of this Order, pay $35,000 to ACA from the ACA Lien Payment Escrow; and (c) the balance of the ACA Claim shall be reduced and allowed as a General Unsecured Claim in Class 4 in the amount of $183,805. Upon entry of this Order and payment to ACA as set forth in (b) above, ACA's asserted liens against the Debtors' property other than the telemety rack shall be deemed terminated and the balance of the ACA Lien Payment Escrow shall be released to the Debtors.

**R.     Provision Regarding Texas Comptroller**

24.     Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any Entity, other than the Debtors, from any liability owed to the Texas Comptroller of Public Accounts (the "**Texas Comptroller**") for a tax debt, including interest and penalties on such tax.  This provision is not an admission by any party that any such liability exists.

25.     Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Texas Comptroller's setoff rights under 11 U.S.C. § 553.  This provision is not admission by any party that any such setoff rights exist.

26.     Allowed Priority Tax Claims owed to the Texas Comptroller shall be paid in full: (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Petition Date; or (3) as otherwise agreed to by the Texas Comptroller.  The Texas Comptroller's Allowed Priority Tax Claims shall accrue interest at the statutory rate of interest from the Effective Date until paid in full.

27.     If the Debtors fail to cure a failure to make a payment to the Texas Comptroller pursuant to the terms of the Plan, then within ten (10) calendar days after service of written notice of default from the Texas Comptroller, the Texas Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek

30610883.1

such relief as may be appropriate in the Bankruptcy Court. Notice of a default shall be served by first class mail and email as follows and upon: (a) the Debtors: Virgin Orbit Holdings, Inc., Attn: Brian Whittman (email: bwhittman@alvarezandmarsal.com), and (b) counsel to the Debtors: (i) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 11101, Attn: George Klidonas and Anupama Yerramalli (email: george.klidonas@lw.com and anu.yerramalli@lw.com), and (ii) Young, Conaway, Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Kara Hammond Coyle and Allison Mielke (email: kcoyle@ycst.com and amielke@ycst.com). The Debtors may cure up to two (2) defaults. Upon a third default, the Texas Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt in accordance with this Confirmation Order.

## S.    Nonseverability of Plan Provisions Upon Confirmation

28.    This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) non-severable and mutually dependent.

## T.    Post-Confirmation Modifications

29.    Without need for further order or authorization of the Bankruptcy Court, the Debtors are authorized to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein). Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their respective rights to materially alter, amend, or modify the Plan with respect

to such Debtors, one or more times, after Confirmation, and, to the extent necessary or required under section 1127 of the Bankruptcy Code and/or Bankruptcy Rule 3019, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X of the Plan.

## U.    Conflicts

30.    To the extent that any provision of the Disclosure Statement or the Plan Supplement (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. To the extent that any provision of the Plan, the Plan Supplement, or the Disclosure Statement conflicts with or is in any way inconsistent with any provision of this Confirmation Order, this Confirmation Order shall govern and control.

## V.    Dissolution of the Committee

31.    The Committee shall dissolve, and the current and former members of the Committee shall be released and discharged from all rights and duties arising from, or related to, these Chapter 11 Cases on the Effective Date; *provided that*, the Committee and its professionals shall have the right to file, prosecute, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Article II.A.2 of the Plan.

## W.    Stay of Confirmation

32.    Any applicable stay of effectiveness provided in Bankruptcy Rules 3020(e), 6004(g), 6004(h), 6006(d), and 7062, or otherwise shall not apply to this Confirmation Order. This

Confirmation Order shall be effective and enforceable immediately upon its entry.  Subject to the

occurrence of the Effective Date, the provisions of the Plan shall be immediately effective and

enforceable and deemed binding upon any Holder of a Claim against or Interest in the Debtors,

such Holder's respective successors and assigns (whether or not the Claim or Interest of such

Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether

or not such Holder is entitled to a Distribution under the Plan), all Entities that are party or subject

to the settlements, compromises, releases, and injunctions described in the Plan, and any and all

non-Debtor counterparties to Executory Contracts, Unexpired Leases, and any other prepetition

agreements. The Debtors are authorized to consummate the Plan at any time after the entry of this

Confirmation Order, subject to satisfaction or waiver of the conditions precedent to the Effective

Date set forth in Article VIII of the Plan.  Pursuant to section 1142(a) of the Bankruptcy Code, the

Plan, the Plan Supplement, and this Confirmation Order shall apply and be enforceable

notwithstanding any otherwise applicable nonbankruptcy law.

**X.      Final Order**

33.      This Confirmation Order is a final order and the period within which an appeal

must be filed commences upon the entry hereof.

## Exhibit A

**Plan**

THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

THIS PLAN REMAINS SUBJECT TO CONTINUING REVISIONS AS THE DEBTORS CONDUCT THEIR INTERNAL INVESTIGATION AND CONTINUE THE MARKETING PROCESS FOR A SALE OF THEIR ASSETS. IN THE EVENT THE DEBTORS ARE UNABLE TO CONFIRM THE PLAN, THEY MAY SEEK APPROVAL OF THE DISMISSAL MOTION OR CONVERSION OF THESE CASES TO CHAPTER 7 OF THE BANKRUPTCY CODE. ALL RIGHTS OF THE DEBTORS ARE RESERVED.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x
                       :

| | |
|---|---|
| In re: | Chapter 11 |
| VIRGIN ORBIT HOLDINGS, INC., *et al.*,[1] | Case No. 23-10405 (KBO) |
| Debtors. | (Jointly Administered) |

------------------------------------------------------- x

## FOURTH AMENDED JOINT CHAPTER 11 PLAN OF VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

[1] The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445). The Debtors' mailing address for purposes of these cases is 3880 McGowen Street, Long Beach, CA 90808.

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:     jeff.bjork@lw.com

- and -

George Klidonas (admitted *pro hac vice*)
Anupama Yerramalli (admitted *pro hac vice*)
Liza L. Burton (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Emails: george.klidonas@lw.com
          anu.yerramalli@lw.com
          liza.burton@lw.com

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Allison S. Mielke (No. 5934)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  rbrady@ycst.com
          mnestor@ycst.com
          kcoyle@ycst.com
          amielke@ycst.com

*Counsel for Debtors and Debtors in Possession*

# TABLE OF CONTENTS

**Page**

Article I. DEFINED TERMS AND RULES OF INTERPRETATION ........................................................2
    A.    Defined Terms ....................................................................................................................2
    B.    Rules of Interpretation ......................................................................................................18

Article II. ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, PRIORITY TAX CLAIMS,
    OTHER PRIORITY CLAIMS AND UNITED STATES TRUSTEE STATUTORY FEES ...................19
    A.    Administrative Claims ......................................................................................................19
    B.    DIP Facility Claims...........................................................................................................21
    C.    Priority Tax Claims ...........................................................................................................22
    D.    United States Trustee Statutory Fees and Related Reporting Obligations .........................22

Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS...........................23
    A.    Classification of Claims ....................................................................................................23
    B.    Treatment of Claims and Interests ....................................................................................24
    C.    Special Provision Governing Unimpaired Claims ............................................................27
    D.    Nonconsensual Confirmation ............................................................................................27
    E.    Subordination ....................................................................................................................28
    F.    Elimination of Vacant Classes ..........................................................................................28
    G.    Intercompany Claims .........................................................................................................28

Article IV. MEANS FOR IMPLEMENTATION OF THE PLAN............................................................28
    A.    Corporate Existence ..........................................................................................................28
    B.    Indemnification Obligations..............................................................................................29
    C.    Cancellation of Agreements and Equity Interests .............................................................29
    D.    The UCC Settlement .........................................................................................................30
    E.    Sources for Plan Distributions ..........................................................................................30
    F.    Exemption from Certain Transfer Taxes and Recording Fees ..........................................30
    G.    Plan Administrator ............................................................................................................31
    H.    Litigation Trust ................................................................................................................33
    I.    Directors and Officers Insurance Policies ........................................................................37
    J.    Preservation of Rights of Action.......................................................................................38
    K.    Corporate Action ..............................................................................................................38
    L.    Effectuating Documents; Further Transactions.................................................................38
    M.    Wind-Down.......................................................................................................................39
    N.    Wind-Down Amount.........................................................................................................39
    O.    Dissolution of the Boards of the Debtors. .........................................................................39
    P.    Closing the Chapter 11 Cases ...........................................................................................40
    Q.    Preservation of Certain Assets ..........................................................................................40

Article V. TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED LEASES; EMPLOYEE
    BENEFITS; AND INSURANCE POLICIES ....................................................................................40
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ......................40
    B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases......................41
    C.    Claims Based on Rejection of Executory Contracts and Unexpired Leases ......................41
    D.    Contracts and Leases Entered into After the Petition Date ...............................................41
    E.    Reservation of Rights .......................................................................................................42

Article VI. PROVISIONS GOVERNING DISTRIBUTIONS.................................................................42
    A.    Distribution on Account of Claims Allowed as of the Effective Date ...............................42
    B.    Distributions on Account of Claims Allowed After the Effective Date.............................42
    C.    Timing and Calculation of Amounts to Be Distributed.....................................................43

| | | |
|---|---|---|
| D. | Delivery of Distributions ................................................................................ | 43 |
| E. | Compliance with Tax Requirements/Allocations............................................. | 45 |
| F. | Surrender of Canceled Instruments or Securities ............................................ | 45 |
| G. | Applicability of Insurance Policies. ............................................................... | 46 |

**Article VII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS** ................................................................................ 46

| | | |
|---|---|---|
| A. | Allowance of Claims ....................................................................................... | 46 |
| B. | Prosecution of Objections to Claims ............................................................... | 46 |
| C. | Estimation of Claims ....................................................................................... | 46 |
| D. | No Distributions Pending Allowance .............................................................. | 47 |
| E. | Time to File Objections to Claims ................................................................... | 47 |

**Article VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** .................... 47

| | | |
|---|---|---|
| A. | Conditions Precedent to Confirmation ............................................................ | 47 |
| B. | Effect of Non-Occurrence of Conditions to Confirmation .............................. | 48 |
| C. | Conditions Precedent to the Effective Date .................................................... | 48 |
| D. | Waiver of Conditions ...................................................................................... | 49 |
| E. | Effect of Non-Occurrence of Conditions to the Effective Date ...................... | 49 |

**Article IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ................................. 50

| | | |
|---|---|---|
| A. | **Satisfaction of Claims and Termination of Interests.**................................... | 50 |
| **B.** | **Releases by the Debtors** ................................................................................. | 50 |
| **C.** | **Releases by Holders of Claims and Interests** ............................................... | 51 |
| **D.** | **Exculpation** .................................................................................................... | 52 |
| **E.** | **Injunction**...................................................................................................... | 52 |
| F. | Setoffs and Recoupment .................................................................................. | 53 |
| G. | Release of Liens .............................................................................................. | 53 |

**Article X. RETENTION OF JURISDICTION** ..................................................................................... 53

**Article XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN** ....................................... 56

| | | |
|---|---|---|
| A. | Modification of Plan ........................................................................................ | 56 |
| B. | Effect of Confirmation on Modifications ........................................................ | 56 |
| C. | Revocation of Plan; Reservation of Rights if Effective Date Does Not Occur .............................. | 56 |

**Article XII. MISCELLANEOUS PROVISIONS** ................................................................................... 57

| | | |
|---|---|---|
| A. | Additional Documents ..................................................................................... | 57 |
| B. | Reservation of Rights ...................................................................................... | 57 |
| C. | Successors and Assigns ................................................................................... | 57 |
| D. | Service of Documents ...................................................................................... | 57 |
| E. | Term of Injunctions or Stays ........................................................................... | 60 |
| F. | Entire Agreement ............................................................................................. | 60 |
| G. | Governing Law ................................................................................................ | 60 |
| H. | Exhibits ............................................................................................................ | 60 |
| I. | Nonseverability of Plan Provisions upon Confirmation .................................. | 61 |
| J. | Conflicts .......................................................................................................... | 61 |
| K. | Dissolution of the Committee .......................................................................... | 61 |

## JOINT CHAPTER 11 PLAN OF VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Virgin Orbit Holdings, Inc. and each of the debtors and debtors-in-possession in the above captioned cases (each a "**Debtor**" and, collectively, the "**Debtors**"), propose this joint plan (together with any documents comprising the Plan Supplement, and as may be modified, amended, or supplemented from time to time in accordance with the terms hereof, "**Plan**") for the resolution of the outstanding Claims against, and Interests in, the Debtors. Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan provides for consolidation of the Debtors solely for purposes of voting, Confirmation, and distribution, but not for any other purpose.

**The Debtors are currently pursuing 363 Sale Transactions of their remaining assets that have not been sold pursuant to the Existing 363 Sale Orders, as described in further detail in the Disclosure Statement. Any additional 363 Sale Transaction may be implemented pursuant to a Future 363 Sale Order. The proceeds thereof shall be distributed in accordance with the applicable provisions of this Plan or the applicable Sale Order, and the Debtors will be wound down.**

**In the event the Debtors are unable to confirm the Plan, they may seek approval of the Dismissal Motion or conversion of these Chapter 11 Cases to Chapter 7 of the Bankruptcy Code. If that occurs, nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.**

Reference is made to the Disclosure Statement, filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections, and future operations, as well as a summary and analysis of the Plan and certain related matters, including distributions to be made under the Plan.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

Article I.

## DEFINED TERMS AND RULES OF INTERPRETATION

*A. Defined Terms*

The following terms shall have the following meanings when used in capitalized form herein:

1.      "**363 Sale Orders**" means, collectively, the Existing 363 Sale Orders and the Future 363 Sale Orders.

2.      "**363 Sale Transaction**" means any sale of assets of the Debtors' Estates pursuant to any of the 363 Sale Orders.

3.      "**363 Sale Transaction Documentation**" means one or more asset purchase agreements or purchase and sale agreements and related documents, including the applicable Assumed Contracts List, in each case, in form and substance reasonably acceptable to the Debtors and the Required Consenting Creditors, pursuant to which the Debtors effectuate any 363 Sale Transaction.

4.      "**Acquired Assets**" means all assets contained in the definition or definitions of "acquired assets" set forth in any 363 Sale Transaction Documentation (or such other similar term as may be used in such 363 Sale Transaction Documentation).

5.      "**Administrative Claim**" means a Claim (other than an Intercompany Claim) for costs and expenses of administration under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims (to the extent Allowed by the Bankruptcy Court); and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

6.      "**Administrative Claims Bar Date**" means the date that is the 30th day after service of notice of the Effective Date, which notice shall set forth the Administrative Claims Bar Date, or such other date as is ordered by the Court.

7.      "**Affiliate**" means an affiliate as defined in section 101(2) of the Bankruptcy Code.

8.      "**Allowed**" means: (a) any Claim or Interest (i) as to which no objection has been Filed prior to the Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, that is Filed or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, the DIP Orders or a Final Order, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder; (b) any Claim or Interest that is scheduled by the Debtors as neither disputed, contingent, nor unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been Filed in an unliquidated or a different amount; (c) any Claim or Interest that is compromised, settled, or

otherwise resolved pursuant to the authority of the Debtors; (d) any Claim or Interest as to which the liability of the Debtors, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (e) any Claim or Interest expressly allowed under this Plan. "Allow," "Allows," and "Allowing" shall have correlative meanings. For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date shall not be Allowed until (i) the Claims Objection Deadline has passed and no Claim objection has been filed or (ii) if a claim objection is filed, such Claim objection is overruled by a Final Order.

9.      "**Assumed Contracts**" means those Executory Contracts and Unexpired Leases that are to be assumed and assigned by the Debtors to the applicable Successful Bidder or its designee pursuant to and as set forth in the Confirmation Order and any applicable 363 Sale Transaction Documentation.

10.      "**Assumed Contracts List**" means the list or lists of Assumed Contracts, which will be included in preliminary form in the Plan Supplement.

11.      "**Assumed Liabilities**" has the meaning set forth in any 363 Sale Transaction Documentation (or such other similar term as may be used in such 363 Sale Transaction Documentation).

12.      "**Avoidance Actions**" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

13.      "**Ballot**" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

14.      "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

15.      "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

16.      "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court.

17.      "**Bar Date**" means the applicable bar date by which Proofs of Claim must be Filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the

Plan; *provided that* if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

18. "**Bar Date Order**" means the *Order (I) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Claims Arising Under Section 503(b)(9) of the Bankruptcy Code), (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. 147].

19. "**Bidding Procedures**" means the bidding procedures attached as Exhibit 1 to the Bidding Procedures Order, as such bidding procedures may be amended from time to time in accordance with its terms.

20. "**Bidding Procedures Order**" means the *Order (A) Establishing Bidding Procedures for Sale of Substantially all Assets, (B) Scheduling Auction and Sale Hearing, and (C) Approving Form and Manner of Notice Thereof, (II) Approving Sale of Substantially all Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (III) Granting Related Relief* [Docket No. 201], as such order may be amended, supplemented, or modified from time to time, in form and substance acceptable to the Required Consenting Creditors.

21. "**Business Day**" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

22. "**Cash**" means the legal tender of the United States of America or the equivalent thereof.

23. "**Causes of Action**" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any Avoidance Action or state law fraudulent transfer claim.

24. "**Chapter 11 Case(s)**" means (a) when used with reference to a particular Debtor, the chapter 11 case filed for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

25. "**Claim**" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

26.     "**Claims Objection Deadline**" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) (i) with respect to Administrative Claims, 150 days after the Administrative Claims Bar Date or (ii) with respect to all other Claims, 180 days after the Effective Date and (b) such other deadline as may be specifically fixed by the Debtors upon a motion that is served on all affected claimants and approved by an order of the Bankruptcy Court.

27.     "**Claims Register**" means the official register of Claims maintained by the Notice and Claims Agent.

28.     "**Class**" means a category of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

29.     "**Committee**" means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the United States Trustee.

30.     "**Committee Professionals**" means Persons or firms retained by the statutory committee appointed in the Chapter 11 Cases pursuant to section 328 or 1103 of the Bankruptcy Code.

31.     "**Conant Facility**" means the facility located at 4022 E. Conant Street, Long Beach, CA 90808.

32.     "**Confirmation**" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

33.     "**Confirmation Date**" means the date upon which Confirmation occurs.

34.     "**Confirmation Hearing**" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

35.     "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance acceptable to the Required Consenting Creditors.

36.     "**Convenience Claim**" means any Claim that would otherwise be a General Unsecured Claim that is in an amount of $5,000 or less; *provided* that a holder of a General Unsecured Claim that is in an amount greater than $5,000 may irrevocably elect, as evidenced on the Class 4 Ballot (as defined in the *Order (A) Approving the Disclosure Statement; (B) Establishing the Voting Record Date, Voting Deadline, and Other Deadlines; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan; (D) Approving the Manner and Forms of Notice and Other Related Documents; and (E) Granting Related Relief* [Docket No. 438] timely and validly submitted by such holder (or other writing acceptable to the Debtors), to have such Claim irrevocably reduced to $5,000 and treated as a Convenience Claim (upon Allowance) for purposes of the Plan; *provided* further that a General Unsecured Claim may not be subdivided into multiple Convenience Claims.

37.     "**Cure Cost**" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties to an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

38.     "**D&O Liability Insurance Policies**" means, collectively, all insurance policies (including any "tail policies" and all agreements, documents, or instruments related thereto) issued at any time to or providing coverage to of any of the Debtors for current or former directors', managers', and officers' liability.

39.     "**Debtor Professionals**" means Persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code, including Latham & Watkins LLP, Young Conaway Stargatt & Taylor, LLP, Alvarez & Marsal North America, LLC, Ducera Partners LLC, Kroll Restructuring Administration LLC, KPMG LLP, and Vinson and Elkins LLP.

40.     "**Debtor Release**" means the releases set forth in <u>Article IX.B</u> of the Plan.

41.     "**DIP Agent**" means VIL or any successor thereto, in its capacities as administrative and collateral agent under the DIP Facility.

42.     "**DIP Credit Agreement**" means that certain *Senior Secured Superpriority Debtor-in-Possession Term Loan Credit Agreement*, dated as of April 6, 2023, as amended by that first amendment, dated as of May 1, 2023, as further amended by that second amendment, dated as of May 15, 2023, as further amended by that third amendment, dated as of June 1, 2023, and as may be amended, supplemented, or modified from time to time, among the Debtors and the DIP Secured Parties.

43.     "**DIP Facility**" means certain credit facilities the terms of which are governed by the DIP Credit Agreement and agreements entered into in connection therewith, all as approved by the DIP Orders (as may be amended, modified, ratified, extended, renewed, restated or replaced from time to time in accordance with the DIP Credit Agreement and the DIP Orders).

44.     "**DIP Facility Claim**" means any Claim held by the DIP Secured Parties derived from or based upon the DIP Facility or the DIP Orders, including claims for all principal amounts outstanding, interest, fees, and expenses under the DIP Facility.  For the avoidance of doubt, the "DIP Facility Claims" shall include all Obligations (as defined in the DIP Credit Agreement).

45.     "**DIP Lenders**" means the lenders party to the DIP Credit Agreement from time to time.

46.     "**DIP Loans**" means the New Money DIP Loans and the DIP Roll-Up Loans.

47.     "**DIP Orders**" means, collectively, the Interim DIP Order and the Final DIP Order, as such orders may be modified from time to time in accordance with the terms thereof.

48.     "**DIP Roll-Up Loans**" means the "Roll-Up Loans" as defined in the DIP Credit Agreement.

49.     "**DIP Secured Parties**" means the "Secured Parties" as defined in the DIP Credit Agreement.

50.     "**Disclosure Statement**" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

51.     "**Disclosure Statement Order**" means the order of the Bankruptcy Court approving the Disclosure Statement in form and substance acceptable to the Required Consenting Creditors.

52.     "**Dismissal Motion**" means a motion filed by the Debtors to seek entry of order(s) by the Bankruptcy Court that, among other things, (i) approves procedures for (a) the dismissal of these Chapter 11 Cases; (b) the reconciliation, resolution, and allowance or disallowance of certain claims against the Debtors; and (c) the abandonment of certain property; (ii) approves distributions on account of allowed administrative claims and secured claims; (iii) dismisses the Chapter 11 Cases and authorizes the dissolution of the Debtors in accordance with applicable state law; and (iv) grants related relief.

53.     "**Dismissal Order**" means the order(s) entered by the Bankruptcy Court granting the relief sought in the Dismissal Motion.

54.     "**Disputed**" means, with respect to any Claim or Equity Interest, except as otherwise provided herein, a Claim or Equity Interest that is (i) listed on the Schedules as unliquidated, disputed, and/or contingent for which no proof of claim in a liquidated and non-contingent  amount has been filed; or (ii) that is the subject of an objection or request for estimation Filed by any of the Debtors, the Plan Administrator or the Litigation Trustee or any other party-in-interest in accordance with applicable law and which objection or request has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court.

55.     "**Distributable Proceeds**" means all Cash of the Debtors on or after the Effective Date, other than GUC Distributable Proceeds (if Class 4 votes to accept the Plan), including the proceeds of any retained Causes of Action of the Estates, any Sale Transaction Proceeds not previously distributed under a 363 Sale Order and the proceeds of all non-Cash assets of the Debtors' Estates, after giving effect to: (i) the satisfaction of all Administrative Claims (other than DIP Facility Claims), Priority Tax Claims, Other Priority Claims, and Other Secured Claims in accordance with the Plan, in each case to the extent Allowed against the Debtors; (ii) the funding of the Professional Fee Escrow Account; (iii) the funding of the Wind-Down Amount; and (iv) the funding of the GUC Cash-Out Pool (if Class 4 votes to accept the Plan).  For the avoidance of doubt, any proceeds of a 363 Sale Transaction distributed prior to the Effective Date shall not be considered Distributable Proceeds.

56.     "**Distribution Agent**" means the Debtors or any Entity or Entities chosen by the Debtors, with the consent of the Required Consenting Creditors, which Entities may include one or more of the Notice and Claims Agent, the Plan Administrator, and the Litigation Trustee, to make or to facilitate distributions required by the Plan.

57.     "**Distribution Record Date**" means, except with respect to Holders of the Debtors publicly traded securities, the date for determining which Holders of Claims are eligible to receive initial distributions under the Plan, which date shall be the Effective Date or such other date as is

agreed to by the Debtors and the Required Consenting Creditors or designated in a Final Order. The Distribution Record Date shall not apply to any Holders of the Debtors publicly traded securities.

58. "**DTC**" means The Depository Trust Company.

59. "**Effective Date**" means the date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.A and C of the Plan have been (i) satisfied or (ii) waived pursuant to Article VIII.D of the Plan.

60. "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

61. "**Equity Interest**" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards, or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto that existed immediately before the Effective Date; *provided* that Equity Interest does not include any Intercompany Interest.

62. "**Estate**" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code.

63. "**Estate Tax Refunds**" means any tax refunds due to the Estates (excluding any refunds on account of the taxes paid during the Chapter 11 Cases).

64. "**Estimated Allowed Administrative Claims**" means the Debtors' reasonable estimate, acceptable to the Required Consenting Creditors, of the aggregate amount of Allowed Administrative Claims, including those Administrative Claims that may be Allowed following the Administrative Claims Bar Date.

65. "**Exculpated Party**" means (a) the Debtors; (b) the Committee and each of its current and former members; and (c) with respect to each of the foregoing in clauses (a) and (b), solely to the extent they are estate fiduciaries, each such Entity's current and former affiliates, subsidiaries, officers, directors (including any sub-committee of directors), managers, principals, members (including ex officio members and managing members), employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such on or after the Petition Date and prior to or on the Effective Date.

66. "**Exculpation**" means the exculpation provision set forth in Article IX.D of this Plan.

67. "**Executory Contract**" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

68. "**Existing 363 Sale Orders**" means, collectively, (a) the *Order (I) Authorizing and Approving the Debtors' Entry into an Asset Purchase Agreement with Rocket Lab USA, Inc., (II) Authorizing the Sale of the Purchased Assets Free and Clear of All Encumbrances, (III) Approving the Assumption and Assignment of the Assumed Real Property Lease, and (IV) Granting Related*

*Relief* [Docket No. 364]; (b) the *Order (I) Authorizing and Approving the Debtors' Entry into the Purchase Agreement with Stratolaunch, LLC and (II) Authorizing the Sale of Certain Purchased Assets Free and Clear of All Encumbrances, and (III) Granting Related Relief* [Docket No. 365]; (c) the *Order (I) Authorizing and Approving the Debtors' Entry into the McGowen Asset Purchase Agreement with Inliper Acquisition, LLC and Liquidity Services Operations, LLC (II) Authorizing the Sale of the Purchased Assets to Inliper Acquisition, LLC and Liquidity Services Operations, LLC Free and Clear of All Liens, Claims and Encumbrances (Other Than Certain Assumed Liabilities), and (III) Granting Related Relief* [Docket No. 378]; (d) the *Order (I) Authorizing and Approving the Debtors' Entry into the Mojave Asset Purchase Agreement with Launcher Inc. (II) Authorizing the Sale of the Purchased Assets to Launcher Inc. Free and Clear of All Liens, Claims and Encumbrances (Other Than Certain Assumed Liabilities), (III) Authorizing and Approving the Assumption and Assignment of Mojave Air & Space Port Real Property Lease (and Such Other Executory Contracts and Unexpired Leases as May Be Identified in Accordance with the Mojave Asset Purchase Agreement) Including the Proposed Cure Amounts, if Any, Associated Therewith, and (IV) Granting Related Relief* [Docket No. 379]; and (e) if entered prior to the Confirmation Date, *Order (I) Authorizing and Approving the Debtors' Entry into the Firefly Asset Purchase Agreement with Firefly Aerospace, Inc., (II) Authorizing the Sale of Certain Purchased Assets Free and Clear of All Claims, (III) Granting Related Relief*.

69.     "**FAA**" means the Federal Aviation Administration of the Department of Transportation of the United States of America and any successor that under the laws of the United States of America shall from time to time have control or supervision of civil aviation in the United States of America or have jurisdiction over the registration, airworthiness or operation of, or other matters relating to, any aircraft or engine.

70.     "**File**," "**Filed**," or "**Filing**" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice and Claims Agent or the Bankruptcy Court.

71.     "**Final DIP Order**" means the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Party, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Docket No. 202].

72.     "**Final Order**" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, seek a new trial, reargument, or rehearing and, where applicable, petition for certiorari has expired and no appeal, motion for reconsideration under Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure, motion for a new trial, reargument or rehearing or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or as to which any motion for reconsideration that has been filed pursuant to Rule 59(b) or 59(e) of the Federal Rules of Civil Procedure or any motion for a new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been

dismissed with prejudice; *provided* that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024, or any analogous rule, may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

73.     "**Future 363 Sale Orders**" means one or more orders of the Bankruptcy Court approving the sale of any assets of the Debtors' Estates pursuant to section 363(b) of the Bankruptcy Code in form and substance acceptable to the Required Consenting Creditors.

74.     "**General Administrative Claim**" means any Administrative Claim, other than (a) a Professional Fee Claim, (b) a DIP Facility Claim, or (c) a Claim for fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

75.     "**General Unsecured Claim**" means any unsecured Claim (other than an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, a Convenience Claim, an Intercompany Claim, or a Subordinated Claim), including, (a) Claims arising from the rejection of Unexpired Leases or Executory Contracts, (b) Claims arising from any litigation or other court, administrative or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by, a Debtor in connection therewith, (c) Claims on account of the outstanding balance under the Yorkville Unsecured Notes, (d) Claims or any portion of such Claims that seek damages under the WARN Act and that do not meet the requirements of section 507(a)(4) of the Bankruptcy Code, and (e) deficiency Claims arising from the DIP Facility or the Prepetition Secured Notes to the extent the DIP Facility Claims or the Prepetition Secured Notes Claims are not paid in full with the Distributable Proceeds or VIL Litigation Trust Interests.

76.     "**Governmental Unit**" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

77.     "**GUC Cash-Out Pool**" means Cash equal to $1,100,000, which amount shall be increased dollar for dollar by any positive difference between (a) $2,250,000 *minus* (b) the amount of the Allowed Professional Fee Claims of the Committee Professionals.

78.     "**GUC Causes of Action**" means (x) the Causes of Action of the Estates against (i) Persons or Entities that provided audit services to the Debtors or (ii) Persons or Entities, based on Chapter 5 of the Bankruptcy Code, who received transfers from the Debtors in an amount greater than $100,000 during the 90-day period prior to the Petition Date and (y) shall exclude the Causes of Action of the Estates against the Prepetition Secured Noteholder, the DIP Lenders, the DIP Secured Parties and any of the current and former Affiliates, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such (unless any such Entity or related party does not constitute a Releasing Party). For the avoidance of doubt, the Non-GUC Causes of Action are released pursuant to Article IX.B hereof and do not constitute GUC Causes of Action.

79.     "**GUC Distributable Proceeds**" means (a) 100% of the aggregate Remaining Asset Net Proceeds from and including $0 to and including $825,000, (b) 50% of the aggregate Remaining Asset Net Proceeds greater than $825,000 to and including $5,000,000, (c) 25% of the aggregate Remaining Asset Net Proceeds greater than $5,000,000 to and including $7,500,000 and (d) 0% of the aggregate Remaining Asset Net Proceeds greater than $7,500,000 plus (i) 50% of

the Remaining Net Estate Tax Refunds from and including $0 to and including $2,500,000, (ii) 75% of the Remaining Net Estate Tax Refunds greater than $2,500,000 to and including $5,000,000, and (iii) 80% of the Remaining Net Estate Tax Refunds greater than $5,000,000.

80.     "**GUC Litigation Trust Interests**" means the uncertificated beneficial interests in the Litigation Trust representing the right of Holders of Allowed General Unsecured Claims to receive distributions from the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement.

81.     "**GUC Recovery**" means, collectively, the GUC Cash-Out Pool, the GUC Distributable Proceeds and the GUC Litigation Trust Interests.

82.     "**Holder**" means an Entity holding a Claim or Interest.

83.     "**Impaired**" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

84.     "**Indemnification Provisions**" means each of the Debtors' indemnification provisions in effect as of the Petition Date, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, management or indemnification agreements, employment contracts, or otherwise providing a basis for any obligation of a Debtor to indemnify, defend, reimburse, or limit the liability of, or to advances fees and expenses to, any of the Debtors' current and former directors, officers, equity holders, managers, members, employees, accountants, investment bankers, attorneys, other professionals, and professionals of the Debtors, and such current and former directors', officers', and managers' respective affiliates, each of the foregoing solely in their capacity as such.

85.     "**Initial DIP Budget**" has the meaning set forth in the DIP Credit Agreement.

86.     "**Initial Distribution Date**" means the date that is on or as soon as practicable after the Effective Date when distributions under the Plan shall commence for each Class entitled to receive distributions.

87.     "**Insurance Contract**" means all insurance policies that have been issued at any time to or provide coverage to any of the Debtors and all agreements, documents or instruments relating thereto, including D&O Liability Insurance Policies.

88.     "**Insurer**" means any company or other entity that issued an Insurance Contract, any third party administrator, and any respective predecessors and/or affiliates thereof.

89.     "**IP Assets**" means all intellectual property assets owned by the Debtors (excluding any intellectual property assets that were sold pursuant to the Existing Sale Orders), including for the avoidance of doubt, the rocket engine and rocket avionics system intellectual property.

90.     "**Intercompany Claims**" means, collectively, any Claim held by a Debtor or a non-Debtor Affiliate of a Debtor against a Debtor.

91.     "**Intercompany Interest**" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, or other instrument evidencing an ownership interest in a Debtor held by another Debtor or a non-Debtor Affiliate.

92.     "**Interests**" means, collectively, Equity Interests and Intercompany Interests.

93.     "**Interim DIP Order**" means the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Secured Party, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Docket No. 71].

94.     "**Lien**" means a lien as defined in section 101(37) of the Bankruptcy Code.

95.     "**Litigation Trust**" means the trust described in Article IV.H hereof to be established under Delaware trust law that, among other things, shall make distributions to Holders of Allowed General Unsecured Claims and, with respect to Remaining Net Estate Tax Refunds, VIL, pursuant to the terms of the Plan and the Litigation Trust Agreement. With respect to any action required or permitted to be taken by the Litigation Trust, the term includes the Litigation Trustee or any other Person or Entity authorized to take such action in accordance with the Litigation Trust Agreement.

96.     "**Litigation Trustee**" means the Person designated by the Committee and reasonably acceptable to the Debtors and the Required Consenting Creditors, to administer the Litigation Trust in accordance with the terms of the Plan, the Litigation Trust Agreement, and the Confirmation Order.

97.     "**Litigation Trust Agreement**" means the agreement establishing the Litigation Trust in conformity with the provisions of the Plan and approved in the Confirmation Order and entered into by the Debtors, on behalf of the beneficiaries, and the Litigation Trustee on the Effective Date pursuant to the terms of the Plan, in form and substance acceptable to the Required Consenting Creditors and the Committee.

98.     "**Litigation Trust Assets**" means (a) the GUC Cash-Out Pool, (b) the GUC Causes of Action, (c) the GUC Distributable Proceeds, including the portion of the GUC Distributable Proceeds from the Remaining Net Tax Refunds, (d) Cash in an amount sufficient to fund distributions to the Holders of Allowed Convenience Claims as set forth in Article III.B, and (e) the right to pursue Estate Tax Refunds.

99.     "**Local Bankruptcy Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

100.    "**McGowen Facility**" means the facility located at 388 McGowen Street, Long Beach, CA 90808.

101.    "**New Money DIP Loans**" means the new money term loans provided by the DIP Lenders under the DIP Credit Agreement.

102. "**Non-GUC Causes of Action**" means the Causes of Action of the Estates that are not GUC Causes of Action.

103. "**Notice and Claims Agent**" means Kroll Restructuring Administration LLC, in its capacity as noticing, claims, and solicitation agent for the Debtors, pursuant to one or more orders of the Bankruptcy Court.

104. "**Ordinary Course Professionals Order**" means any order of the Bankruptcy Court permitting the Debtors to retain and compensate certain professionals in the ordinary course of their businesses.

105. "**Other Priority Claim**" means any Claim other than an Administrative Claim, DIP Facility Claim, or Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, including any Priority WARN Act Claim.

106. "**Other Secured Claim**" means any Secured Claim, other than a DIP Facility Claim or a Prepetition Secured Notes Claim.

107. "**Periodic Distribution Date**" means the first Business Day that is as soon as reasonably practicable occurring approximately sixty (60) days after the immediately preceding Periodic Distribution Date. The first Periodic Distribution Date shall be the Effective Date or as soon as reasonably practicable thereafter.

108. "**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

109. "**Petition Date**" means the date on which each of the Debtors commenced the Chapter 11 Cases.

110. "**Plan**" means this joint plan under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms hereof, as the case may be, including all schedules and exhibits, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

111. "**Plan Administration Agreement**" means the liquidating agreement to be entered into by and among the Debtors and the Plan Administrator regarding administration of the administration process of this Plan, which agreement shall be included in the Plan Supplement and shall be in form and substance reasonably acceptable to the Required Consenting Creditors.

112. "**Plan Administrator**" means the person or entity, or any successor thereto, who, on and after the Effective Date and shall have the rights, powers, and duties set forth in this Plan. The identity and compensation of the Plan Administrator shall be agreed to by the Debtors and the Required Consenting Creditors and shall be set forth in the Plan Supplement. For the avoidance of doubt, any successor to the Plan Administrator shall be agreed to by the Debtors and the Required Consenting Creditors.

113. "**Plan Supplement**" means a supplement or supplements to the Plan containing certain documents and forms of documents, schedules and exhibits, relevant to the implementation of the Plan, to be filed with the Bankruptcy Court, as amended, modified or supplemented from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules, which may include the following documents: (a) the Assumed Contracts List; (b) a list of retained Causes of Action; (c) the identity of the Plan Administrator and the terms of compensation of the Plan Administrator; (d) the Plan Administration Agreement; (e) the identity of the Litigation Trustee and the terms of compensation of the Litigation Trustee; (f) the Litigation Trust Agreement (either on a standalone basis or as part of the Plan Administration Agreement); and (g) the Wind-Down Budget. The Plan Supplement shall be in form and substance acceptable to the Required Consenting Creditors.

114. "**Plan Supplement Filing Date**" means the date that is at least seven (7) days prior to the Voting Deadline.

115. "**Prepetition Secured Noteholder**" means the Holder of any Prepetition Secured Notes Claims.

116. "**Prepetition Secured Notes Claims**" means any and all Claims arising under, derived from, or based upon the Prepetition Secured Notes.

117. "**Prepetition Secured Notes**" means, collectively, (a) that certain Senior Secured Convertible Note, dated as of November 4, 2022; (b) that certain Senior Secured Convertible Note, dated as of December 19, 2022; (c) that certain Senior Secured Convertible Note, dated as of January 30, 2023; (d) that certain Senior Secured Convertible Note, dated as of February 28, 2023; and (e) that certain Senior Secured Convertible Note, dated as of March 30, 2023, each between Virgin Orbit Holdings, Inc. and VIL and each as secured by that certain security agreement dated as of January 30, 2023 between the Debtors and Virgin Investments Limited.

118. "**Priority Tax Claim**" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

119. "**Priority WARN Act Claim**" means a Claim or any portion of a Claim that seeks damages under the WARN Act and that meets the requirements of section 507(a)(4) of the Bankruptcy Code.

120. "**Pro Rata Share**" means, with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

121. "**Professional Fee Claim**" means a Claim by a Retained Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred during the Chapter 11 Cases, through and including the Effective Date, under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

122. "**Professional Fee Escrow Account**" means an account funded by the Debtors with Cash no later than the Effective Date in an amount equal to the Professional Fee Escrow Amount.

123.    "**Professional Fee Escrow Amount**" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses the Professionals have incurred or will incur in rendering services in connection with the Chapter 11 Cases prior to and as of the Effective Date, which shall be estimated pursuant to the method set forth in Article II.A.2 of the Plan.

124.    "**Proof of Claim**" means a proof of Claim filed against any Debtor in the Chapter 11 Cases.

125.    "**Reinstated**" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

126.    "**Rejected Contracts List**" means the list (as determined by the Debtors with the consent of the Required Consenting Creditors), of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto), if any, that will be rejected pursuant to the Plan.

127.    "**Released Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Prepetition Secured Noteholder; (c) the DIP Lenders; (d) the DIP Agent and any other DIP Secured Parties; (e) the Successful Bidders; and (f) with respect to each Entity in clause (a) through (e), each such Entity's current and former Affiliates, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants (except for accountants who provided audit services to the Debtors), investment bankers, consultants, representatives, and other professionals, each in their capacity as such (unless any such Entity or related party has opted out of being a Releasing Party, in which case such Entity or related party, as applicable, shall not be a Released Party).

128.    "**Releasing Party**" means, collectively, and in each case, in their respective capacities as such: (a) the Prepetition Secured Noteholder; (b) the DIP Lenders; (c) the DIP Agent and any other DIP Secured Parties; (d) all Holders of Claims who vote to accept the Plan; (e) all Holders of Claims that vote to reject the Plan and who opt into the releases in the Plan; and (f) with respect to each Entity in clause (a) through (e), each such Entity's current and former Affiliates, subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such and to the fullest extent they would be obligated to release their claims under the principles of agency if so directed by the Releasing Party to whom they relate.  For the avoidance of doubt, the Releasing Parties shall not include any Holders of Interests in their capacity as such.

129.    "**Remaining Asset Sale**" means the disposition of any non-Cash asset of the Debtors' Estates, excluding (a) assets subject to the Existing 363 Sale Orders, (b) all inventory assets related to the Conant Facility and the McGowen Facility if not sold pursuant to an Existing Sale Order prior to the Confirmation Date, and (c) all IP Assets.

130.    "**Remaining Asset Net Proceeds**" means the aggregate cash proceeds received by the Debtors in respect of any Remaining Asset Sale, net of the direct costs relating to such asset sale.

131.    "**Remaining Net Estate Tax Refunds**" means the aggregate cash received by the Debtors on account of any Estate Tax Refunds, net of any direct costs and expenses incurred in obtaining such tax refunds.

132.    "**Required Consenting Creditors**" means the Required DIP Lenders and the Prepetition Secured Noteholder.

133.    "**Required DIP Lenders**" means the "Required Lenders" as defined in the DIP Credit Agreement.

134.    "**Retained Professional**" means an Entity: (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered on or prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 331, 363, or 1103 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code, upon a motion on notice.

135.    "**Sale Process**" means the sale process conducted in accordance with the Bidding Procedures.

136.    "**Sale Transaction Proceeds**" means all proceeds from the consummation of the 363 Sale Transactions that are distributable or payable to the Estates, and such proceeds may consist of Cash, debt instruments or other non-Cash consideration.

137.    "**SEC**" means the Securities and Exchange Commission.

138.    "**Secured Claim**" means a Claim: (a) secured by a Lien on property in which one or more Estates has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, to the extent of the value of the creditor's interest in the Estate's interest in such property, or (b) that is based upon a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the amount of the setoff, as determined pursuant to section 506(a) of the Bankruptcy Code, or (c) otherwise Allowed pursuant to the Plan or order of the Bankruptcy Court as a secured claim.

139.    "**Securities Act**" means the Securities Act of 1933, as now in effect or hereafter amended, or any regulations promulgated thereunder.

140.    "**Subordinated Claim**" means any Claim that is subject to subordination in accordance with sections 510(b)-(c) of the Bankruptcy Code or otherwise.

141.    "**Successful Bidder**" means any Entity or Entities whose bid for certain of the Debtors' assets is selected by the Debtors and approved by the Bankruptcy Court as the highest and otherwise best bid pursuant to the Bidding Procedures. For the avoidance of doubt, the Successful Bidder may be more than one Entity, submitting one or more bids, and, if applicable, use of the term "Successful Bidder" herein may be read as "Successful Bidders". Where a Successful Bidder has consent rights (or is referenced) under the Plan, such consent rights (or reference) only apply to the extent such consent right (or reference) relates to the respective Successful Bidder's 363 Sale Transaction.

142. "**Third-Party Release**" means the releases set forth in Article IX.C of the Plan.

143. "**Unexpired Lease**" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

144. "**Unimpaired**" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

145. "**United States Trustee**" means the Office of the United States Trustee for the District of Delaware.

146. "**U.S. Trustee Fees**" means all fees incurred pursuant to 28 U.S.C. § 1930(a)(6) and, to the extent applicable, any interest assessed pursuant to 31 U.S.C. § 3717.

147. "**VIL**" mean Virgin Investments Limited.

148. "**VIL Litigation Trust Interests**" means the uncertificated beneficial interests in the Litigation Trust representing the right of the DIP Secured Parties (up to the Allowed DIP Claims) and the Prepetition Secured Party to receive distributions from the Litigation Trust in accordance with the Plan and the Litigation Trust Agreement, solely with respect to the Remaining Net Estate Tax Refunds.

149. "**Voting Deadline**" means 5:00 p.m. (prevailing Eastern time) on July 11, 2023, which is the date and time set forth in the Disclosure Statement Order by which Ballots for accepting or rejecting the Plan must be received by the Notice and Claims Agent.

150. "**Voting Record Date**" means the date established as the voting record date pursuant to the Disclosure Statement Order.

151. "**WARN Act**" means the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* and the California Labor Code § 1400, *et seq*.

152. "**WARN Settlement Agreement**" means that certain Settlement and Release Agreement dated July 24, 2023 by and among Debtor Virgin Orbit, LLC, VIL, and Class Members (as defined therein), attached as Exhibit I to the *Joint Motion for Entry of an Order (I) Approving, on a Preliminary Basis, the Settlement Agreement and General Release of Claims with Vladimir Boyko, on Behalf of Himself and all Others Similarly Situated, (II) Certifying a Class of Claimants for Settlement Purposes Only, Appointing Class Counsel and a Class Representative, (III) Approving the Form and Manner of Notice to the Class Members of the Class Certification and Settlement, (IV) Scheduling a Fairness Hearing to Consider Final Approval of the Settlement, (V) Approving, on a Final Basis, the Settlement After the Fairness Hearing, and (VI) Granting Related Relief* [Docket No. [ ● ]].

153. "**Wind Down**" means the wind down and dissolution of the Debtors' Estates as set forth in Article IV.M.

154. "**Wind-Down Amount**" means Cash in an amount to be determined by the Debtors, with the consent of the Required Consenting Creditors, to be retained by the Debtors to wind down the Estates and these Chapter 11 Cases in accordance with the Wind-Down Budget, which amount

17

shall (a) be $500,000 as of the Effective Date, plus (b) all direct or indirect costs of any Remaining Asset Sales conducted by the Plan Administrator (including, for the avoidance of doubt, U.S. Trustee fees, professional and legal fees, and all other reasonable and documented fees and expenses associated with negotiating, documenting, noticing, and closing such Remaining Asset Sales), which amounts shall be reserved from the proceeds of the Remaining Asset Sales. The Wind Down Amount will be funded from (i) the Sale Transaction Proceeds, (ii) any funds remaining in the Professional Fee Escrow Account after payment in full of all Allowed Professional Fee Claims, (iii) Cash on hand on the Effective Date, and/or (iv) any amount funded by VIL to the extent of any shortfall in the Wind-Down Amount to consummate the Wind Down pursuant to Article IV.E.

155.    "**Wind-Down Budget**" means a budget for the reasonable activities and expenses to be incurred in winding down the Chapter 11 Cases, including the liquidation of any residual assets and entities not transferred to the Successful Bidder, as set forth in the Plan Supplement, which shall be in form and substance acceptable to the Required Consenting Creditors.

156.    "**Yorkville Unsecured Notes**" means, collectively, that certain convertible debenture dated as of June 29, 2022 between Virgin Orbit Holdings Inc. and YA II PN, Ltd and that certain purchase agreement dated as of March 27, 2023 between Virgin Orbit Holdings Inc. and YA II PN, Ltd.

*B.    Rules of Interpretation*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented, as applicable; (d) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (e) the words ''herein,'' "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (g) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (h) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Equity Interests," "Holders of Interests," "Disputed Interests," and the like, as applicable; (i) captions and headings to Articles and subdivisions thereof are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (j) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (l) any effectuating provisions may be interpreted by the Plan Administrator in such

a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; and (m) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Cases under the Bankruptcy Court's CM/ECF system.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  Unless otherwise specified herein, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

3.      All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

Article II.

**ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, PRIORITY TAX CLAIMS, OTHER PRIORITY CLAIMS AND UNITED STATES TRUSTEE STATUTORY FEES**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims*

1.      <u>General Administrative Claims</u>

Except to the extent that a Holder of an Allowed General Administrative Claim and the applicable Debtor(s) agree to less favorable treatment with respect to such Allowed General Administrative Claim, each Holder of an Allowed General Administrative Claim will be paid the full unpaid amount of such Allowed General Administrative Claim in Cash:  (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (b) if a General Administrative Claim is Allowed after the Effective Date, on the date such General Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed General Administrative Claim is due or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided* that any Allowed General Administrative Claim that has been assumed by a Successful Bidder under the applicable 363 Sale Transaction Documentation shall not be an obligation of the Debtors and shall not be entitled to any recovery from the Estates under this Plan.

2.      <u>Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred on and after the Petition Date and prior to and on the Effective Date must be Filed no later than forty-five (45) days after the Effective Date.  Any party seeking payment of a Professional Fee Claim that arises under sections  503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code must file a motion for approval of the same.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and

19

prior Bankruptcy Court orders.  The Plan Administrator shall pay Professional Fee Claims in Cash to such Retained Professionals in the amount the Bankruptcy Court Allows from funds held in the Professional Fee Escrow Account and in the case of the Allowed Professional Fee Claims of the Committee Professionals, in an amount up to $2,250,000, as soon as reasonably practicable after such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided* that the Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited or deemed limited to funds held in the Professional Fee Escrow Account; *provided further*, that the amount of Allowed Professional Fee Claims of the Committee Professionals shall not exceed $2,250,000.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the Allowed amount of Professional Fee Claims owing to the Retained Professionals, the Plan Administrator shall pay such amounts from Distributable Proceeds within ten (10) Business Days after entry of the order approving such Professional Fee Claims.

No later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Retained Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Retained Professionals pursuant to one or more orders of the Bankruptcy Court.  Except as otherwise expressly set forth in the last sentence of this paragraph, no Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Before all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Retained Professionals pursuant to one or more orders of the Bankruptcy Court, no funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors or the Plan Administrator, as applicable. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Retained Professionals pursuant to one or more orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly revert to the Debtors, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, which amounts shall be Distributable Proceeds and promptly distributed in accordance with the Plan.

The Retained Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors (which estimate may include a cushion to cover unexpected or unknown fees) before and as of the Effective Date projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than three (3) Business Days prior to the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Retained Professional's final request for payment of Professional Fee Claims Filed with the Bankruptcy Court, and such Retained Professionals are not bound to any extent by the estimates.  If a Retained Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Retained Professional for inclusion in the Professional Fee Escrow Amount.  The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided* that the Plan Administrator shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

20

3.      Administrative Claims Bar Date

All requests for payment of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, post-petition tax claims arising under section 503(b)(1)(D) of the Bankruptcy Code, claims arising under section 503(b)(9) of the Bankruptcy Code, or U.S. Trustee quarterly fees payable pursuant to Article II.D below) that accrued on or before the Effective Date must be filed with the Bankruptcy Court and served on the Plan Administrator no later than the Administrative Claims Bar Date.  If a Holder of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, claims arising under section 503(b)(9) of the Bankruptcy Code, or U.S. Trustee quarterly fees payable pursuant to Article II.D below) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Administrative Claim shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Litigation Trustee, or the Plan Administrator.

The Plan Administrator in its discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval.  The Debtors or the Plan Administrator, as applicable, may also choose to object to any Administrative Claim no later than the Claims Objection Deadline, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.  Unless the Debtors or the Plan Administrator, as applicable, (or other party with standing) objects to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested after expiration of the Claims Objection Deadline (as may be extended).  In the event that the Debtors or the Plan Administrator objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

B.      *DIP Facility Claims*

The DIP Facility Claims shall be deemed Allowed as of the Effective Date in an amount equal to the full amount due and owing under the DIP Credit Agreement, including, for the avoidance of doubt, (a) the principal amount outstanding under the DIP Facility on such date, (b) all interest accrued and unpaid thereon through and including the date of payment, (c) all accrued and unpaid fees, expenses and noncontingent indemnification obligations payable under the DIP Facility and the Final DIP Order and (d) all other "Obligations" as provided for in the DIP Credit Agreement.  On the Effective Date, each DIP Facility Claim shall be paid with the Distributable Proceeds and the VIL Litigation Trust Interests.

To the extent the Distributable Proceeds and the VIL Litigation Trust Interests are insufficient to satisfy the DIP Facility Claims in full and Confirmation occurs, Holders of the DIP Facility Claims agree not to receive any distribution on account of any resulting deficiency claims, which claims shall be cancelled, released, and extinguished as of the Effective Date; *provided* that the right to receive Distributable Proceeds and proceeds of VIL Litigation Trust Interests on account of DIP Facility Claims and the right to credit bid such claims up to the unpaid amount of DIP Facility Claims in connection with any sale of the Debtors' assets (whether prior to or after the Effective Date), other than a Remaining Asset Sale, shall be preserved until all assets in the Debtors' Estates have been liquidated.

All Liens and security interests granted by the Debtors to secure the obligations under the DIP Facility shall be of no further force or effect; *provided* that any indemnification and expense reimbursement obligations of the Debtors that are contingent as of the Effective Date shall survive the Effective Date and be paid by the Debtors in Cash as and when due under the DIP Credit Agreement; *provided further* that any such indemnification and reimbursement obligations shall be consistent with the DIP Credit Agreement in all respects. For the avoidance of doubt, the DIP Facility Claims shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordination (equitable or contractual or otherwise), counter-claim, defense, disallowance, impairment, objection or any challenges under applicable law or regulation.

C.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor(s) against which such Allowed Priority Tax Claim is asserted agree to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors, either (a) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter), or (b) equal annual installment payments in Cash, of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five (5) years after the Petition Date, in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under section 1122(b)); *provided* that any Allowed Priority Tax Claim that has been expressly assumed by a Successful Bidder under the 363 Sale Transaction Documentation shall not be an obligation of the Debtors. Once an Allowed Priority Tax Claim has been paid in full, any Liens securing such Allowed Priority Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

D.      *United States Trustee Statutory Fees and Related Reporting Obligations*

All fees payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in full in Cash when due and payable for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  The Debtors shall file all monthly operating reports due prior to the Effective Date, when they become due.  After the Effective Date, the Plan Administrator shall file with the Bankruptcy Court separate UST Form 11-PCR report for each of the Debtors when they become due.  The U.S. Trustee shall not be treated as providing any release under the Plan.  U.S. Trustee Fees are Allowed.  The U.S. Trustee shall not be required to file any proof of claim or any request for administrative expense for U.S. Trustee Fees.  The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

Article III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A. *Classification of Claims*

The Plan constitutes a separate chapter 11 plan for each Debtor. Except for the Claims addressed in <u>Article II</u> above (or as otherwise set forth herein), all Claims and Interests are placed in Classes for each of the applicable Debtors. The Plan consolidates Claims against all Debtors solely for purposes of voting, Confirmation, and distribution (for instance, a General Unsecured Claim against any Debtor is classified in Class 4, and to the extent Allowed, is entitled to share pro rata with all other Allowed Class 4 Claims, in the treatment provided for Class 4, without any allocation thereof among the Debtors) but not for any other purpose. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, DIP Facility Claims, and Priority Tax Claims, as described in <u>Article II</u>.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

### Summary of Classification and Treatment of Claims and Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Prepetition Secured Notes Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Convenience Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Unimpaired or Impaired | Presumed to Accept or Deemed to Reject |
| 7 | Subordinated Claims | Impaired | Deemed to Reject |
| 8 | Intercompany Interests | Unimpaired or Impaired | Presumed to Accept or Deemed to Reject |
| 9 | Equity Interests | Impaired | Deemed to Reject |

B.    *Treatment of Claims and Interests*

    1.    <u>*Class 1 — Other Priority Claims*</u>

a)    *Classification*: Class 1 consists of all Other Priority Claims.

b)    *Treatment*:  On the Effective Date, (i) except in the case of Allowed Priority WARN Act Claims (the Holders of which shall receive treatment pursuant to the WARN Settlement Agreement) and (ii) except to the extent that a Holder of an Allowed Other Priority Claim and the Debtor against which such Allowed Other Priority Claim is asserted agree to less favorable treatment for such Holder, each Holder thereof shall receive payment in full in Cash or other treatment rendering such Claim Unimpaired.  Any Allowed Other Priority Claim that has been expressly assumed by the applicable Successful Bidder under the applicable 363 Sale Transaction Documentation shall not be an obligation of the Debtors.

c)    *Voting*:  Class 1 is Unimpaired and Holders of Class 1 Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

    2.    <u>*Class 2 — Other Secured Claims*</u>

a)    *Classification*: Class 2 consists of all Other Secured Claims.

b)    *Treatment*:  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim and the Debtor against which such Allowed Other Secured Claim is asserted, with the consent of the Required Consenting Creditors, agree to less favorable treatment for such Holder, each allowed Other Secured Claim shall, at the option of the applicable Debtor (i) be paid in full in Cash, (ii) receive the collateral securing its allowed Other Secured Claim, or (iii) receive any other treatment that would render such Claim Unimpaired.  Any Allowed Other Secured Claim that has been expressly assumed by the applicable Successful Bidder under the applicable 363 Sale Transaction Documentation shall not be an obligation of the Debtors.

c)    *Voting*:  Class 2 is Unimpaired and Holders of Class 2 Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

    3.    <u>*Class 3 — Prepetition Secured Notes Claims*</u>

a)    *Classification*:  Class 3 consists of Prepetition Secured Notes Claims.

b)    *Allowance*:  On the Effective Date, the Prepetition Secured Notes Claims shall be Allowed in the aggregate principal amount of $28,400,000 plus accrued and unpaid interest on such principal amount (including interest accrued from the Petition Date through the Effective Date if permitted under the Bankruptcy Code) and all other amounts due and owing under the Prepetition Secured Notes (including professional fees and expenses incurred by the Prepetition Secured Noteholder).

c) *Treatment*: unless the Prepetition Secured Noteholder agrees to a less favorable treatment), on the Effective Date, the Prepetition Secured Noteholder shall receive (i) all Distributable Proceeds remaining after payment in full in Cash of the DIP Claims pursuant to <u>Article II.B</u> up to the Allowed amount of the Prepetition Secured Notes Claims; (ii) the VIL Litigation Trust Interests; and (iii) the rights to all IP Assets. If Confirmation occurs, to the extent the Distributable Proceeds and the VIL Litigation Trust Interest are insufficient to satisfy the Prepetition Secured Notes Claims in full, the Prepetition Secured Noteholder agrees not to receive any distribution on account of any resulting deficiency claims and shall not receive a Pro Rata Share of the GUC Recovery on account of such deficiency claims; *provided* that notwithstanding anything to the contrary herein, the right to receive Distributable Proceeds and proceeds of the VIL Litigation Trust Interests on account of such Prepetition Secured Notes Claims and the right to credit bid such claims up to the unpaid amount of Prepetition Notes Claims in connection with any sale of the Debtors' assets (whether prior to or after the Effective Date), other than a Remaining Asset Sale, shall be preserved until all assets in the Debtors' Estates have been liquidated. For the avoidance of doubt, VIL may designate another party to receive any consideration under the Plan and so designates Virgin Management USA, Inc. to receive rights to all IP Assets on the Effective Date or such later date as agreed to between VIL and the Debtors.

d) *Voting*: Class 3 is Impaired. The Prepetition Secured Noteholder is entitled to vote to accept or reject the Plan.

4. <u>*Class 4 — General Unsecured Claims*</u>

a) *Classification*: Class 4 consists of General Unsecured Claims.

b) *Allowance*: On the Effective Date, General Unsecured Claims shall be Allowed in accordance with the procedures set forth in <u>Article VII</u> of this Plan.

c) *Treatment*: As soon as reasonably practicable after the Effective Date and consistent with the Litigation Trust Agreement, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment and subject to such Holder's ability to elect Convenience Claim treatment on account of the Allowed General Unsecured Claim (in lieu of the GUC Recovery):

> i. If Class 4 votes to accept the Plan, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of the GUC Recovery (including the GUC Litigation Trust Interests); or

> ii. If Class 4 votes to reject the Plan, each General Unsecured Claim Holder shall receive no distribution on account of its General Unsecured Claim and the Debtors may seek approval of the Dismissal Motion or conversion of these Chapter 11 Cases to Chapter 7 of the Bankruptcy Code.

d) *Voting*: Class 4 is Impaired and Holders of Class 4 General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.      *Class 5 — Convenience Claims*

a)   *Classification*:  Class 5 consists of Convenience Claims.

b)   *Treatment*:  As soon as reasonably practicable after the Effective Date and consistent with the Litigation Trust Agreement, each Holder of an Allowed Convenience Claim shall receive:

> i.   If the aggregate amount of all Allowed Convenience Claims does not exceed $500,000, Cash in an amount equal to 50% of such Holder's Allowed Convenience Claim.
>
> ii.  If the aggregate amount of all Allowed Convenience Claims exceeds $500,000, its Pro Rata Share of $250,000.

c)   *Voting*:  Class 5 is Impaired and Holders of Class 5 Convenience Claims are entitled to vote to accept or reject the Plan.

6.      *Class 6 — Intercompany Claims*

a)   *Classification*: Class 6 consists of all Intercompany Claims.

b)   *Treatment*: Notwithstanding any other provision of the Plan, on the Effective Date, except to the extent that a Holder of an Allowed Intercompany Claim and the Debtor against which such Allowed Intercompany Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Intercompany Claim shall receive no distribution under the Plan, and all Intercompany Claims shall be adjusted, Reinstated, or eliminated in the applicable Debtor's discretion, unless otherwise agreed to by the Debtors and the applicable Successful Bidder in connection with one or more 363 Sale Transactions.

c)   *Voting*:  Class 6 is either (i) Unimpaired and Holders of Class 6 Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) Impaired and not receiving any distribution under the Plan and Holders of Class 6 Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, in each case, Holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.      *Class 7 — Subordinated Claims*

a)   *Classification*: Class 7 consists of all Subordinated Claims

b)   *Treatment*:  Allowed Subordinated Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Subordinated Claims will not receive any distribution on account of such Allowed Subordinated Claims.

a)   *Voting*:  Class 7 is Impaired and Holders of Class 7 Subordinated Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 7 Subordinated Claims are not entitled to vote to accept or reject the Plan.

8. _Class 8 — Intercompany Interests_

a) _Classification:_ Class 8 consists of all Intercompany Interests.

b) _Treatment_: On the Effective Date, except to the extent that a Holder of an Allowed Intercompany Interest and the Debtor against which such Allowed Intercompany Interest is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Intercompany Interest shall receive no distribution under the Plan, and all Intercompany Interests shall be adjusted, Reinstated, or eliminated in the applicable Debtor's discretion, unless otherwise agreed to by the Debtors and the applicable Successful Bidder in connection with one or more 363 Sale Transactions.

c) _Voting_: Class 8 is either (i) Unimpaired and Holders of Class 8 Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) Impaired and not receiving any distribution under the Plan and Holders of Class 8 Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, in each case, Holders of Class 8 Intercompany Interests are not entitled to vote to accept or reject the Plan.

9. _Class 9 — Equity Interests_

a) _Classification_: Class 9 consists of all Equity Interests.

b) _Treatment_: Holders of Equity Interests shall receive no distribution on account of their Equity Interests. On the Effective Date, all Equity Interests will be canceled and extinguished and will be of no further force or effect.

c) _Voting_: Class 9 is Impaired and Holders of Class 9 Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 9 Equity Interests are not entitled to vote to accept or reject the Plan.

C.    _Special Provision Governing Unimpaired Claims_

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Plan Administrator's, as applicable, rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim; _provided_ that, for the avoidance of doubt, notwithstanding anything to the contrary in the Plan or the Confirmation Order or any related documents, (a) the provisions of Articles IV.A, IX.A, IX.C, IX.D, and IX.F of the Plan shall not apply with respect to any Unimpaired Claim and (b) such Unimpaired Claim shall not be deemed settled, satisfied, resolved, released, discharged, barred or enjoined by any provision of the Plan.

D.    _Nonconsensual Confirmation_

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims, determined without including any acceptance of the Plan by any insider. The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

E.     *Subordination*

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Plan Administrator, the Debtors, and the Litigation Trustee reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

F.     *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

G.     *Intercompany Claims*

To the extent Reinstated under the Plan, any distributions on account of Intercompany Claims are not being received by Holders of such Intercompany Claims on account of their Intercompany Claims but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure given the various foreign affiliate-subsidiaries of the Debtors to preserve ordinary course intercompany operations and in exchange for the Debtors' or the Plan Administrator's, as applicable, agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

Article IV.

**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.     *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan, by the Debtors, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

*B.*      *Indemnification Obligations*

Subject to the last sentence of this paragraph, any obligations of the Debtors pursuant to their organizational documents, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any Person pursuant to the Debtors' organizational documents, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Persons based upon any act or omission related to such Persons' service with, for, or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtors shall survive Confirmation of the Plan and except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; *provided*, *however*, that all monetary obligations under this provision shall be limited solely to available insurance coverage and neither the Plan Administrator nor any of the assets thereof shall be liable for any such obligations.

Any Claim based on the Debtors' indemnification obligations shall not be a Disputed Claim or subject to any objection under Bankruptcy Code section 502(e)(1)(B). The Debtors' indemnification obligations shall not apply to or cover any Claims, suits, or actions against a Person that result in a Final Order determining that such Person is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing, or breach of the duty of loyalty.

*C.*      *Cancellation of Agreements and Equity Interests*

Except as otherwise provided for in the Plan, on the later of the Effective Date and the date on which the relevant distributions are made pursuant to Article VI: (i) the obligations of the Debtors under the DIP Credit Agreement, the Prepetition Secured Notes, the Yorkville Unsecured Notes and any other note, bond, indenture, or other instrument or document directly or indirectly evidencing or creating any indebtedness of the Debtors; and (ii) any certificate, equity security, share, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating an ownership interest in the Debtors (except, in each case, such certificates, notes or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan), shall be cancelled as to the Debtors and their Affiliates, and they shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors and their Affiliates pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated or entered into pursuant to the Plan) shall be released; *except that*:

      1.      the DIP Facility shall continue in effect solely for the purpose of: (a) allowing the DIP Lenders to receive distributions from the Debtors under the Plan as set forth in Article VI of the Plan; (b) preserving the DIP Lenders' right to all amounts due under the DIP Credit Agreement and DIP Orders; and (c)

preserving the DIP Lenders' right to indemnification from the Debtors pursuant and subject to the terms of the DIP Facility; and

2.      the Prepetition Secured Notes shall continue in effect solely for the purpose of: (a) allowing the Prepetition Secured Noteholder to receive distributions from the Debtors under the Plan as set forth in Article VI of the Plan; (b) preserving the Prepetition Secured Noteholder's right to all amounts due under the Prepetition Secured Notes; and (c) preserving the Prepetition Secured Noteholder's right to indemnification from the Debtors pursuant and subject to the terms of the Prepetition Secured Notes.

### D.      The UCC Settlement

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates and implements a compromise and settlement of numerous issues and disputes by and among the Debtors, the Committee, the Prepetition Secured Noteholder, and the DIP Lenders designed to achieve a reasonable and effective resolution of the Chapter 11 Cases (the "**UCC Settlement**"). In exchange for the compromises contained in the Plan, including the releases, exculpations, injunctions, and other consideration as set forth herein, and as further set forth in the Confirmation Order, the Debtors, the Committee, the Prepetition Secured Noteholder, and the DIP Lenders have agreed to, among other things and as set forth herein: (i) support and if applicable, vote in favor of the Confirmation and consummation of the Plan and (ii) with respect to the Prepetition Secured Noteholder, contribute certain amounts in Cash or other consideration to the Debtors' Estates for the benefit of Holders of Allowed General Unsecured Claims and Holders of Allowed Convenience Claims. Except as otherwise expressly set forth herein, the UCC Settlement constitutes a settlement of all potential issues and Claims between and among the Debtors, the Committee, the Prepetition Secured Noteholder, and the DIP Lenders.

### E.      Sources for Plan Distributions

The Debtors shall fund distributions under the Plan with Cash on hand, monetization of the Debtors' remaining assets and, if necessary, contributions from VIL. To the extent of any shortfall, VIL shall provide the Debtors or the Plan Administrator, as applicable, Cash in an amount sufficient to fund (a) the Administrative Claims (other than DIP Facility Claims), Priority Tax Claims, Other Priority Claims, and Other Secured Claims in accordance with the Plan, in each case to the extent Allowed against the Debtors; (b) the Professional Fee Escrow Account; (c) the Wind-Down Amount in an amount sufficient to consummate the Wind Down; and (d) the GUC Cash-Out Pool (if Class 4 votes to accept the Plan).

### F.      Exemption from Certain Transfer Taxes and Recording Fees

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to any Entity pursuant to or in connection with the Plan, including: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan,

including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any U.S. federal, state or local document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate U.S. state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

G.    *Plan Administrator*

On and after the Plan Effective Date, the Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtors shall be deemed to have terminated, the persons acting as managers, directors, and officers of the Debtors shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole manager and sole officer of the Debtors, and shall succeed to the powers of the Debtors' managers, directors, and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors. The Plan Administrator shall use commercially reasonable efforts to operate in a manner consistent with the Wind-Down Budget. The Plan Administrator shall carry out any necessary functions required by the applicable 363 Sale Transaction Documentation.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and wind down the businesses and affairs of the Debtors, in each case, without the need for further Court approval, including: (a) selling, disposing, liquidating, receiving, holding, investing, supervising, protecting, and abandoning the Debtors' assets (including the assets subject to a Remaining Asset Sale but excluding the Litigation Trust Assets), in each case with the consent of the Required Consenting Creditors; *provided* that, if the Plan Administrator seeks to abandon assets subject to Remaining Asset Sales, the Plan Administrator shall first provide notice of offer for such assets to the Litigation Trust, such that the Litigation Trustee can elect to have such assets deposited by the Plan Administrator to the Litigation Trust at the sole expense of the Litigation Trust, and in the event such election is not made within two Business Days of notice, the Plan Administrator may proceed to abandon such assets; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan (other than distributions to the Holders of Allowed General Unsecured Claims and Allowed Convenience Claims); (c) making distributions as contemplated under the Plan (other than distributions to the Holders of Allowed General Unsecured Claims and Allowed Convenience Claims); (d) establishing and maintaining bank accounts in the name of the Debtors; (e) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (f) paying all reasonable fees, expenses, debts, charges, and liabilities of the Debtors; (g) administering and paying taxes of the Debtors, including filing tax returns; (h) representing the interests of the Debtors before any taxing authority in all matters, including any action, suit,

proceeding or audit; and (i) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court, *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator (who shall be acceptable to the Required Consenting Creditors). Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Debtors shall be terminated.

### 1. Appointment of the Plan Administrator

The Plan Administrator shall be appointed by the Debtors with the consent of the Required Consenting Creditors. The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under this Plan, and as otherwise provided in the Confirmation Order.

### 2. Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Debtors solely from the Wind-Down Amount, upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

### 3. Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement.

### 4. Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed indemnified, except for actual fraud, willful misconduct, or gross negligence, in all respects by the Debtors. The Plan Administrator may obtain, at the expense of the Debtors an solely from the Wind-Down Amount, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator, in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors, other than expressly provided for by the Plan and the Plan Administration Agreement.

32

H.    *Litigation Trust*

1.    Establishment and Administration of the Litigation Trust

On the Effective Date, the Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purpose of, among other things, (a) selling, disposing, liquidating, receiving, holding, investing, supervising, protecting, and abandoning the Litigation Trust Assets; (b) administering, reconciling, settling, and resolving General Unsecured Claims and Convenience Claims; (c) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made to Holders of Allowed General Unsecured Claims and Allowed Convenience Claims; (d) making distributions to Holders of Allowed General Unsecured Claims, Allowed Convenience Claims and, to the extent of Remaining Net Estate Tax Refunds, the DIP Secured Parties and the Prepetition Secured Party; (d) retaining professionals or other advisors to assist in the performance of its duties; and (e) making further distributions from the Litigation Trust to Holders of Allowed General Unsecured Claims as provided for in the Plan and the Litigation Trust Agreement.  The Litigation Trust Agreement may establish certain powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Litigation Trust as a liquidating trust for United States federal income tax purposes as discussed below.

Upon execution of the Litigation Trust Agreement, the Litigation Trustee shall be authorized to take all steps necessary to complete the formation of the Litigation Trust. The Litigation Trust shall be administered by the Litigation Trustee in accordance with the Litigation Trust Agreement. The Litigation Trustee shall serve as representative of the Estates under section 1123(b) for the purpose of (i) enforcing the GUC Causes of Action and (ii) administering and distributing the Litigation Trust Assets.

2.    Litigation Trust Assets

On the Effective Date, the Debtors shall transfer and assign to the Litigation Trust all of their right, title, and interest in and to all of the Litigation Trust Assets, and in accordance with Bankruptcy Code Section 1141, all such assets shall automatically vest in the Litigation Trust free and clear of all Claims and Liens, subject only to the Allowed Claims of the Holders of GUC Litigation Trust Interests as set forth in the Plan and the expenses of the Litigation Trust as set forth herein and in the Litigation Trust Agreement. Thereupon, the Debtors shall no longer have any interest in or with respect to the Litigation Trust Assets.

In pursuing any GUC Causes of Action, the Litigation Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the GUC Causes of Action may be brought under section 546 of the Bankruptcy Code.

In connection with the prosecution of the GUC Causes of Action, any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity attaching to any prepetition documents or communications relating to the GUC Causes of Action shall be transferred to and shall vest in the Litigation Trust.  The Litigation Trust's receipt of such privileges associated with the GUC Causes of Action shall not operate as a waiver of those privileges possessed or retained by the Debtors, nor shall it operate to eliminate the rights of any

33

co-defendant to any applicable joint privilege. The Litigation Trust shall also be vested with the Debtors' rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004, *provided* that all costs related to satisfying such discovery shall be funded exclusively from the GUC Recovery. The Litigation Trust, however, shall not be considered a successor of any Debtor and shall not assume any obligations of the Debtors other than expressly provided for by the Plan and the Litigation Trust Agreement.

Any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity held by the Committee shall be transferred to and shall vest in the Litigation Trust. The Litigation Trust shall have access to all discovery obtained by the Committee in these Chapter 11 Cases, including discovery obtained pursuant to Bankruptcy Rule 2004, *provided* that all costs related to satisfying such discovery shall be funded exclusively from the GUC Recovery.

Upon and following the Effective Date, the Plan Administrator shall transfer and assign to the Litigation Trust all its right, title, and interest in and to all of the GUC Distributable Proceeds reasonably promptly after so received, and in accordance with Bankruptcy Code Section 1141, all such assets shall automatically vest in the Litigation Trust free and clear of all Claims and Liens, subject only to the Allowed Claims of the Holders of GUC Litigation Trust Interests as set forth in the Plan and the expenses of the Litigation Trust as set forth herein and in the Litigation Trust Agreement. Thereupon, the Debtors shall no longer have any interest in or with respect to the Litigation Trust Assets.

3.  GUC Litigation Trust Interests

On the Effective Date, each Holder of an Allowed General Unsecured Claim shall, by operation of the Plan, be deemed to have received its uncertificated Pro Rata Share of the GUC Litigation Trust Interests pursuant to the terms of the Plan. Certain of the GUC Litigation Trust Interests shall be reserved for Holders of Disputed General Unsecured Claims and issued by the Litigation Trust to, and held by, the Litigation Trustee, pending allowance or disallowance of such Disputed General Unsecured Claims. No other Person or Entity shall have any interest, legal, beneficial, or otherwise, in the Litigation Trust Assets upon the assignment and transfer of such assets to the Litigation Trust.

As set forth in the Litigation Trust Agreement, distributions from the Litigation Trust on account of GUC Litigation Trust Interests issued to Holders of Allowed General Unsecured Claims shall be made from the Litigation Trust Assets after paying, reserving against, or satisfying, among other things, the operating and administrative expenses of the Litigation Trust, including all costs, expenses, and obligations incurred by the Litigation Trustee (or professionals who may be employed by the Litigation Trustee in administering the Litigation Trust) in carrying out their responsibilities to the Litigation Trust under the Litigation Trust Agreement, or in any manner connected, incidental, or related thereto.

The GUC Litigation Trust Interests shall be uncertificated and shall be nontransferable except upon death of the Holder or by operation of law. Holders of GUC Litigation Trust Interests, in such capacity, shall have no voting rights or any authority over the activities of the Litigation Trust.

4. VIL Litigation Trust Interests

On the Effective Date, VIL, in its capacity as DIP Secured Party and Prepetition Secured Party, shall, by operation of the Plan, be deemed to have received its uncertificated VIL Litigation Trust Interests pursuant to the terms of the Plan.

As set forth in the Litigation Trust Agreement, distributions from the Litigation Trust on account of VIL Litigation Trust Interests shall be made from the Litigation Trust Assets after paying, reserving against, or satisfying, among other things, the operating and administrative expenses of the Litigation Trust, including costs, expenses, and obligations incurred by the Litigation Trustee (or professionals who may be employed by the Litigation Trustee in administering the Litigation Trust) in carrying out their responsibilities to the Litigation Trust under the Litigation Trust Agreement solely to the extent such costs or expenses are directly applicable to the pursuit of Estate Tax Refunds.

The VIL Litigation Trust Interests shall be uncertificated and shall be nontransferable except upon death of the Holder or by operation of law. Holders of VIL Litigation Trust Interests, in such capacity, shall have no voting rights or any authority over the activities of the Litigation Trust.

5. Appointment of a Litigation Trustee

The identity of the Litigation Trustee shall be disclosed pursuant to a notice filed in the Plan Supplement. The appointment of the Litigation Trustee shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date. The Litigation Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and Litigation Trust Agreement.

6. Federal Income Tax Treatment of the Litigation Trust; Tax Reporting and Tax Payment Obligations

For U.S. federal income tax purposes, it is intended that the Litigation Trust (except with respect to the Disputed General Unsecured Claims, including any disputed ownership fund election that might be made) be classified as a liquidating trust under Treasury Regulation Section 301.7701-4 and Revenue Procedure 94-45, 1994-2 C.B. 684, with no objective to continue or engage in the conduct of a trade or business. Accordingly, for U.S. federal income tax purposes, it is intended that the beneficiaries of the Litigation Trust be treated as if they had received a distribution from the Estates of an undivided interest in each of the Litigation Trust Assets (to the extent of the value of their respective shares therein) and then contributed such interests to the Litigation Trust.

a. Litigation Trust Assets Treated as Owned by Beneficiaries of Litigation Trust

For U.S. federal income tax purposes, all parties shall treat the transfer of Litigation Trust Assets (net of any applicable liabilities) to the Litigation Trust as (a) a transfer by the Debtors of the Litigation Trust Assets (net of any applicable liabilities) directly to the beneficiaries of the Litigation Trust (to the extent of the value of their respective shares in the assets of the Litigation

Trust), followed by (b) the transfer of the Litigation Trust Assets (net of any applicable liabilities) by the beneficiaries of the Litigation Trust (to the extent of the value of their respective share in the assets of the Litigation Trust) to the Litigation Trust in exchange for the beneficial interests in the Litigation Trust. Accordingly, for U.S. federal income tax purposes, the Litigation Trust shall be treated as a grantor trust (except with respect to the Disputed General Unsecured Claims, including any disputed ownership fund election that might be made) pursuant to sections 671 and 677 of the Internal Revenue Code, and the beneficiaries of the Litigation Trust shall be treated as the grantors of the Litigation Trust and the owners of the Litigation Trust Assets.

b.  Tax Reporting

The Litigation Trust shall be responsible for filing all federal, state, local and foreign tax returns for the Litigation Trust. The Litigation Trust shall file all tax returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Article IV.H to the extent permitted by applicable law (except with respect to the Disputed General Unsecured Claims, including any disputed ownership fund election that might be made). The Litigation Trustee shall send to each holder of a beneficial interest appearing on its record during such year, a separate statement setting forth such holder's share of items of income, gain, loss, deduction or credit as relevant for U.S. federal income tax purposes and each such holder shall report such items on their U.S. federal income tax returns. The Litigation Trustee shall allocate the taxable income, gain, loss, deduction or credit of the Litigation Trust with respect to each holder of a beneficial interest to the extent required by applicable law.

As soon as possible after the Effective Date, the Litigation Trust shall make a good faith valuation of the Litigation Trust Assets, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Litigation Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Litigation Trust that are required by any taxing authority.

The Litigation Trust may request an expedited determination of the tax obligations of the Litigation Trust under Bankruptcy Code Section 505(b) for all returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

c.  Withholding

The Litigation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Litigation Trust shall be subject to any such withholding and reporting requirements.

d.  Payment of Taxes

The Litigation Trust shall be responsible for payments, out of Litigation Trust Assets, of all taxes imposed on the Litigation Trust or Litigation Trust Assets. In the event, and to the extent, any Cash retained on account of Disputed General Unsecured Claims associated with the Litigation Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed General Unsecured Claims, the Litigation Trustee may, in its discretion, (a) sell any non-Cash assets relating to such Disputed General Unsecured Claims (including any assets distributable as a result of disallowance of such

Claim) to pay such taxes or (b) reimburse the Litigation Trust for the payment of such taxes from any subsequent Cash amounts allocable to, or retained on account of, such taxes from any subsequent Cash amounts allocable to, or retained on account of, such Disputed General Unsecured Claims (including any Cash distributable as a result of disallowance of such Claims).

7. <u>Termination of the Litigation Trust</u>

The Litigation Trust shall be dissolved as soon as practicable after the date that is the earlier to occur of: (a) the distribution of all Litigation Trust Assets pursuant to the Plan, or (b) the determination of the Litigation Trustee that the continued prosecution of any GUC Causes of Action or the pursuit of Estate Tax Refunds is not likely to yield sufficient additional proceeds to justify further pursuit. Notwithstanding the foregoing sentence, the Litigation Trust shall dissolve after five (5) years from the Effective Date, unless (x) the Bankruptcy Court or other court with jurisdiction over the Litigation Trust, within ninety (90) days prior to the fifth (5th) anniversary of the Effective Date (or within ninety (90) days prior to the end of an extension period), determines that a fixed-period extension, together with any prior extensions, is necessary to facilitate or complete the recovery on and liquidation of the Litigation Trust Assets, provided that no one individual fixed-period extension shall exceed three (3) years or (y) the Litigation Trust obtains a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a grantor trust that is a liquidating trust for United States federal income tax purposes.

I.      *Directors and Officers Insurance Policies*

In accordance with and without altering <u>Article V.A</u> of the Plan, (i) on the Effective Date, the Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies (including any "tail policy" and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; (ii) confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed; (iii) the Debtors shall retain the ability to supplement such D&O Liability Insurance Policies as the Debtors may deem necessary; and (iv) for the avoidance of doubt, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the assumption of each of the unexpired D&O Liability Insurance Policies.

In addition, on or after the Effective Date, the Plan Administrator and the Litigation Trustee shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy" and all agreements, documents, or instruments related thereto) in effect on or prior to the Effective Date, with respect to conduct occurring prior thereto, and all current and former directors, officers, and managers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policies for the full term of such policies regardless of whether such current and former directors, officers, and managers remain in such positions after the Effective Date, all in accordance with the terms and conditions of the D&O Liability Insurance Policies, which shall not be altered.

*J.*        *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to the releases set forth in this section and in Article IX below, and to the extent not transferred to a Successful Bidder in any 363 Sale Transaction, all Causes of Action that a Debtor may hold against any Entity shall vest in the Plan Administrator or the Litigation Trust, as applicable, on the Effective Date. Thereafter, the Plan Administrator and the Litigation Trustee, with the consent of the Debtors, shall have the right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any other third party or further notice to or action, order, or approval of the Bankruptcy Court. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors, the Plan Administrator, or the Litigation Trustee will not pursue any and all available Causes of Action. The Debtors, the Plan Administrator, and the Litigation Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan,** and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action as a consequence of the Confirmation or the occurrence of the Effective Date.

*K.*        *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtors, the Plan Administrator, or any other Entity, including, as applicable:  (1) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases and (2) all other acts or actions contemplated, or reasonably necessary or appropriate to promptly consummate the transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the company structure of the Debtors, and any company action required by the Debtors or the Plan Administrator in connection therewith, shall be deemed to have occurred on, and shall be in effect as of, the Effective Date, without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtors.

On or prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtors (including any president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof) shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the applicable Debtors.  The authorizations and approvals contemplated by this Article IV.K shall be effective notwithstanding any requirements under non-bankruptcy law.

*L.*        *Effectuating Documents; Further Transactions*

Prior to, on, and after the Effective Date, the Debtors and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are

authorized to and may issue, execute, deliver, file, or record such contracts, securities, notes, instruments, certificates, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

M.      Wind-Down

On and after the Effective Date, in accordance with the Wind-Down Budget and after completion of the Sale Process, the Debtors shall (1) continue in existence for purposes of (a) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible, (b) resolving Disputed Claims as provided hereunder, (c) paying Allowed Claims not assumed by the applicable Successful Bidder as provided hereunder, (d) filing appropriate tax returns, (e) complying with their continuing obligations under the applicable 363 Sale Transaction Documentation (including with respect to the transfer of permits to the applicable Successful Bidder as contemplated therein), and (f) administering the Plan in an efficacious manner; and (2) thereafter liquidate and dissolve as set forth in the Plan. The Plan Administrator shall carry out these actions for the Debtors.

Consistent with Article IV.G of the Plan, the Plan Administrator shall also have the power and authority and shall be required to exercise such power and authority, in lieu of the board of directors or similar governing body of any of the direct and indirect non-Debtor subsidiaries of Virgin Orbit Holdings, Inc., to take any action necessary to wind down and dissolve such Entities, including filing a certificate of dissolution or similar documents for any of such Entities, together with all other necessary corporate and company documents, to effect the dissolution of such Entities under the applicable laws of the jurisdiction in which such Entities were formed.

N.      Wind-Down Amount.

On the Effective Date, the Debtors shall retain Cash in the amount of the Wind-Down Amount, which shall be used in accordance with the terms of the Wind-Down Budget. Any remaining Cash held by the Debtors after making all of the disbursements contemplated by the Wind-Down Budget shall promptly be distributed in accordance with the Plan, as acceptable to the Required Consenting Creditors.

O.      Dissolution of the Boards of the Debtors.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Debtors with respect to their affairs. Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall be authorized to (a) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of the applicable state(s) of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

The filing by the Plan Administrator of any of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of any of the Debtors or any of their Affiliates.

P.     *Closing the Chapter 11 Cases*

Upon administering in full the Chapter 11 Cases, the Plan Administrator may seek authority from the Bankruptcy Court to close any of the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules, and the requirements set forth in Local Rule 3022-1.

Q.     *Preservation of Certain Assets*

Upon written request by either the Committee or the Litigation Trustee, the Debtors shall use commercially reasonable efforts to maintain records relating to payroll data, tax returns, accounting, and accounts payable for the sole purpose of assisting with collection of preferences and tax assets, *provided* that all costs related to satisfying such request shall constitute the costs of the Litigation Trust and shall be funded exclusively from the GUC Recovery.

Article V.
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES; EMPLOYEE BENEFITS; AND INSURANCE POLICIES

A.     *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, any Executory Contract or Unexpired Lease (i) not previously assumed, (ii) not assumed and assigned in accordance with any 363 Sale Transaction Documentation, or (iii) not previously rejected pursuant to an order of the Bankruptcy Court, and (iv) is not the subject of a pending motion to reject, assume or assume and assign as of the Effective Date will be deemed rejected.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Debtors' Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective upon service of notice of  the occurrence of the Effective Date on the affected counterparty to the Executory Contract or Unexpired Lease, or, as to rejected Executory Contracts and Unexpired Leases, on such later date as may be identified on the Rejected Contracts List or other motion or notice to reject that is served on the affected counterparty to the Executory Contract or Unexpired Lease. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to amend or supplement the Rejected Contracts List in their discretion prior to the Effective Date (or such

40

later date as may be permitted by Article V.B or Article V.E below), *provided* that the Debtors shall give prompt notice of any such amendment or supplement to any affected counterparty and such counterparty shall have a reasonable opportunity to object thereto on any grounds.

Notwithstanding anything to the contrary herein, the terms of any 363 Sale Transaction Documentation and any 363 Sale Order shall govern the cure of defaults, assumption and assignment, and compliance with section 365 of the Bankruptcy Code with respect to any Executory Contracts or Unexpired Leases assumed and assigned pursuant to such 363 Sale Transaction Documentation and 363 Sale Order.

B.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost in Cash on the Effective Date or as soon as reasonably practicable, subject to the limitation described below, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

Upon payment of the Cure Cost, assumption of any Executory Contract or Unexpired Lease shall result in the full satisfaction and cure of any Claims and defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, under any assumed Executory Contract or Unexpired Lease arising at any time prior to the effective date of assumption.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Cost will be deemed to have assented to such assumption, assumption and assignment, and Cure Cost.

C.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases by virtue of this Plan must be filed with the Notice and Claims Agent within thirty (30) days after the date of the effectiveness of the rejection of the applicable Executory Contract or Unexpired Lease.  The deadline for Governmental Units to file any such Proofs of Claim shall be the later of thirty (30) days after the effectiveness of rejection of the applicable Executory Contract or Unexpired Lease or the Governmental Bar Date as set forth in the Bar Date Order.  The notice of Effective Date shall set forth the date by which Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases must be filed. **Any Proofs of Claim arising from the rejection of the Executory Contracts and Unexpired Leases that are not timely filed shall be forever disallowed and barred, absent a Final Order to the contrary.**  All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

D.      *Contracts and Leases Entered into After the Petition Date*

The Debtors and, to the extent assigned to a Successful Bidder, the Successful Bidder, will perform under any contracts and leases entered into after the Petition Date by any Debtor, including

any Executory Contracts and Unexpired Leases assumed by any Debtor, and will be liable thereunder in the ordinary course of business.

E.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Rejected Contracts List or Assumed Contracts List, as applicable, nor anything contained in the Plan or 363 Sale Transaction Documentation, nor the Debtors' delivery of a notice of proposed assumption and proposed Cure Cost to any contract and lease counterparties, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease. If there is a dispute regarding a Debtor's liability under an assumed Executory Contract or Unexpired Lease, the Plan Administrator shall be authorized to move to have such dispute heard by the Bankruptcy Court pursuant to <u>Article X.C</u> of the Plan.

Article VI.
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Distribution on Account of Claims Allowed as of the Effective Date*

Except as otherwise provided in the Plan or a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Initial Distribution Date; *provided* that Allowed Priority Tax Claims shall be satisfied in accordance with <u>Article II.C</u> herein.

B.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      <u>Payments and Distributions on Disputed Claims</u>

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions on account of Disputed Claims that become Allowed after the Effective Date shall be made on the next Periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim; *provided* that (a) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with <u>Article II.C</u> of the Plan.

2.      <u>Distributions of Distributable Proceeds</u>

After the Initial Distribution Date, the Plan Administrator shall, or shall direct the Distribution Agent to, distribute additional Distributable Proceeds as soon as practicable upon such Distributable Proceeds becoming available to the Debtors or the Plan Administrator. Such

additional Distributable Proceeds shall be distributed in accordance with the terms of <u>Article IV</u> of the Plan.

C.     *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided herein, on the Initial Distribution Date each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. If and to the extent that any Disputed Claims exist, distributions on account of such Disputed Claims shall be made pursuant to <u>Article VI.B</u> and <u>Article VII</u> of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

D.     *Delivery of Distributions*

1.     <u>Record Date for Distributions</u>

For purposes of making distributions on the Initial Distribution Date only, the Distribution Agent shall be authorized and entitled to recognize only those Holders of Claims reflected in the Debtors' books and records as of the close of business on the Distribution Record Date, and the Proofs of Claims filed in these Chapter 11 Cases. If a Claim, other than one based on a publicly-traded security, is transferred (a) twenty-one (21) or more days before the Distribution Record Date and reasonably satisfactory documentation evidencing such transfer is Filed with the Court, the Distribution Agent shall make the applicable distributions to the applicable transferee, or (b) twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form is Filed with the Court and contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

The Distribution Record Date shall not apply to publicly traded securities deposited with DTC and, in connection with any distribution under the Plan to be effected through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise), the Debtors or the Plan Administrator, as applicable, shall be entitled to recognize and deal for all purposes under the Plan with Holders of Claims in each Class to the extent consistent with the customary practices of DTC used in connection with such distributions.

2.     <u>Delivery of Distributions in General</u>

Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in the Debtors' records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder, if applicable; *provided* that the manner of such distributions shall be determined at the discretion of the Plan Administrator.

3.     <u>Delivery of Distributions on DIP Facility Claims</u>

All distributions on account of the DIP Facility Claims shall be made to the DIP Lenders.

4.     Delivery of Distributions on Prepetition Secured Notes Claims

All distributions on account of the Prepetition Secured Notes Claims shall be made to the Prepetition Secured Noteholder.

5.     Distributions by Distribution Agents

The Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, shall have the authority to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder.  To the extent the Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, determines to utilize a Distribution Agent to facilitate the distributions under the Plan to Holders of Allowed Claims, any such Distribution Agent would first be required to:  (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required under the Plan; (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required under the Plan to be distributed by such Distribution Agent; and (d) post a bond, obtain a surety or provide some other form of security for the performance of its duties, the costs and expenses of procuring which shall be borne by the Debtors, the Plan Administrator, or the Litigation Trustee, as applicable.

The Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, shall pay to the Distribution Agents all reasonable and documented fees and expenses of the Distribution Agents without the need for any approvals, authorizations, actions, or consents.  The Distribution Agents shall submit detailed invoices to the Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, for all fees and expenses for which the Distribution Agent seeks reimbursement and the Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, shall pay those amounts that they, in their sole discretion, deem reasonable, and shall object in writing to those fees and expenses, if any, that the Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, deem to be unreasonable.  In the event that the Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, objects to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Debtors, the Plan Administrator, or the Litigation Trustee, as applicable, and a Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

6.     Minimum Distributions

Notwithstanding anything herein to the contrary, other than on account of Claims in Classes 1, 2, and 5, the Distribution Agents shall not be required to make distributions or payments aggregating less than $50 (whether Cash or otherwise) to any particular Holder of an Allowed Claim in such Classes and shall not be required to make partial distributions or payments of fractions of dollars.  If any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment will reflect a rounding down of such fraction to the nearest whole dollar.

7.      Undeliverable Distributions

a.      Holding of Certain Undeliverable Distributions

Undeliverable distributions shall remain in the possession of the Distribution Agents until such distributions become deliverable, at which time such distributions shall be made without interest, dividends, or other accruals of any kind on account of the distributions being undeliverable; *provided* that distributions returned as undeliverable shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the distributions are made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws to the contrary) to the Plan Administrator or the Litigation Trustee, as applicable, automatically and without need for a further order by the Bankruptcy Court and the Claim or Interest of any holder to such property or interest in property shall be forever barred, absent order of the Bankruptcy Court to the contrary.

b.      Failure to Present Checks

Checks issued by the Distribution Agents on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.

E.      *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Plan Administrator and the Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator, the Litigation Trustee, and/or the Distribution Agent, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate, including requiring as a condition to the receipt of a distribution, that the Holders of an Allowed Claim complete an IRS Form W-8 or W-9, as applicable. The Plan Administrator and the Litigation Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

F.      *Surrender of Canceled Instruments or Securities*

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Equity Interest shall be deemed to have surrendered such certificate or instrument to the Distribution Agent. Such surrendered certificate

or instrument shall be cancelled solely with respect to the Debtors, and except as provided otherwise under the Plan, including the Debtor Release and the Third-Party Release, such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Equity Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan and allowing indenture trustees to exercise charging liens, priorities of payment, and indemnification rights.

G.    *Applicability of Insurance Policies.*

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Contract.  Except for the releases and exculpation provisions of <u>Article IX</u>, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers under any Insurance Contracts, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers under the Insurance Contracts.

Article VII.
**PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS**

A.    *Allowance of Claims*

After the Effective Date, and except as otherwise provided in this Plan, the Plan Administrator or the Litigation Trustee, as applicable, shall have and shall retain any and all available rights and defenses that the Debtors had with respect to any Claim, including the right to assert any objection to Claims based on the limitations imposed by section 502 of the Bankruptcy Code.  The Plan Administrator or the Litigation Trustee, as applicable, may contest the amount and validity of any Disputed Claim or contingent or unliquidated Claim in the ordinary course of business in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced.

B.    *Prosecution of Objections to Claims*

Except as otherwise specifically provided in the Plan, the Plan Administrator or the Litigation Trustee, as applicable, shall have the authority:  (1) to file, withdraw, or litigate to judgment objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.    *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Plan Administrator or the Litigation Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such

Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection; *provided* that if the Bankruptcy Court resolves the Allowed amount of a Claim, the Plan Administrator or the Litigation Trustee, as applicable, shall not be permitted to seek an estimation of such Claim). Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount or a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), as determined by the Bankruptcy Court, and the Plan Administrator or the Litigation Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim subject to applicable law.

D.      *No Distributions Pending Allowance*

If a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Claim becomes an Allowed Claim by settlement or Final Order; *provided* that if only a portion of a Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline, subject to any extensions thereof approved by the Bankruptcy Court, upon a motion on notice served on all affected claimants.

Article VIII.

## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

A.      *Conditions Precedent to Confirmation*

1.  The 363 Sale Transactions shall have been consummated pursuant to the 363 Sale Transaction Documentation.

2.  The aggregate amount of Allowed Priority WARN Act Claims shall not exceed $1,455,000.

3.  The aggregate amount of Estimated Allowed Administrative Claims (excluding the amount of any Allowed Professional Fee Claims) does not exceed $1,000,000.

4.  The aggregate amount of Allowed Professional Fee Claims of the Committee Professionals does not exceed $2,250,000.

B.     *Effect of Non-Occurrence of Conditions to Confirmation*

If the conditions precedent to Confirmation are not satisfied, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity; *provided* that with respect to the conditions set forth in Article VIII.A.2, 3, and 4, the Debtors, with the consent of the Required Consenting Creditors, may waive the conditions to Confirmation at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan.

C.     *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived in accordance with Article VIII.D hereof:

1.  the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Required Consenting Creditors and such order shall (A) not have been vacated and (B) not be subject to a stay pending appeal;

2.  the Plan, the Disclosure Statement, any 363 Sale Transaction Documentation and the Confirmation Order, and all other documents contemplated thereby, including any amendments, modifications, or supplements thereto, shall be acceptable to the Debtors and the Required Consenting Creditors.

3.  payment in full in Cash by the applicable Debtors of any and all accrued but unpaid reasonable and documented Claims for professional fees by the DIP Secured Parties or the Prepetition Secured Noteholder for which the Debtors have received invoices or estimates prior to the Effective Date shall have been made;

4.  the Plan Administrator acceptable to the Required Consenting Creditors shall have been appointed and vested with the authority under this Plan;

5.  the Plan Administration Agreement shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof;

6.  the Litigation Trustee reasonably acceptable to the Debtors and the Required Consenting Creditors, shall have been appointed and vested with the authority under this Plan;

7.  the Litigation Trust Agreement shall have been executed and delivered by all of the Entities that are parties thereto and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof;

8. all governmental and third-party approvals, authorizations, rulings, documents, and consents that may be necessary in connection with the 363 Sale Transactions, including from the FAA, shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on the 363 Sale Transactions (as applicable);

9. no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, limiting, preventing, or prohibiting the consummation of any 363 Sale Transactions or any related transactions;

10. the Professional Fee Escrow Amount shall have been transferred to the Professional Fee Escrow Account;

11. the Wind-Down Amount shall have been funded in accordance with this Plan;

12. the aggregate amount of Allowed Priority WARN Act Claims shall not have exceeded $1,455,000;

13. the aggregate amount of Estimated Allowed Administrative Claims (excluding the amount of any Allowed Professional Fee Claims) shall not have exceeded $1,000,000; and

14. the aggregate amount of Allowed Professional Fee Claims of the Committee Professionals shall not have exceeded $2,250,000.

### D.    Waiver of Conditions

The Debtors, with the consent of the Required Consenting Creditors, may waive any of the conditions to the Effective Date set forth above at any time, without any notice to parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan, except that there cannot be a waiver of the condition that the Bankruptcy Court shall have entered the Confirmation Order as set forth in Article VIII.C.1.

### E.    Effect of Non-Occurrence of Conditions to the Effective Date

If the Effective Date does not occur and upon a notice filed by the Debtors to state the non-occurrence of the Effective Date, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan, the Confirmation Order, or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

Article IX.

<strong>SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS</strong>

*A.*    ***Satisfaction of Claims and Termination of Interests.***

Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest in the Debtors that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan, once such Unimpaired Claim is paid in full.

*B.*    ***Releases by the Debtors***

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtors, their Estates, and their successors in interest (including the Plan Administrator) from any and all Causes of Action, whether known or unknown, including any Non-GUC Causes of Action and any derivative claims asserted on behalf of the Debtors, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors or their Estates, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the Prepetition Secured Notes or any ancillary documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Disclosure Statement, the Plan, the 363 Sale Transactions, or any contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Notes, the 363 Sale Transaction Documentation, the 363 Sale Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence. Notwithstanding the inclusion of any of the Released Parties as a potential party to any Transferred Causes of Action or retained Causes of Action, such parties shall remain Released Parties.**

**Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement**

50

(including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, or (iv) release any GUC Causes of Action.

## C.    *Releases by Holders of Claims and Interests*

As of the Effective Date, except as otherwise provided herein, each Releasing Party, including, for the avoidance of doubt, each holder of General Unsecured Claims or Convenience Claims that votes to accept the Plan and each holder of General Unsecured Claims or Convenience Claims that votes to reject the Plan and opts into the releases, is deemed to have released each Debtor and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' capital structure, the Debtors' in- or out-of-court restructuring efforts, the Prepetition Secured Notes or any ancillary documents related thereto, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the DIP Credit Agreement, the Disclosure Statement, the Plan, the 363 Sale Transactions, or any contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the Chapter 11 Cases, the DIP Credit Agreement, the Prepetition Secured Notes, the 363 Sale Transaction Documentation, the 363 Sale Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, fraud or gross negligence.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

Notwithstanding any language to the contrary in the Disclosure Statement, the Plan, and/or the Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers or (ii) enjoin, limit, impair, or delay the SEC from commencing

or continuing any claims, causes of action, proceeding, or investigations against any non-Debtor Person or non-Debtor Entity in any forum.

## D.    *Exculpation*

Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any claims or Causes of Action or for any act taken or omitted to be taken on or after the Petition Date and prior to or on the Effective Date in connection with, or related to, the administration of the Chapter 11 Cases, commencement of the Chapter 11 Cases, pursuit of Confirmation and consummation of this Plan, making Distributions, the Disclosure Statement, the Sale Process, the Sale Order, or the solicitation of votes for, or Confirmation of, this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtors; or the transactions or documentation in furtherance of any of the foregoing, including any postpetition, pre-Effective Date act taken or omitted to be taken in connection with or in contemplation of any restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan; *provided, however*, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (ii) the rights of any Person or Entity to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with this Plan or assumed pursuant to this Plan or Final Order of the Bankruptcy Court; <u>provided</u>, <u>further</u>, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.  The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.  Notwithstanding the foregoing, nothing in this <u>Article IX.D</u> shall or shall be deemed to prohibit the Debtors from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any Person that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtors, in each case unless otherwise expressly provided for in this Plan.  The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

## E.    *Injunction*

Except as otherwise provided in the Plan or the Confirmation Order (and, for the avoidance of doubt, subject to <u>Article III.C</u>), all entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that:  (a) are consensually compromised or settled under the Plan; (b) have been released pursuant to Article <u>IX.B</u> of the Plan; (c) have been released pursuant to Article <u>IX.C</u> of the Plan, (d) are subject to exculpation pursuant to Article <u>IX.D</u> of the Plan (but only to the extent of the exculpation provided in Article <u>IX.D</u>

**of the Plan), or (e) are otherwise satisfied, stayed or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding on account of any such claims, interests, Causes of Action, or liabilities that have been consensually compromised or settled, or released or exculpated, as applicable, against the Debtors or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated).**

F.     *Setoffs and Recoupment*

Except as otherwise provided herein, the Plan Administrator and the Litigation Trustee pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or non-bankruptcy law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any claims, rights, and Causes of Action of any nature that the applicable Debtor may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order or otherwise); *provided* that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Plan Administrator or the Litigation Trustee, as applicable, of any such claims, rights, and Causes of Action.  The Plan Administrator  and the Litigation Trustee shall provide notice to the affected claimant of any setoffs or recoupments, and such claimant may challenge in Bankruptcy Court or any other court with jurisdiction any such setoffs or recoupments.

G.     *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released.

To the extent that any Holder of a Secured Claim that has been satisfied in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Plan Administrator that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of Uniform Commercial Code termination statements, deposit account control agreement terminations, and any other applicable filings or recordings, and the Plan Administrator shall be entitled to file Uniform Commercial Code terminations or to make any other such filings or recordings on such Holder's behalf.

Article X.
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, except to the extent set forth herein, and in addition to the matters over which the Bankruptcy

Court shall have retained jurisdiction pursuant to the Sale Order, if any, or any other order of the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

A.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

B.    decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Retained Professionals required by the Bankruptcy Code or the Plan;

C.    resolve any matters related to: (1) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (2) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (3) any dispute regarding whether a contract or lease is or was executory or expired;

D.    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

E.    adjudicate, decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

F.    adjudicate, decide or resolve any and all matters related to Causes of Action;

G.    adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

H.    resolve any cases, controversies, suits, or disputes that may arise in connection with General Unsecured Claims or Convenience Claims, including the establishment of any bar dates, related notices, claim objections, allowance, disallowance, estimation and distribution;

I.    enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

J.    enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

K.    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any contract, instrument, release

54

or other agreement or document that is entered into or delivered pursuant to the Plan, or any Entity's rights arising from or obligations incurred in connection with the Plan;

L.      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

M.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

N.      resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

O.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

P.      determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

Q.      enter one or more orders or final decrees concluding or closing the Chapter 11 Cases;

R.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

S.      consider any modification of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

T.      determine requests for payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

U.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

V.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

W.      hear and determine all disputes involving any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

X.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the releases, injunctions, and exculpations provided under Article IX of the Plan;

55

Y.     enforce all orders previously entered by the Bankruptcy Court; and

Z.     hear any other matter over which the Court has jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Article X of the Plan, the provisions of Article X of the Plan shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Article XI.

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN**

A.     *Modification of Plan*

Subject to the limitations contained in the Plan, the Debtors or the Plan Administrator, as applicable, reserve the right to, in accordance with the Bankruptcy Code and the Bankruptcy Rules, as acceptable to the Required Consenting Creditors: (1) amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, in accordance with section 1127(a) of the Bankruptcy Code; (2) amend or modify the Plan after the entry of the Confirmation Order and before substantial consummation of the Plan in accordance with section 1127(b) of the Bankruptcy Code upon order of the Bankruptcy Court; and (3) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan upon order of the Bankruptcy Court.

B.     *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.     *Revocation of Plan; Reservation of Rights if Effective Date Does Not Occur*

Subject to the conditions to the Effective Date, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order and to file subsequent plans.  If the Debtors revoke or withdraw the Plan or if entry of the Confirmation Order does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

Article XII.

## MISCELLANEOUS PROVISIONS

*A.    Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Plan Administrator, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

*B.    Reservation of Rights*

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

*C.    Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries or guardian, if any, of each Entity.

*D.    Service of Documents*

Any notice, direction or other communication given regarding the matters contemplated by this Plan must be in writing, sent by personal delivery, electronic mail or courier, and addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| Virgin Orbit Holdings, Inc.<br>4022 East Conant Street<br>Long Beach, California 90808<br>Attn: Derrick Boston<br>Email: Derrick.Boston@virginorbit.com | Latham & Watkins LLP<br>355 South Grand Avenue, Suite 100<br>Los Angeles, California 90071<br>Attn:   Jeff E. Bjork<br>Email: jeff.bjork@lw.com<br><br>-and-<br><br>Latham & Watkins LLP<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Attn:    George Klidonas; Anupama Yerramalli<br>Emails: george.klidonas@lw.com<br>          anu.yerramalli@lw.com<br><br>-and-<br><br>Young Conaway Stargatt & Taylor LLP<br>Rodney Square, 1000 North King Street<br>Wilmington, Delaware 19801<br>Attn: Robert S. Brady; Michael R. Nestor; Kara Hammond Coyle; and Allison S. Mielke<br>Emails:    rbrady@ycst.com<br>          mnestor@ycst.com<br>          kcoyle@ycst.com<br>          amielke@ycst.com |

| **Counsel to the Committee** | **Counsel to the DIP Lenders and the Prepetition Secured Noteholder** |
|---|---|
| Hogan Lovells US LLP<br>1999 Avenue of the Stars<br>Suite 1400<br>Los Angeles, CA 90067<br>Attn: David P. Simonds, Edward J.<br>    McNeilly, and Kaitlyn Aliza<br>    Hittelman<br>Email: david.simonds@hoganlovells.com<br>    edward.mcneilly@hoganlovells.com<br>    kaitlyn.hittelman@hoganlovells.com<br><br>-and-<br><br>Hogan Lovells US LLP<br>390 Madison Avenue<br>New York, NY 10017<br>Attn: David Dunn, John D. Beck,<br>    Christopher R. Bryant, and Katherine<br>    M. Lynn<br>Email: david.dunn@hoganlovells.com<br>    john.beck@hoganlovells.com<br>    chris.bryant@hoganlovells.com<br>    katherine.lynn@hoganlovells.com<br><br>-and-<br><br>Potter Anderson & Corroon LLP<br>1313 North Market Street, 6th Floor<br>Wilmington, Delaware 19801<br>Attn: M. Blake Cleary, L. Katherine<br>    Good, and Katelin A. Morales<br>Email: bcleary@potteranderson.com<br>    kgood@potteranderson.com<br>    kmorales@potteranderson.com | Davis Polk & Wardwell LLP<br>450 Lexington Ave<br>New York, New York 10017<br>Attn: Brian M. Resnick, Josh Sturm, and<br>    Jarret Erickson<br>Email: brian.resnick@davispolk.com<br>    joshua.sturm@davispolk.com<br>    jarret.erickson@davispolk.com<br><br>-and-<br><br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street, 16th Floor<br>Wilmington, Delaware 19899-1347<br>Attn: Robert J. Dehney and Eric D. Schwartz<br>Email: rdehney@morrisnichols.com<br>    eschwartz@morrisnichols.com |

After the Effective Date, the Plan Administrator has authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to a pre-Effective Date request under Bankruptcy Rule 2002 to those Entities who have filed renewed requests pursuant to Bankruptcy Rule 2002.

In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days of the date of entry of the Confirmation Order, the Debtors shall serve the Notice of Confirmation by

United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address, provided that the Debtors are unable to ascertain new address information for such Entity after a commercially reasonable search. Mailing of the Notice of Confirmation in the time and manner set forth in this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

E.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

F.    *Entire Agreement*

On the Effective Date, the Confirmation Order, Plan, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects.

G.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to Debtors not incorporated in Delaware shall be governed by the laws of the state of incorporation of the applicable Debtor.

H.    *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall initially be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date to the extent practicable. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' case website at https://cases.ra.kroll.com/virginorbit/ or the Bankruptcy Court's website at

www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.    *Nonseverability of Plan Provisions upon Confirmation*

      If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) non-severable and mutually dependent.

J.    *Conflicts*

      To the extent that any provision of the Disclosure Statement or the Plan Supplement (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  To the extent that any provision of the Plan, the Plan Supplement, or the Disclosure Statement conflicts with or is in any way inconsistent with any provision of the Confirmation Order, the Confirmation Order shall govern and control.

K.    *Dissolution of the Committee*

      The Committee shall dissolve, and the current and former members of the Committee shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases on the Effective Date; *provided* that the Committee and its professionals shall have the right to file, prosecute, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Article II.A.2 hereof.

Respectfully submitted,

Dated: July 28, 2023

**Virgin Orbit Holdings, Inc.**

By:      */s/ Daniel M. Hart*

Name:   Daniel M. Hart

Title:    Chief Executive Officer

**Vieco USA, Inc.**

By:      */s/ Daniel M. Hart*

Name:   Daniel M. Hart

Title:    Chief Executive Officer

**Virgin Orbit, LLC**

By:      */s/ Daniel M. Hart*

Name:   Daniel M. Hart

Title:    Chief Executive Officer

**JACM Holdings, Inc.**

By:      */s/ Daniel M. Hart*

Name:   Daniel M. Hart

Title:    Chief Executive Officer

**Virgin Orbit National Systems, LLC**

By:      */s/ Mark Baird*

Name:   Mark Baird

Title:    President

[*Signature Page to Plan*]

## **Exhibit B**

**Confirmation Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VIRGIN ORBIT HOLDINGS, INC., *et al.*,[1] | ) | Case No. 23-10405 (KBO) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |

**NOTICE OF (A) ENTRY OF ORDER (A) CONFIRMING THE FOURTH AMENDED
JOINT CHAPTER 11 PLAN OF VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR
AFFILIATES AND (B) OCCURRENCE OF EFFECTIVE DATE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On [ ● ], 2023, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), entered the order [Docket No. [ ● ]] (the "**Confirmation Order**") approving the *Fourth Amended Joint Chapter 11 Plan or Virgin Orbit Holdings, Inc. and Its Debtor Affiliates* [Docket No. [ ● ]] (as modified, amended, and including all supplements and exhibits thereto, the "**Plan**")[2] (attached as Exhibit A to the Confirmation Order) of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**").[2]

2.      **The Effective Date of the Plan was [ ● ], 2023.**

3.      **Administrative Claims Bar Date.**  As provided in Article II.A.3 of the Plan, all requests for payment of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, postpetition tax claims arising under section 503(b)(1)(D) of the Bankruptcy Code, claims arising under section 503(b)(9) of the Bankruptcy Code, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that accrued on or before the Effective Date, must be filed with the Bankruptcy Court and served on the Plan Administrator (Brian Whittman Alvarez & Marsal North America, LLC 540 West Madison Street, Suite 1800 Chicago, IL 60661 Email: bwhittman@alvarezandmarsal.com) **no later than [ ● ], 2023** (the "**Administrative Claims Bar Date**").  If a Holder of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, postpetition tax claims arising under section 503(b)(1)(D) of the Bankruptcy Code, claims arising under section 503(b)(9) of the Bankruptcy Code, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claims Bar Date, such Administrative Claim shall be forever barred, estopped, and

---

[1]    The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445). The Debtors' mailing address for purposes of these cases is [ ● ].

[2]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan and the Confirmation Order, as applicable.

enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Litigation Trustee, or the Plan Administrator.

4.      **Deadline to File Professional Fee Claims.**  As provided in Article II.A.2 of the Plan, all final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred on and after the Petition Date and prior to and on the Effective Date must be Filed **no later than [ ⬤ ], 2023**.  Any party seeking payment of a Professional Fee Claim that arises under sections 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code must File a motion for approval of the same.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

5.      **Deadline to File Rejection Claims.**  As provided in Article V.C of the Plan, unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases by virtue of the Plan must be **<u>actually received</u>** by the Notice and Claims Agent (Virgin Orbit Holdings, Inc. Claims Processing Center  c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232) **no later than [ ⬤ ], 2023**.  The deadline for Governmental Units to file any such Proofs of Claim shall be the later of [ ⬤ ], 2023 or the Governmental Bar Date as set forth in the Bar Date Order.  Any Proofs of Claim arising from the rejection of the Executory Contracts and Unexpired Leases that are not timely filed shall be forever disallowed and barred, absent order of the Bankruptcy Court to the contrary.  All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

6.      **Accessing Documents for These Chapter 11 Cases.**  The Confirmation Order, the Plan, and copies of all documents filed in these Chapter 11 Cases are available free of charge by: (a) visiting the Debtors' case website at https://cases.ra.kroll.com/virginorbit; (b) calling (646) 440-4773 (international) or (833) 570-5269 (domestic, toll free); or (c) sending an electronic message to VirginOrbitInfo@ra.kroll.com.

7.      **Future Receipt of Documents.**  After the Effective Date, the Plan Administrator is authorized to (a) limit the list of Entities receiving documents pursuant to a pre-Effective Date request under Bankruptcy Rule 2002 to those Entities who have filed renewed requests pursuant to Bankruptcy Rule 2002 after the Effective Date, and (b) require that such parties file a renewed request to receive documents pursuant to Bankruptcy Rule 2002 to continue receiving documents.

Dated: [ ● ], 2023
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ *[DRAFT]*_____
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Allison S. Mielke (No. 5934)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  rbrady@ycst.com
          mnestor@ycst.com
          kcoyle@ycst.com
          amielke@ycst.com

-and-

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeff.bjork@lw.com

George Klidonas (admitted *pro hac vice*)
Anupama Yerramalli (admitted *pro hac vice*)
Liza L. Burton (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Emails: george.klidonas@lw.com
          anu.yerramalli@lw.com
          liza.burton@lw.com

*Counsel for Debtors and Debtors in Possession*

---

**IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION LLC BY CALLING (646) 440-4773 (INTERNATIONAL) OR (833) 570-5269 (DOMESTIC, TOLL FREE)**

---

**EXHIBIT B**

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| VIRGIN ORBIT HOLDINGS, INC., *et al.*,[1] | Case No. 23-10405 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos.  532, 542, 559 & 571** |

**ORDER CONFIRMING THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF
VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR AFFILIATES**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**")[2] having:

a. commenced, on April 4, 2023 (the "**Petition Date**"), these chapter 11 cases (these "**Chapter 11 Cases**") by filing voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**");

b. continued to operate their business and manage their properties during these Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on April 19, 2023, the *Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 96] and *Disclosure Statement for Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 97];

d. filed, on June 12, 2023, the revised *Second Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 439] and the revised *Disclosure Statement for Second Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 440];

---

[1]  The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445).  The Debtors' mailing address for purposes of these cases is 3880 McGowen Street, Long Beach, CA 90808.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein), as applicable.  The rules of interpretation set forth in Article I.B. of the Plan apply.

e.  filed, on June 20, 2023, the *Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 459-1] and the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 459-2];

f.  obtained, on June 20, 2023, the entry of the *Order (A) Approving the Disclosure Statement; (B) Establishing the Voting Record Date, Voting Deadline, and Other Deadlines; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan; (D) Approving the Manner and Forms of Notice and Other Related Documents; and (E) Granting Related Relief* [Docket No. 462] (the "**Disclosure Statement Order**") approving the Disclosure Statement, solicitation procedures (the "**Solicitation Procedures**"), and related notices, forms, and ballots (collectively, the "**Solicitation Packages**");

g.  filed, on June 20, 2023, the solicitation version of the *Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 463] and the solicitation version of the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 465] (as may be modified, amended, or supplemented from time to time, the "**Disclosure Statement**");

h.  caused the Solicitation Packages and notice of the Confirmation Hearing (the "**Confirmation Hearing Notice**") and the deadline for objecting to confirmation of the Plan ("**Confirmation**") to be distributed on or about June 20, 2023 in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Disclosure Statement Order, and the Solicitation Procedures, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 541] and the *Affidavit of Supplemental Service of Solicitation Materials* [Docket No. 545] (collectively, the "**Certificates of Solicitation**");

i.  caused notice of the Confirmation Hearing Notice to be published, on June 15, 2023, in *The New York Times* (national edition) as well as in the *Los Angeles Times*, as evidenced by the *Certificate of Publication* [Docket No. 485] and *Proofs of Publication* [Docket Nos. 485-A, 485-B] attached thereto (collectively, the "**Publication Certificates**" and, together with the Certificates of Solicitation, the "**Certificates**");

j.  filed, on July 14, 2023, the *Plan Supplement for Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates* [Docket No. 532] (the "**Initial Plan Supplement**");

30603751.1

k.  filed, on July 18, 2023, the *Revised Exhibit E to the Plan Supplement* [Docket No. 542] (the "**Second Plan Supplement**")

l.  filed, on July 24, 2023, the *Revised Exhibit F to the Plan Supplement* [Docket No. 559] (together with the Initial Plan Supplement, and the Second Plan Supplement, the "**Plan Supplement**");

m.  filed, on July 26, 2023, the *Fourth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 571] (as may be modified, amended, or supplemented from time to time, the "**Plan**"), a copy of which is attached hereto as **Exhibit A**;

n.  filed, on July 26, 2023, the *Debtors' Memorandum of Law in Support of an Order Confirming the Fourth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 575] (the "**Confirmation Brief**");

o.  filed, on July 26, 2023, the *Declaration of ~~Stanislav Kesler~~James Daloia of Kroll Restructuring Administration LLC Regarding the Solicitation and Tabulation of Ballots Cast on the ~~Fourth~~Third Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 572] (the "**Voting Report**"); and

p.  filed, on July 26, 2023, the *Declaration of Brian Whittman  in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 574] ("**Whittman Declaration**") and the *Declaration of Alan J. Carr in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Virgin Orbit Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 573] (the "**Carr Declaration**" and, together with the Whittman Declaration, the "**Confirmation Declarations**").

The Bankruptcy Court having:

a.  set July 21, 2023 at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing objections in opposition to the Plan;

b.  set July 21, 2023 at 5:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan;

c.  set July 28, 2023 at 10:30 a.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

d.  reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Confirmation Declarations, the Voting Report, the Confirmation Hearing Notice, the Certificates, the affidavits of service, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

e.   held the Confirmation Hearing;
f.   considered all testimony presented and evidence admitted at the Confirmation Hearing, as applicable;
g.   overruled any and all objections to the Plan and Confirmation and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and
h.   taken judicial notice of all papers and pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and that the legal and factual bases set forth in the documents filed in support of Confirmation and other evidence presented at the Confirmation Hearing and the record of these Chapter 11 Cases establish just cause for the relief granted herein, and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.      Jurisdiction and Venue**

1.       Venue in the Bankruptcy Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b).

30603751.1

**B.**     **Burden of Proof**

2.     The Debtors have met their burden of proving that the Plan complies with each element of sections 1129(a) and, to the extent applicable, 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

**C.**     **Notice of the Confirmation Hearing**

3.     Notice of the Confirmation Hearing was appropriate and satisfactory and is approved in all respects.

**D.**     **Confirmation of the Plan**

4.     The Plan, a copy of which is attached as **Exhibit A**, as may be amended by this Confirmation Order, is confirmed pursuant to section 1129 of the Bankruptcy Code.  The terms of the Plan, the documents contained in the Plan Supplement, and any other documents filed in connection with the Plan and/or executed or to be executed to effectuate, implement or consummate the transactions contemplated by the Plan, and all amendments and modifications thereof made in accordance with the Plan and this Confirmation Order, are hereby approved by this Confirmation Order; *provided that*, the Debtors may make non-material modifications to the Plan Supplement prior to the Effective Date.

5.     Any and all objections to confirmation of the Plan that have not been withdrawn or resolved prior to the Confirmation Hearing are hereby overruled**, except to the extent sustained by the Court on the record at the Confirmation Hearing**.

6.     The documents contained in the Plan Supplement are integral to the Plan and are approved by the Bankruptcy Court and the Debtors are authorized to take all actions required under the Plan and the Plan Supplement documents to effectuate the Plan and the transactions contemplated thereby.

30603751.1

5

7.     The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference, and are an integral part of this Confirmation Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

8.     The compromises, settlements, releases, exculpations, and injunctions set forth in Article IX of the Plan are approved, and will be effective immediately and binding on the Effective Date.

9.     The Debtors shall cause to be served a notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in form attached hereto as **Exhibit B** (the "**Confirmation Notice**"), on all parties served with the Confirmation Hearing Notice as soon as reasonably practicable after the Effective Date; *provided that,* no notice of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  The Debtors shall cause the Confirmation Notice to be posted on the website of these Chapter 11 Cases:  https://cases.ra.kroll.com/virginorbit/.  Such service in the time and manner set forth herein will provide good, adequate, and sufficient notice under the circumstances, and shall be deemed to comply with Bankruptcy Rules 2002(a)(7), 2002(f)(3) and (f)(7), 2002(1), 3002(c)(4), and 3020(c)(2).

30603751.1

E.    **Proposal of the Plan in Good Faith**

10.    The Plan has been proposed in good faith and not by any means forbidden by law. In so finding, the Bankruptcy Court has considered the totality of the circumstances of these Chapter 11 Cases.  The Plan is the result of extensive, good-faith, and arm's-length negotiations among the Debtors and their principal constituencies, including for the avoidance of doubt, VIL, each of whom shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.  The transactions contemplated by the Plan are proposed in good faith, are in the best interests of the Debtors' Estates, and will serve to maximize value for all stakeholders.

F.    **Solicitation**

11.    The transmittal and service of the solicitation materials required by the Disclosure Statement Order were timely, adequate, appropriate, and sufficient under the circumstances.  The Solicitation Procedures complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable non-bankruptcy rules, laws, and regulations.  The modifications to the Plan as of the date of this Confirmation Order are not of the type to require additional disclosure or solicitation of the Plan under Bankruptcy Rule 3019 and comply in all respects with section 1127 of the Bankruptcy Code.

12.    Based on the record before the Bankruptcy Court, including the Voting Report and Certificates, the Debtors have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and not by any means forbidden by law.

G.    **Voting**

13.    As described in the Voting Report, Holders of Claims in Classes 3, 4, and 5 were entitled to vote to accept or reject the Plan~~, and~~.  Holders of Claims in **Class 3 did not vote on**

**the Plan. Pursuant to Article III.F of the Plan, Class 3 is deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. Holders of Claims in** Classes 4 and 5 voted to accept the Plan. All other Classes of Claims and Interests were not entitled to vote on the Plan pursuant to sections 1126 of the Bankruptcy Code. All procedures used to tabulate the Ballots were fair, reasonable, and conducted in accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all other applicable non-bankruptcy rules, laws, and regulations.

**H.    Immediate Binding Effect**

14.    Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, from and after the entry of this Confirmation Order and upon the occurrence of the Effective Date, the terms of the Plan, and the documents and instruments contained in the Plan Supplement and this Confirmation Order shall be deemed immediately effective and enforceable binding upon: (a) the Debtors; (b) any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan); (c) any and all non-debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors; (d) all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan; and (e) the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

**I.    Treatment of Executory Contracts and Unexpired Leases**

15.    The rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases as set forth in Article V of the Plan is hereby authorized. Except as otherwise set forth in

the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the

Plan are effective as of the Effective Date without the need for any further action or consents that

may otherwise be required under applicable non-bankruptcy law.

**J.    Administrative Claims Bar Date**

16.    As provided in Article II.A.3 of the Plan, all requests for payment of

Administrative Claims (other than DIP Facility Claims, Cure Costs, Professional Fee Claims,

postpetition tax claims arising under section 503(b)(1)(D) of the Bankruptcy Code, claims

arising under section 503(b)(9) of the Bankruptcy Code, or U.S. Trustee quarterly fees payable

pursuant to Article II.D of the Plan) that accrued on or before the Effective Date, must be filed

with the Bankruptcy Court and served on the Plan Administrator no later than the 30th day after

service of the Confirmation Notice.  If a Holder of an Administrative Claim (other than DIP

Facility Claims, Cure Costs, Professional Fee Claims, **postpetition tax claims arising under

section 503(b)(1)(D) of the Bankruptcy Code,** claims arising under section 503(b)(9) of the

Bankruptcy Code, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that

is required to, but does not, file and serve a request for payment of such Administrative Claim by

the Administrative Claims Bar Date, such Administrative Claim shall be forever barred,

estopped, and enjoined from asserting such Administrative Claims against the Debtors, their

Estates, the Litigation Trustee, or the Plan Administrator.  For the avoidance of doubt, nothing in

this Order or the Plan extends any deadline for the filing of any claims established in any

previously entered order of the Court, including the *Order (I) Establishing Bar Dates and

Related Procedures for Filing Proofs of Claim (Including for Claims Arising Under Section

503(b)(9) of the Bankruptcy Code), (II) Approving the Form and Manner of Notice Thereof, and

(III) Granting Related Relief* [Docket No. 153].

**K.      Deadline to File Professional Fee Claims**

17.      As provided in Article II.A.2 of the Plan, all final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred on and after the Petition Date and prior to and on the Effective Date must be Filed no later than **[thirtyforty-five (3045)]** days after the Effective Date.  Any party seeking payment of a Professional Fee Claim that arises under sections 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code must File a motion for approval of the same.  **Motions for approval of all final requests for payment of Professional Fee Claims shall include a 21-day objection period after such motions are filed.**  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

**L.      Deadline to File Rejection Claims**

18.      As provided in Article V.C of the Plan, unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases by virtue of the Plan must be Filed with the Notice and Claims Agent within thirty (30) days **of the Effective Dateafter service of the Confirmation Notice substantially in the form annexed to this Order as Exhibit B**.  The deadline for Governmental Units to File any such Proofs of Claim shall be the later of thirty (30) days after **service of** the **Effective DateConfirmation Notice** or the Governmental Bar Date as set forth in the Bar Date Order.  Any Proofs of Claim arising from the rejection of the Executory Contracts and Unexpired Leases that are not timely filed shall be forever disallowed and barred, absent order of the Bankruptcy Court to the contrary.  All Allowed Claims arising from the

rejection of the Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

**M.    Releases and Exculpation**

19.    All release and exculpation provisions contained in the Plan, including, without limitation, those contained in Article IX of the Plan, are hereby authorized, approved, and shall be effective and binding on all persons and entities, to the extent expressly described in the Plan. The releases **given by the Debtors** contained in Article IX.**B** of the Plan are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by Article IX.**B** of the Plan; (c) in the best interests of the Debtors and ~~all Holders of Claims and Interests~~**the Estates**; (d) fair, equitable, and reasonable; and (e**) given and made after due notice and opportunity for hearing. The releases given by the Releasing Parties contained in Article IX.C of the Plan are (a) consensual; and (b**) given and made after due notice and opportunity for hearing.  The exculpation provided by Article IX.D of the Plan for the benefit of the Exculpated Parties is ~~appropriately tailored to the circumstances of these Chapter 11 Cases~~**consistent with applicable law**.

**N.    The UCC Settlement**

20.    Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates and implements the UCC Settlement, a compromise and settlement of numerous issues and disputes between and among the Debtors, the Committee, the Prepetition Secured Noteholder, and the DIP Lenders designed to achieve a reasonable and effective resolution of these Chapter 11 Cases. Except as otherwise expressly set forth in the Plan, the UCC Settlement constitutes a settlement of all potential issues and Claims between and among

the Debtors, the Committee, the Prepetition Secured Noteholder, and the DIP Lenders.  The UCC Settlement is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates, and the UCC Settlement is approved.

**O. Litigation Trust**

**21.  On the Effective Date, the Debtors shall transfer and assign to the Litigation Trust all of their right, title, and interest in and to all of the Litigation Trust Assets, and in accordance with Bankruptcy Code Section 1141, all such assets shall automatically vest in the Litigation Trust free and clear of all Claims and Liens, subject only to (a) as set forth in the Plan, the Allowed Claims of the Holders of GUC Litigation Trust Interests, the VIL Litigation Trust Interests of the Prepetition Secured Party and DIP Secured Parties solely with respect to Estate Tax Refunds and, as it relates to the cash to fund the Convenience Claims, the Holders of Allowed Convenience Claims and (b) as set forth in the Plan and in the Litigation Trust Agreement, the expenses of the Litigation Trust.  Thereafter, the Debtors shall no longer have any interest in or with respect to the Litigation Trust Assets.**

**P. Litigation Trust and Litigation Trustee**

**22.  The Litigation Trust will be managed and administered by the Litigation Trustee—Matthew Dundon of Dundon Advisers LLC—pursuant to the Litigation Trust Agreement, subject to the supervision of the Litigation Trust Oversight Committee, without need for any other notice to or ay vote, consent, authorization, approval, ratification or other action by any Entity or any directors, stockholder, securityholder, manager, member, or partner (or board thereof) of any Entity.  The Litigation Trustee shall retain and have all the**

~~rights, powers, and duties necessary to carry out his or her responsibilities under the Plan and the Litigation Trust Agreement and as otherwise provided in this Confirmation Order. Q. Plan Administrator~~

~~23. The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan, the Plan Administration Agreement and as otherwise provided in this Confirmation Order, including selling, disposing, liquidating, receiving, holding, investing, supervising, protecting, and abandoning the Debtors' assets, in each case with the consent of VIL. The manner for the selection of the Plan Administrator is provided in the Plan and the Plan Administration Agreement. For the avoidance of doubt, the selection of Brian Whittman of Alvarez and Marsal North America, LLC to serve as the Plan Administrator and the process therefor is consistent with the interests of Holders of Claims and Interests and public policy.~~

**O.    ~~R.~~ The WARN Settlement**

**21.    ~~24.~~** The WARN Settlement constitutes acceptance by all Class Members of treatment of any alleged claims in the Chapter 11 Cases arising out of or relating to the WARN Act and/or the CAL-WARN Act and that such treatment with respect to the Class Representative and Class Members complies with section 1129, including section 1129(a)(9), of the Bankruptcy Code. To the extent any holders of alleged claims in the Chapter 11 Cases arising out of or relating to the WARN Act and/or the CAL-WARN Act have opted-out of the Settlement and have not filed a Proof of Claim prior to the applicable Bar Date, such alleged claims shall not be Allowed for distribution purposes absent entry of a Final Order allowing such late-Filed Claim.

**P.**     **Provision Regarding the United States**

~~S. Certain Governmental Matters~~

~~25. Each Governmental Unit is hereby authorized to accept any and all documents, mortgages, security agreements, financing statements, and instruments necessary or appropriate to effectuate, implement, or consummate the winding down contemplated by the Plan. To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code and any applicable non-bankruptcy law, (a) the issuance, transfer or exchange of any securities, instruments, or documents; (b) the creation of any lien, mortgage, deed of trust or other interest; (c) any transfers of property or beneficial ownership; (d) any assumption, assignment, or sale of interests in Executory Contracts and Unexpired Leases; (e) the issuance renewal, modification or securing of indebtedness by such means; (f) the filing of any document, including but not limited to any certificate, amendment, or tax return; and (g) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, franchise tax, business, license, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any tax, recordation fee, or governmental assessment.~~

**22.** ~~26.~~ As to the United States, nothing in the Plan, this Confirmation Order, any Plan Supplement, or any implementing Plan documents, notwithstanding any provision to the contrary

30603751.1

14

contained therein, shall: (a) enjoin or affect any Governmental Unit's setoff rights under federal law, as recognized in section 553 of the Bankruptcy Code, and/or recoupment rights, and such rights shall be preserved and are unaffected; or (b) be construed as a compromise or settlement of any liability, claim, Cause of Action or interest of the United States.

**Q.**    ~~T.~~ **Provision Regarding ACA International LLC**

**23.**    ~~27.~~ In full and final satisfaction of Claim Number 381 filed by ACA International LLC ("**ACA**") against Debtor Virgin Orbit, LLC (the "**ACA Claim**"), including its asserted liens, its limited sale objection [Docket No. 265], and the ACA Lien Payment Escrow (as defined in Docket No. 364), (a) the automatic stay is lifted to allow ACA to foreclose its possessory lien on the Debtors' telemetry rack currently in ACA's possession (and as identified in the ACA Claim), as to which the Debtors shall have no further right, title or interest and the proceeds of which shall belong solely to ACA; (b) the Debtors shall, as soon as practicable, following entry of this Order, pay $35,000 to ACA from the ACA Lien Payment Escrow; and (c) the balance of the ACA Claim shall be reduced and allowed as a General Unsecured Claim in Class 4 in the amount of $183,805.  Upon entry of this Order and payment to ACA as set forth in (b) above, ACA's asserted liens against the Debtors' property other than the telemetry rack shall be deemed terminated and the balance of the ACA Lien Payment Escrow shall be released to the Debtors.

**R.**    ~~U.~~ **Provision Regarding Texas Comptroller**

**24.**    ~~28.~~ Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any Entity, other than the Debtors, from any liability owed to the Texas Comptroller of Public Accounts (the "**Texas Comptroller**") for a tax debt, including interest and penalties on such tax.  This provision is not an admission by any party that any such liability exists.

30603751.1

15

25.    ~~29.~~ Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Texas Comptroller's setoff rights under 11 U.S.C. § 553.  This provision is not admission by any party that any such setoff rights exist.

26.    **Allowed Priority Tax Claims owed to the Texas Comptroller shall be paid in full: (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty (60) months of the Petition Date; or (3) as otherwise agreed to by the Texas Comptroller.  The Texas Comptroller's Allowed Priority Tax Claims shall accrue interest at the statutory rate of interest from the Effective Date until paid in full.**

27.    ~~30.~~ If the Debtors fail to cure a failure to make a payment to the Texas Comptroller pursuant to the terms of the Plan, then within ten (10) calendar days after service of written notice of default from the Texas Comptroller, the Texas Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in the Bankruptcy Court.  Notice of a default shall be served by first class mail and email as follows and upon:  (a) the Debtors: Virgin Orbit Holdings, Inc., Attn:  Brian Whittman (email: bwhittman@alvarezandmarsal.com), and (b) counsel to the  Debtors: (i) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 11101, Attn:  George Klidonas and Anupama Yerramalli (email: george.klidonas@lw.com and anu.yerramalli@lw.com), and (ii) Young, Conaway, Stargatt & Taylor, LLP, 1000 North King Street, ~~Wimington~~ **Wilmington**, DE 19801, Attn:  Kara Hammond Coyle and Allison Mielke (email: kcoyle@ycst.com and amielke@ycst.com).  The Debtors may cure up to two (2) defaults.  Upon a third default, the Texas Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt in accordance with this Confirmation Order.

**S.** ~~V.~~ **Nonseverability of Plan Provisions Upon Confirmation**

**28.** ~~31.~~ This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (c) non-severable and mutually dependent.

**T.** ~~W.~~ **Post-Confirmation Modifications**

**29.** ~~32.~~ Without need for further order or authorization of the Bankruptcy Court, the Debtors are authorized to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein). Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their respective rights to materially alter, amend, or modify the Plan with respect to such Debtors, one or more times, after Confirmation, and, to the extent necessary **or required under section 1127 of the Bankruptcy Code and/or Bankruptcy Rule 3019**, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X of the Plan.

**U.** ~~X.~~ **Conflicts**

**30.** ~~33.~~ To the extent that any provision of the Disclosure Statement or the Plan Supplement (or any exhibits, appendices, supplements, or amendments to any of the foregoing),

30603751.1

conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  To the extent that any provision of the Plan, the Plan Supplement, or the Disclosure Statement conflicts with or is in any way inconsistent with any provision of this Confirmation Order, this Confirmation Order shall govern and control.

## V.    ~~Y.~~ Dissolution of the Committee

**31.**    ~~34.~~ The Committee shall dissolve, and the current and former members of the Committee shall be released and discharged from all rights and duties arising from, or related to, these Chapter 11 Cases on the Effective Date; *provided that*, the Committee and its professionals shall have the right to file, prosecute, review, and object to any applications for compensation and reimbursement of expenses filed in accordance with Article II.A.2 of the Plan.

## W.    ~~Z.~~ Stay of Confirmation

**32.**    ~~35.~~ Any applicable stay of effectiveness provided in Bankruptcy Rules 3020(e), 6004(g), 6004(h), 6006(d), and 7062, or otherwise shall not apply to this Confirmation Order. This Confirmation Order shall be effective and enforceable immediately upon its entry.  Subject to the occurrence of the Effective Date, the provisions of the Plan shall be immediately effective and enforceable and deemed binding upon any Holder of a Claim against or Interest in the Debtors, such Holder's respective successors and assigns (whether or not the Claim or Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a Distribution under the Plan), all Entities that are party or subject to the settlements, compromises, releases, and injunctions described in the Plan, and any and all non-Debtor counterparties to Executory Contracts, Unexpired Leases, and any other prepetition agreements. The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of the conditions precedent to

the Effective Date set forth in Article VIII of the Plan. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan, the Plan Supplement, and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

## X.    AA. Final Order

33.    36. This Confirmation Order is a final order and the period within which an appeal must be filed commences upon the entry hereof.

**<u>Exhibit A</u>**

**Plan**

*[Intentionally Omitted]*

**<u>Exhibit B</u>**

**Confirmation Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VIRGIN ORBIT HOLDINGS, INC., *et al.*,[1] | ) | Case No. 23-10405 (KBO) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |

**NOTICE OF (A) ENTRY OF ORDER (A) CONFIRMING THE FOURTH AMENDED JOINT CHAPTER 11 PLAN OF VIRGIN ORBIT HOLDINGS, INC. AND ITS DEBTOR AFFILIATES AND (B) OCCURRENCE OF EFFECTIVE DATE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On [    ], 2023, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), entered the order [Docket No. [    ]] (the "**Confirmation Order**") approving the *Fourth Amended Joint Chapter 11 Plan or Virgin Orbit Holdings, Inc. and Its Debtor Affiliates* [Docket No. [    ]] (as modified, amended, and including all supplements and exhibits thereto, the "**Plan**")[2] (attached as Exhibit A to the Confirmation Order) of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**").[2]

2.      **The Effective Date of the Plan was [    ], 2023.**

3.      **Administrative Claims Bar Date.**  As provided in Article II.A.3 of the Plan, all requests for payment of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, postpetition tax claims arising under section 503(b)(1)(D) of the Bankruptcy Code, claims arising under section 503(b)(9) of the Bankruptcy Code, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that accrued on or before the Effective Date, must be filed with the Bankruptcy Court and served on the Plan Administrator **(Brian Whittman Alvarez & Marsal North America, LLC 540 West Madison Street, Suite 1800  Chicago, IL 60661 Email: bwhittman@alvarezandmarsal.com) no later than [      ], 2023 (the "Administrative Claims Bar Date")**.  If a Holder of an Administrative Claim (other than DIP Facility Claims, Cure Costs, Professional Fee Claims, **postpetition tax claims arising under section 503(b)(1)(D) of the Bankruptcy Code,** claims arising under section 503(b)(9) of the Bankruptcy Code, or U.S. Trustee quarterly fees payable pursuant to Article II.D of the Plan) that is required to, but does not, file and serve a request for payment of such Administrative

---

[1]    The Debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Virgin Orbit Holdings, Inc. (6914); Virgin Orbit National Systems, LLC (3801); Vieco USA, Inc. (0492); Virgin Orbit, LLC (9648); and JACM Holdings, Inc. (1445).  The Debtors' mailing address for purposes of these cases is [    ].

[2]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan and the Confirmation Order, as applicable.

Claim by the Administrative Claims Bar Date, such Administrative Claim shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Litigation Trustee, or the Plan Administrator.

4.    **Deadline to File Professional Fee Claims.**  As provided in Article II.A.2 of the Plan, all final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred on and after the Petition Date and prior to and on the Effective Date must be Filed **no later than [    ], 2023**.  Any party seeking payment of a Professional Fee Claim that arises under sections 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code must File a motion for approval of the same.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.

5.    **Deadline to File Rejection Claims.**  As provided in Article V.C of the Plan, unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases by virtue of the Plan must be ~~filed with~~**actually received by** the Notice and Claims Agent **(Virgin Orbit Holdings, Inc. Claims Processing Center  c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412 Brooklyn, NY 11232) no later than [    ], 2023**.  The deadline for Governmental Units to file any such Proofs of Claim shall be the later of [    ], 2023 or the Governmental Bar Date as set forth in the Bar Date Order.  Any Proofs of Claim arising from the rejection of the Executory Contracts and Unexpired Leases that are not timely filed shall be forever disallowed and barred, absent order of the Bankruptcy Court to the contrary.  All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall constitute General Unsecured Claims and shall be treated in accordance with Article III.B of the Plan.

6.    **Accessing Documents for These Chapter 11 Cases.**  The Confirmation Order, the Plan, and copies of all documents filed in these Chapter 11 Cases are available free of charge by: (a) visiting the Debtors' case website at https://cases.ra.kroll.com/virginorbit; (b) calling (646) 440-4773 (international) or (833) 570-5269 (domestic, toll free); or (c) sending an electronic message to VirginOrbitInfo@ra.kroll.com.

7.    **Future Receipt of Documents.**  After the Effective Date, the Plan Administrator is authorized to (a) limit the list of Entities receiving documents pursuant to a pre-Effective Date request under Bankruptcy Rule 2002 to those Entities who have filed renewed requests pursuant to Bankruptcy Rule 2002 **after the Effective Date**, and (b) require that such parties file a renewed request to receive documents pursuant to Bankruptcy Rule 2002 to continue receiving documents.

Dated: [    ], 2023
    Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ *[DRAFT]*
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Allison S. Mielke (No. 5934)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  rbrady@ycst.com
      mnestor@ycst.com
      kcoyle@ycst.com
      amielke@ycst.com

-and-

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
Email:  jeff.bjork@lw.com

George Klidonas (admitted *pro hac vice*)
Anupama Yerramalli (admitted *pro hac vice*)
Liza L. Burton (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Emails: george.klidonas@lw.com
      anu.yerramalli@lw.com
      liza.burton@lw.com

*Counsel for Debtors and Debtors in Possession*

**IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION LLC BY CALLING (646) 440-4773 (INTERNATIONAL) OR (833) 570-5269 (DOMESTIC, TOLL FREE)**